## Case No. 24-2350

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

CITY OF CINCINNATI; CITY OF CLEVELAND; CITY OF SEATTLE;
CITY OF ROCHESTER; CITY OF YONKERS; CITY OF GREEN BAY;
TOWN OF TONAWANDA; CITY OF COLUMBUS; CITY OF KANSAS CITY;
CITY OF INDIANAPOLIS; CITY OF BUFFALO; CITY OF MADISON;
CITY OF MILWAUKEE; CITY OF NEW YORK; CITY OF PARMA;
CITY OF ST. LOUIS; CITY OF BALTIMORE,
*Plaintiffs-Appellees,*

v.

HYUNDAI MOTOR AMERICA, INC.; KIA MOTOR AMERICA, INC.,
*Defendants-Appellants.*

*Appeal from the United States District Court for the Central District of California,
Case No. 8:22-ml-03052-JVS-KES · Honorable James V. Selna, District Judge*

## APPELLANTS' OPENING BRIEF

JOHN B. QUINN
KATHLEEN M. SULLIVAN
STEVEN G. MADISON
JUSTIN C. GRIFFIN
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
johnquinn@quinnemanuel.com
kathleensullivan@quinnemanuel.com
stevemadison@quinnemanuel.com
justingriffin@quinnemanuel.com

CHRISTOPHER G. MICHEL
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
1300 I Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 538-8308
christophermichel@quinnemanuel.com

*Attorneys for Defendants and Appellants,
Hyundai Motor America, Inc. and Kia Motor America, Inc.*

 

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellant Hyundai Motor America, a California corporation, states that it is a 100% wholly owned subsidiary of Hyundai Motor Company, a citizen of the Republic of Korea.

Defendant-Appellant Kia America, Inc., a California corporation, states that it is a 100% wholly-owned subsidiary of Kia Corporation, a citizen of the Republic of Korea. Kia Corporation is minority owned by Hyundai Motor Company, which holds 33.88% of Kia Corporation's publicly-traded stock.

Dated: August 28, 2024          */s/ Christopher G. Michel*
                                                Christopher G. Michel

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................1

STATEMENT OF JURISDICTION.......................................................3

STATEMENT OF THE ISSUES............................................................4

STATEMENT OF THE CASE................................................................5

    A.    Factual Background.....................................................5

    B.    Procedural History.......................................................7

STANDARD OF REVIEW ...................................................................11

SUMMARY OF ARGUMENT .............................................................13

ARGUMENT ........................................................................................16

I.     THE DISTRICT COURT ERRONEOUSLY RECOGNIZED A
      DUTY TO PROTECT NEW YORK, OHIO, WISCONSIN, AND
      MISSOURI PLAINTIFFS AGAINST THIRD-PARTY CRIMES IN
      THE ABSENCE OF A SPECIAL RELATIONSHIP ....................16

    A.    New York, Ohio, And Wisconsin Law Reject Tort Duties To
        Prevent Third-Party Crimes Absent A Special Relationship.............17

        1.    New York.......................................................20

        2.    Ohio.................................................................22

        3.    Wisconsin........................................................23

    B.    The No-Duty Rule Forecloses Plaintiffs' New York, Ohio, And
        Wisconsin Negligence Claims ........................................26

    C.    The District Court's Rationales For Declining To Dismiss The
        New York, Ohio, And Wisconsin Negligence Claims In The
        Absence Of A Special Relationship Lack Merit................................31

    D.    Plaintiffs' Missouri Negligence Claims Fail For Largely The
        Same Reasons...............................................................35

II.    PLAINTIFFS' NEW YORK, OHIO, WISCONSIN, AND MISSOURI
      PUBLIC NUISANCE CLAIMS REST ON NEGLIGENCE
      ALLEGATIONS AND FAIL FOR LACK OF A TORT DUTY .................42

    A.    Duty Is An Element Of Public Nuisance Claims Premised On
        Allegations Of Negligent Conduct....................................42

1. New York .................................................................. 44

2. Ohio ........................................................................ 44

3. Wisconsin ............................................................... 45

4. Missouri ................................................................. 45

B. Plaintiffs' Public Nuisance Claims Sound In Negligence And So Fail For Lack Of A Duty To Prevent Third-Party Crimes ............ 46

III. FEDERAL LAW PREEMPTS ALL OF PLAINTIFFS' CLAIMS ............. 49

A. Federal Law Promotes Flexibility In The Selection Of Antitheft Devices And Allows Distribution of Vehicles Without Immobilizers ............................................................ 51

B. Federal Law Preempts State Tort Claims That Aim To Deprive Automakers Of Mandated Flexibility, Including Imposing Liability For Not Installing Immobilizers ............................ 52

C. Plaintiffs' Claims Are Preempted Because They Seek Liability Based On Defendants' Decisions Not To Install Immobilizers .......... 55

CONCLUSION ......................................................................... 59

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*,
    750 N.E.2d 1097 (N.Y. 2001)................................................................12

*Allen Freight Lines v. Consol. Rail Corp.*,
    595 N.E. 2d 855 (Ohio 1992) ...............................................44, 45, 46

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................12

*Ass'n des Éleveurs de Canards et d'Oies du Québec v. Becerra*,
    870 F.3d 1140 (9th Cir. 2017) ............................................................12

*Baker v. Empire Dist. Elec. Co.*,
    24 S.W.3d 255 (Mo. Ct. App. 2000) ........................................43, 44, 46, 47, 48

*Bank of Am. v. City & Cnty. of San Francisco*,
    309 F.3d 551 (9th Cir. 2002) ..............................................................13

*Becker v. Cardinal Health, Inc.*,
    179 N.E.3d 769 (Ohio Ct. App. 2021)................................................23

*Behrendt v. Gulf Underwriters Ins. Co.*,
    768 N.W.2d 568 (Wis. 2009...............................................................25

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................12

*Burns v. Black & Veatch Architects, Inc.*,
    854 S.W. 2d 450 (Mo. Ct. App. 1993) ...............................................12

*Cho v. Gen. Motors Co.*,
    No. 8:24-cv-00819 (C.D. Cal. Apr. 12, 2024).....................................33

*Cincinnati v. Beretta U.S.A. Corp.*,
    768 N.E.2d 1136 (Ohio 2002) ............................................................23

*Estate of Ciotto v. Hinkle*,
    145 N.E.3d 1013 (Ohio Ct. App. 2019)..........................................22, 23

# TABLE OF AUTHORITIES

**Page(s)**

*City of Chicago v. Beretta U.S.A. Corp.*,
821 N.E.2d 1099 (Ill. 2004) .................................................................30

*City of Cleveland v. Hyundai Motor Am.*,
No. 2:23-cv-01713 (C.D. Cal. Mar. 7, 2023) ......................................33

*Copart Indus., Inc. v. Consol. Edison Co. of N.Y., Inc.*,
41 N.Y.2d 564 (N.Y. 1977) ............................................43, 47, 48, 49

*D'Amico v. Christie*,
518 N.E.2d 896 (N.Y. 1987).................................................................20

*Davis v. Widman*,
922 N.E.2d 272 (Ohio Ct. App. 2009).................................................45

*Delaney v. Philhern Realty Holding Corp.*,
21 N.E.2d 507 (N.Y. 1939)...................................................................46

*Dix v. Motor Mkt., Inc.*,
540 S.W.2d 927 (Mo. Ct. App. 1976) .......................28, 36, 39, 40, 41

*Drager v. PLIVA USA, Inc.*,
741 F.3d 470 (4th Cir. 2014) ...............................................................34

*Epstein v. Mediterranean Motors, Inc.*,
491 N.Y.S.2d 391 (App. Div. 1985).................................................28, 29

*Faheen, By & Through Hebron v. City Parking Corp.*,
734 S.W.2d 270 (Mo. Ct. App. 1987) ..................................19, 35, 37

*Fox v. Kia Am., Inc.*,
2024 WL 1328730 (N.D. Ohio Mar. 28, 2024)......................................7

*Gade v. Nat. Solid Wastes Mgmt. Assn.*,
505 U.S. 88 (1992)................................................................................52

*Geier v. American Honda Motor Co.*,
529 U.S. 861 (2000)................................................16, 50, 53, 54

*Hamilton v. Beretta U.S.A. Corp.*,
264 F.3d 21 (2d Cir. 2001) ...................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

*Hamilton v. Beretta U.S.A. Corp.*,
    750 N.E.2d 1055 (N.Y. 2001)................................................ 18, 20, 21, 30, 31, 33

*Hanna v. St. Lawrence Cnty.*,
    825 N.Y.S.2d 798 (App. Div. 2006)........................................................21

*He v. Apple, Inc.*,
    139 N.Y.S.3d 409 (App. Div. 2020)..........................................................21, 22

*Hill v. Sonitrol of Sw. Ohio, Inc.*,
    521 N.E.2d 780 (Ohio 1988) ................................................................22, 32

*Hocking v. City of Dodgeville*,
    768 N.W.2d 552 (Wis. 2009)......................................................................17

*Hofflander v. St. Catherine's Hosp., Inc.*,
    664 N.W.2d 545 (Wis. 2003).............................................................24, 25, 26

*Hoida, Inc. v. M & I Midstate Bank*,
    717 N.W.2d 17 (Wis. 2006)........................................................................25

*Hornback v. Archdiocese of Milwaukee*,
    752 N.W.2d 862 (Wis. 2008)......................................................................25

*Inskeep v. Columbus Zoological Park Ass'n*,
    207 N.E.3d 876 (Ohio Ct. App. 2023)..............................................22, 24

*Irby v. St. Louis Cnty. Cab Co.*,
    560 S.W.2d 392 (Mo. Ct. App. 1977) ..........................................37, 40

*Jackson v. City of Blue Springs*,
    904 S.W.2d 322 (Mo. Ct. App. 1995) ..................................45, 46, 47

*Jankee v. Clark Cnty.*,
    612 N.W.2d 297 (Wis. 2000)......................................................24, 28

*Jonathan A. v. Bd. of Educ.*,
    779 N.Y.S.2d 3 (App. Div. 2004)..............................................................21

*In re: Kia Hyundai Vehicle Theft Litig.*,
    22-03052 (C.D. Cal.), Dkt. 334 ......................................50, 51, 57, 58

## TABLE OF AUTHORITIES

**Page(s)**

*Kuhn v. Budget Rent-A-Car of Mo., Inc.*,
  876 S.W.2d 668 (Mo. Ct. App. 1994) ....................................37, 38, 39

*Lauer v. City of N.Y.*,
  733 N.E.2d 184 (N.Y. 2000)........................................................20

*Lavo v. Medlin*,
  705 S.W.2d 562 (Mo. Ct. App. 1986) ...................................................36

*Lawton v. Hyundai Motor Am., Inc.*,
  2024 WL 2318623 (W.D. Mo. May 20, 2024).................................7, 36

*Lombardo v. Best W. Hotels & Resorts*,
  220 N.E.3d 237 (Ohio Ct. App. 2023).........................................18, 22

*McCarthy v. Olin Corp.*,
  119 F.3d 148 (2d Cir. 1997) ..........................................................20, 32

*McDaniel v. Wells Fargo Invs., LLC*,
  717 F.3d 668 (9th Cir. 2013) .......................................................53

*Meihost v. Meihost*,
  139 N.W.2d 116 (Wis. 1966).......................................................29

*Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*,
  691 N.W.2d 658 (Wis. 2005)..............................................45, 47, 48

*Murphy v. Both*,
  922 N.Y.S.2d 483 (App. Div. 2011)...................................................44

*Nevada v. Bank of Am. Corp.*,
  672 F.3d 661 (9th Cir. 2012) .......................................................36

*Pendrey v. Barnes*,
  479 N.E.2d 283–84 (Ohio 1985) .......................................................29

*Bradley ex. rel. Pope v. Ray*,
  904 S.W.2d 302 (Mo. Ct. App. 1995) ...........................................38, 40

*Port Auth. of N.Y. & N.J. v. Arcadian Corp.*,
  189 F.3d 305 (3d Cir. 1999) .......................................................19, 30

# TABLE OF AUTHORITIES

**Page(s)**

*Priester v. Cromer*,
736 S.E.2d 249 (S.C. 2012) ............................................54

*Pulka v. Edelman*,
358 N.E.2d 1019 (N.Y. 1976)............................................34

*Richards v. Stanley*,
271 P.2d 23 (Cal. 1954) ............................................28

*Roth v. Foris Ventures*,
LLC, 86 F.4th 832 (9th Cir. 2023)...........................3, 11, 13, 36, 51

*Scheibel v. Hillis*,
531 S.W.2d 285 (Mo. 1976) ............................................38

*Silva v. Constr. & Abatement Servs., Inc.*,
238 S.W.3d 679 (Mo. Ct. App. 2007) ...............................37

*Simpson v. Big Bear Stores Co.*,
652 N.E.2d (Ohio 1995) ............................................31, 34

*Soliman v. Daimler AG*,
2011 WL 4594313 (E.D.N.Y. 2011) ...............................54

*Solis v. Lincoln Elec. Co.*,
2006 WL 1305068 (N.D. Ohio May 10, 2006) ..................34

*People ex. rel. Spitzer v. Sturm, Ruger & Co.*,
761 N.Y.S.2d 192 (App. Div. 2003)...............................44

*Stephenson v. Universal Metrics, Inc.*,
641 N.W. 2d 158 (Wis. 2002).................................12, 25, 26

*Stevens & Thompson Paper Co. Inc. v. Middle Falls Fire Dep't*,
137 N.Y.S.3d 529 (App. Div. 2020)...............................44

*Sunlight Clinton Realty, LLC v. Gowanus Indus. Park, Inc.*,
86 N.Y.S.3d 617 (App. Div. 2018)...............................44, 46

*Taylor v. Cincinnati*,
55 N.E.2d 724 (Ohio 1944) ............................................44, 45, 46

vii

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

*Ticknor v. Choice Hotels Int'l, Inc.*,
    265 F.3d 931 (9th Cir. 2001) ...................................................17, 33

*Adomitis ex. rel. United States v. San Bernardino Mountains Comm.
    Hosp. Dist.*,
    816 Fed. App'x 64 (9th Cir. 2020) ....................................................48

*Vittengl v. Fox*,
    967 S.W.2d 269 (Mo. Ct. App. 1998) ................................................36

*Wallace v. Ohio Dep't. of Com.*,
    773 N.E.2d 1018 (Ohio 2002) ................................................8, 12, 17

*Wenrick v. Schloemann-Siemag Aktiengesellschaft*,
    564 A.2d 1244 (Pa. 1989) ................................................................35

*Wilkins v. Hendel*,
    654 S.W.3d 429 (Mo. Ct. App. 2022) ................................................46

*Williamson v. Mazda Motor Am.*,
    562 U.S. 323 (2011)..........................................................50, 53, 54

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
    516 U.S. 199 (1996).................................................4, 13, 36, 51

<u>STATUTES, REGULATIONS, & FEDERAL RULES</u>

28 U.S.C. § 1292(b) ................................................................3, 11, 42

28 U.S.C. § 1332(a) ........................................................................3

49 U.S.C. § 105................................................................................51

49 U.S.C. § 301................................................................................51

49 C.F.R. § 571.114 ..........................................................9, 49, 51, 54

33 Fed. Reg. 6471, 6472 (Apr. 27, 1968) ........................................52, 55

55 Fed. Reg. 21869, 21871 (May 30, 1990) ..........................................55

71 Fed. Reg. 17752, 17753 (Apr. 7, 2006) ......................................52, 55

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

Fed. R. Civ. P. 12(b)(6)............................................................................11

<u>OTHER AUTHORITIES</u>

Am. Jur. 2d, *Nuisances* § 9 (1989)...........................................................43

Andy Greenberg, WIRED, *Teslas Can Still Be Stolen With a Cheap Radio Hack—Despite New Keyless Tech* (May 22, 2024), available at https://www.wired.com/story/tesla-ultra-wideband-radio-relay-attacks/ (last visited Aug. 28, 2024) ......................................................7

Lesley Marin, CBS News, *LAPD issues warning about key cloning devices used in recent surge of Chevy Camaro thefts* (Feb. 29, 2024), available at https://www.cbsnews.com/losangeles/news/lapd-issues-warning-over-spike-in-chevy-camaro-thefts/ (last visited Aug. 28, 2024)........................7

Nat'l Ins. Crime Bureau, *Vehicle Thefts Surge Nationwide in 2023* (Apr. 9, 2024), available at https://www.nicb.org/news/news-releases/vehicle-thefts-surge-nationwide-2023 (last visited Aug. 28, 2024) ......................................................................................7

Restatement (Second) of Torts § 314A........................................................24

Restatement (Second) of Torts § 315 ...............................................18, 22, 24

Restatement (Second) of Torts § 324A..........................15, 26, 31, 34, 35

Restatement (Second) Torts § 448 ..............................................................17

Restatement (Second) Torts § 821B(1) .......................................................42

Restatement (Second) of Torts § 822 cmts. a .............................................43

Restatement (Second) of Torts § 825 ..........................................................48

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 56 (5th ed. 1984) .......................................................................................18

## **INTRODUCTION**

Plaintiffs-Appellees ("Plaintiffs")—local governments from States including New York, Ohio, Wisconsin, and Missouri—brought this litigation on the unprecedented theory that state tort law requires Defendants-Appellants Hyundai Motor America and Kia America, Inc. ("Defendants") to reimburse them for the costs of responding to crimes committed by thieves who stole Kia and Hyundai vehicles in response to a social-media "challenge." The district court denied Defendants' motion to dismiss but certified its order for interlocutory appeal, and this Court accepted review. This Court should reverse the district court's order and direct the dismissal of this misguided litigation for multiple reasons.

*First*, Plaintiffs' negligence claims are barred by the established state-law principle that there is no duty to protect against harms caused by third-party crimes absent a special relationship between the defendant, on the one hand, and the plaintiff or bad actor, on the other. Courts in New York, Ohio, Wisconsin, and Missouri— States that are collectively home to 14 of the 17 municipal Plaintiffs—all enforce that common-sense rule, which is binding on this Court in this diversity action. Because Plaintiffs' claims indisputably rest entirely on Defendants' purported

1

failure to prevent third-party criminal conduct, and allege no cognizable special relationship or circumstances, their claims are foreclosed under applicable state law.

The district court's contrary position permitting liability for third-party criminal conduct absent such a special relationship improperly conflated foreseeability and duty, opening a floodgate to vast new forms of liability that courts have repeatedly rejected. Virtually *any* product can be stolen and/or used by third parties in the commission of other crimes, but courts have consistently refused to impose tort liability on manufacturers or distributors of such products, recognizing that the result would be a cascade of unprincipled and unpredictable claims with potentially devastating economic consequences and no nexus to traditional tort principles of responsibility and fault. Applying state law, this Court should follow that consensus rather than the district court's striking and consequential departure.

*Second*, because Plaintiffs' New York, Ohio, Wisconsin, and Missouri public nuisance claims require proof of the elements of negligence—including duty—the nuisance claims fall away of their own weight in the absence of a legal duty to protect against the harms caused by third-party bad actors.

*Third*, all of Plaintiffs' claims are preempted by federal law. Plaintiffs allege that Defendants committed the asserted torts by failing to equip their vehicles with an anti-theft technology called engine immobilizers. After the certification of this interlocutory appeal, the district court held in a separate case that materially identical

2

claims based on the absence of immobilizers must be dismissed as preempted. In that case, the district court correctly found that the federal agency regulating automobile anti-theft and safety technology has determined that immobilizers are *not* required; instead, automakers have *flexibility* to choose which anti-theft and safety measures to utilize, and the Kia and Hyundai vehicles at issue here satisfy those regulatory standards. Plaintiffs do not and cannot contend that Defendants' vehicles comply with the binding federal standards. By nevertheless seeking to impose state law tort liability on Defendants for not using a particular technology, Plaintiffs' claims impede the regulatory objective of flexibility that federal law provides, and are accordingly preempted and should be dismissed.

## STATEMENT OF JURISDICTION

The district court has subject matter jurisdiction under 28 U.S.C. § 1332(a), as the amount in controversy exceeds $75,000 and there is diversity between Plaintiffs—municipal governments in New York, Ohio, Wisconsin, Missouri, Indiana, Maryland, and Washington—and Defendants, which are California entities. 3-ER-306.

This Court has jurisdiction under 28 U.S.C. § 1292(b). The district court certified this matter for interlocutory review under § 1292(b) on January 29, 2024. 2-ER-110. Defendants timely petitioned this Court for review on February 8, 2024. No. 24-00739 (9th Cir.), Dkt. 1.1, at 1. The Court granted that petition on April 2,

2024. No. 24-00739 (9th Cir.), Dkt. 8.1. This Court's jurisdiction under § 1292(b) "permits [the Court] to address any issue fairly included within the certified order because it is the order that is appealable, and not the controlling question identified by the district court." *Roth v. Foris Ventures*, LLC, 86 F.4th 832, 836 (9th Cir. 2023) (cleaned up); *see Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996).

## STATEMENT OF THE ISSUES

1.   Whether Plaintiffs' negligence claims under the laws of New York, Ohio, Wisconsin, and Missouri are foreclosed by the rule that defendants have no duty to protect against third-party criminal acts absent a special relationship or special circumstances, which Plaintiffs do not allege here.

2.   Whether Plaintiffs' public nuisance claims under the laws of New York, Ohio, Wisconsin, and Missouri are likewise foreclosed by the lack of a tort duty to prevent third-party crimes given that the public nuisance claims turn on the same conduct as the negligence claims.

3.   Whether Plaintiffs' claims, which turn on Defendants' decision not to install engine immobilizers in their vehicles, are preempted by federal regulations providing that immobilizers are not required and that automakers have flexibility to adopt any anti-theft and safety measures that meet specified standards.

4

## STATEMENT OF THE CASE[1]

### A. Factual Background

In the decade preceding 2020, Defendants' vehicles were among the least stolen on the road. Then, in late 2020, as communities nationwide endured COVID-19 lockdowns, young provocateurs on social media launched an unprecedented criminal craze. 3-ER-325–26, 375–76. Branding themselves the "Kia Boyz," the teenagers began posting how-to videos on popular social-media platforms demonstrating a method for bypassing the theft-prevention systems of certain Hyundai and Kia vehicles. 3-ER-325–26, 375–76. In these videos, a thief would "break a window" to the vehicle, "remove the plastic cowl under the steering column," and "use a USB connector" or another device in place of a key "to turn the ignition switch," starting the car and then stealing it. 3-ER-325–26, 375–76.

The Kia Boyz goaded other teens to emulate their exploits. The so-called Kia challenge went viral, and thefts of Defendants' vehicles "skyrocketed," as depicted in the graphs below. 3-ER-325–26, 375–76; 3-ER-392. Participants in this illegal antic went on to commit crimes beyond car theft, including reckless driving, high-speed evasion of police, drive-by shootings, robberies, burglaries, hit-and-runs, and

---

[1] For purposes of this appeal, Defendants accept Plaintiffs' well-pleaded allegations except to the extent they are contradicted by documents incorporated into the Complaint.

assaults on police officers, among other offenses.  3-ER-305, 328–30, 339–40, 348, 349–50, 352, 359, 365–68, 387–88, 400.





*See* 3-ER-355–56, 381.

This internet-fueled crime spree, moreover, did not occur in isolation: it unfolded alongside a widespread surge in car theft reaching far beyond Hyundai and

Kia vehicles. Between 2019 and 2023, "motor vehicle theft" in general "increased an average of 104%" across 30 U.S. cities. 3-ER-331–32. Beyond the crude exploits of the Kia Boyz, "[c]riminals are employing increasingly sophisticated methods to steal vehicles, including the use of advanced technology to bypass security systems," and law enforcement and the press have issued warnings about new theft trends targeting vehicles from Chevy Camaros to Teslas.[2]

## B. Procedural History

Although Defendants responded promptly to the crimewave, cooperating with law enforcement and distributing additional anti-theft measures, 2-ER-199; 3-ER-290, 332–33, numerous lawsuits were filed against Defendants. Defendants ultimately settled class-action litigation with their customers, and several individual suits brought by consumers have been dismissed with prejudice. *See, e.g.*, *Lawton v. Hyundai Motor Am., Inc.*, 2024 WL 2318623 (W.D. Mo. May 20, 2024) (granting motion to dismiss complaint with prejudice); *Fox v. Kia Am., Inc.*, 2024 WL

---

[2] Nat'l Ins. Crime Bureau, *Vehicle Thefts Surge Nationwide in 2023* (Apr. 9, 2024), available at https://www.nicb.org/news/news-releases/vehicle-thefts-surge-nationwide-2023 (last visited Aug. 28, 2024); *see, e.g.*, Lesley Marin, CBS News, *LAPD issues warning about key cloning devices used in recent surge of Chevy Camaro thefts* (Feb. 29, 2024), available at https://www.cbsnews.com/losangeles/news/lapd-issues-warning-over-spike-in-chevy-camaro-thefts/ (last visited Aug. 28, 2024); Andy Greenberg, WIRED, *Teslas Can Still Be Stolen With a Cheap Radio Hack—Despite New Keyless Tech* (May 22, 2024), available at https://www.wired.com/story/tesla-ultra-wideband-radio-relay-attacks/ (last visited Aug. 28, 2024).

1328730 (N.D. Ohio Mar. 28, 2024) (granting motion to dismiss complaint with prejudice).

The suits at issue here, however, were not filed by customers or by anyone directly harmed by the car thefts. Instead, a collection of municipalities scattered across the nation sued Defendants on the theory that the companies owed duties to the municipalities and were liable for negligence or public nuisance based on the thefts and ensuing injuries. Specifically, 17 municipalities from seven States— Indianapolis, Indiana; Baltimore, Maryland; Kansas City and St. Louis, Missouri; Buffalo, New York, Rochester, Tonawanda, and Yonkers, New York; Cincinnati, Cleveland, Columbus, and Parma, Ohio; Seattle, Washington; and Green Bay, Madison, and Milwaukee, Wisconsin—filed suits that were consolidated in a multidistrict litigation ("MDL") in the Central District of California.[3]

Plaintiffs' Consolidated Governmental Entities Complaint ("Complaint" or "CGEC") alleges that the vehicles targeted by this crime spree were susceptible to theft because they were not equipped with engine immobilizers—an optional form of "anti-theft technology" that "locks out the engine control module if an attempt is made to start the vehicle without the correct key or to bypass the electronic ignition

---

[3] Several additional cities have subsequently filed similar suits against Defendants that have been transferred to the MDL but are not part of this appeal. *See, e.g.*, *City of Chicago, Illinois*, No. 8:23-cv-02045 (C.D. Cal.); *City of Lorain, Ohio*, 8:23-cv-2083 (C.D. Cal.); *City of Newark, New Jersey*, 8:24-cv-00323 (C.D. Cal.).

system." 3-ER-302–03, 319–20, 335, 406. Plaintiffs have never asserted that any law requires the installation of engine immobilizers, nor have they disputed that the vehicles complied with the federal regulation governing automobile theft-prevention equipment, Federal Motor Vehicle Safety Standard 114. *See* 49 C.F.R. § 571.114; *see also* 3-ER-308 (admitting that "engine immobilizers are not expressly required by law"). In addition, although Plaintiffs assert that Defendants began marketing vehicles without engine immobilizers in 2011, they do not attempt to explain the minuscule theft rates for Defendants' vehicles in Plaintiffs' home jurisdictions for that first decade before the social-media crime wave in the early 2020s.

The Complaint alleges that, as a result of that "epidemic" of theft and related crimes, Plaintiffs have had to expend public resources on emergency and correctional services, public outreach, and towing jobs, "creating further downstream impacts, such as siphoning resources that could be devoted to other law enforcement priorities." 3-ER-324–25, 331, 346, 356, 371, 374–75, 382–83, 395, 405, 419. The Complaint further alleges that Defendants "could have avoided all this by installing engine immobilizers" in their vehicles. 3-ER-405, 412.

Based on these allegations, Plaintiffs assert claims for negligence and public nuisance and seek damages (including punitive damages) for the alleged municipal expenditures and property damage. 3-ER-405, 408, 415, 419. They further seek an order requiring "abatement" of the purported public nuisance, including by forcing

Defendants to install engine immobilizers in all affected vehicles. 3-ER-405, 422, 428–29.

Defendants moved to dismiss the Complaint, arguing, among other things, that the claims were preempted by federal law and that Plaintiffs' negligence and public nuisance claims failed because the common law in their home States rejects a tort duty for Defendants "to protect local governments from fiscal injuries caused by criminal third-party conduct" absent a special relationship or other applicable exception. 2-ER-127–32.

The district court disagreed. As to the state-law arguments, the district court recognized that "Plaintiffs [did] not attempt to argue that a special relationship exists" and the court credited Defendants' argument against a special relationship as "compelling." 1-ER-8. The court nevertheless concluded that "foreseeability supports the finding of a duty" for Plaintiffs' negligence claims because the "theft of an unprotected vehicle … is entirely foreseeable, as is the subsequent reliance on municipal services." 1-ER-8–10. The court further suggested that a duty for manufacturers to protect municipalities from third-party crimes involving their products was "unlikely to result in a slippery slope of … 'unlimited liability' to governments," reasoning that the events at issue "concern a very particular set of

circumstances." 1-ER-10. The court did not address Defendants' argument that duty is an element of Plaintiffs' public nuisance claims.

As to preemption, the court concluded that although Plaintiffs' complaint pervasively traced their alleged harms to the lack of engine immobilizers in certain vehicle models, *see, e.g.*, 3-ER-302–04, 308, 324–25, 332, 334, 336, Plaintiffs' claims were not preempted because they purportedly did not seek to "impose a narrow engine-immobilizer requirement," 1-ER-7.

Defendants moved for leave to immediately appeal the district court's denial of the motion to dismiss under 28 U.S.C. § 1292(b), and the district court granted that motion. 2-ER-110. Specifically, the court found room for disagreement on the controlling question of law whether, under New York, Ohio, and Wisconsin law, "a tort duty to protect against third-party criminal conduct can be based solely on the foreseeability of harms—even in the absence of a special relationship." 2-ER-116.[4]

Defendants petitioned this Court for permission to appeal the district court's dismissal order and the Court granted review. *See supra* 3–4.

## STANDARD OF REVIEW

This Court reviews a district court's denial of a motion to dismiss under Rule 12(b)(6) *de novo*. *Roth*, 86 F.4th at 836. To survive a Rule 12(b)(6) motion, a

---

[4] Although the district court's certification based on that issue suffices to bring the whole motion to dismiss order before this Court on appeal, the district court's certification order also addressed several other issues. The court concluded that

plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). And while well-pleaded allegations are accepted as true, "legal conclusions" and "conclusory statements" must be disregarded. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009).

Under the laws of New York, Ohio, Wisconsin, and Missouri, the existence and scope of a tort duty is a question of law to be determined by the court. *See 532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 750 N.E.2d 1097, 1101 (N.Y. 2001); *Wallace v. Ohio Dep't. of Com.*, 773 N.E.2d 1018, 1026 (Ohio 2002); *Stephenson v. Universal Metrics, Inc.*, 641 N.W. 2d 158, 163 (Wis. 2002); *Burns v. Black & Veatch Architects, Inc.*, 854 S.W. 2d 450, 453 (Mo. Ct. App. 1993).

The Court reviews questions of preemption *de novo*. *Ass'n des Éleveurs de Canards et d'Oies du Québec v. Becerra*, 870 F.3d 1140, 1145 (9th Cir. 2017); *see*

---

Plaintiffs' allegations "that there were, in fact, thefts of Kia vehicles before they were broadcast on social media"—even at rates near zero—satisfied Missouri's "special circumstances" doctrine for a tort duty to prevent third-party crimes. 2-ER-115; *see infra* at Argument I.D. The district court also declined to find sufficient disagreement on whether a tort duty is an element of Plaintiffs' public nuisance claims, rejecting Defendants' argument as supported only by "conclusory statements" for which Defendants supposedly "provide[d] no authority" (2-ER-113, 116)—even though Defendants asserted the argument in their dismissal papers and cited 12 cases for the proposition in their motion for interlocutory appeal and reply brief. 2-ER-120–23, 125–26, 128–35.

*also Bank of Am. v. City & Cnty. of San Francisco*, 309 F.3d 551, 557 (9th Cir. 2002).

## SUMMARY OF ARGUMENT

The district court's order denying Defendants' motion to dismiss—all of which is before the Court on this interlocutory appeal, *see Calhoun*, 516 U.S. at 205; *Roth*, 86 F.4th at 836—is badly mistaken as a matter of both state and federal law. This Court should reverse for any or all of multiple reasons.

I.      Plaintiffs' Complaint is built on the premise that Defendants owed municipal governments a duty in tort to prevent car thefts and other crimes, such as reckless driving, drive-by shootings, and burglary.  That theory contravenes fundamental tort principles, which reject any duty to prevent or protect another against third-party criminal acts absent a special relationship.  Here, Plaintiffs allege no relationship at all:  They maintain that Defendants owe a duty to protect local governments with whom they have no relationship from crimes by third parties with whom they have no relationship.  Nor do Plaintiffs' allegations implicate any other exception to the no-duty rule.  The no-duty rule therefore forecloses their claims for both negligence and public nuisance.

New York, Ohio, Wisconsin, and Missouri—States accounting for 14 of the 17 Plaintiffs—all enforce the no-duty requirement, expressly conditioning duties to prevent third-party crimes on the existence of a special relationship (termed "special

circumstances" in Missouri).  The requirement ensures rational limits on tort liability and permits parties to order their affairs on the assumption that others will follow the law.  And courts in States across the nation have held that the requirement precludes tort claims alleging injuries from failures to prevent car thefts.  Here, Plaintiffs' only asserted grounds for liability is a failure to prevent thefts and subsequent crimes by third parties with whom Defendants have no relationship.  By its plain terms, the special-relationship requirement forecloses such a theory that a defendant's failure to prevent criminal acts injured the plaintiff.

The district court erroneously premised a duty on the view that the "rampant vehicle thefts" Plaintiffs allege and the resulting municipal expenses were foreseeable.  But the no-duty rule expressly rejects a duty to prevent third-party crimes based on foreseeability alone, recognizing both the difficulty of predicting criminal conduct and the limitless liabilities such a duty would threaten given that almost any product can be used in a crime.  The district court's ruling only underscores those concerns:  The court identified no limiting principle that would stop its foreseeability-based duty from creating massive tort liability for any other manufacturer or distributor whose product is associated with criminal conduct that a court subsequently deems foreseeable.  Other courts have consistently rejected such a duty for manufacturers or distributors to predict and prevent the criminal use

of their products. The district court's contrary approach marks a stark departure that cannot be squared with the no-duty rule.

The district court likewise erred in suggesting that a duty in this case might be premised on the Good Samaritan rule of Restatement (Second) of Torts § 324A. That rule says only that when a defendant undertakes to provide services that it should recognize as necessary for the protection of another, it must undertake those services non-negligently. As court after court has recognized, the rule has no application to product sales, which are not services. Defendants never undertook to provide services for Plaintiffs' benefit and owed them no duty under § 324A.

**II.** As with Plaintiffs' negligence claims, the lack of a tort duty is fatal to Plaintiffs' New York, Ohio, Wisconsin, and Missouri public nuisance claims (with the exception of Plaintiffs' Ohio absolute-nuisance claims). In all those States, when a public nuisance claim rests on allegedly negligent conduct, a plaintiff must plead the elements of a negligence—including duty. That rule controls this case, where Plaintiffs premise their nuisance claims on precisely the same alleged conduct as their negligence claims, asserting that Defendants foreseeably injured them by unreasonably deviating from industry standards. Those negligence-based claims require a cognizable tort duty, and so are precluded by each State's no-duty rule.

**III.** Separately, Plaintiffs' claims are all preempted by federal law. Plaintiffs' claims turn on the allegation that Defendants committed negligence and

created a public nuisance by declining to install engine immobilizers on their vehicles. But federal regulations make clear that immobilizers are not required and that automakers have flexibility to adopt anti-theft and safety measures that comply with specified safety standards—which Plaintiffs do not allege that Defendants violated. Plaintiffs' claims thus seek to deprive Defendants of the flexibility that federal law provides, which is a paradigmatic basis for federal preemption under Supreme Court precedent. *See Geier v. American Honda Motor Co.*, 529 U.S. 861, 871 (2000). Indeed, the district court itself recognized in a subsequent ruling not before the Court on this appeal that materially identical claims asserted by a local government were preempted. The district court's abandonment of its own reasoning underscores the error in the preemption ruling on appeal and provides additional grounds for reversal.

## **ARGUMENT**

## I. **THE DISTRICT COURT ERRONEOUSLY RECOGNIZED A DUTY TO PROTECT NEW YORK, OHIO, WISCONSIN, AND MISSOURI PLAINTIFFS AGAINST THIRD-PARTY CRIMES IN THE ABSENCE OF A SPECIAL RELATIONSHIP**

The district court disregarded controlling state-law precedents in New York, Ohio, Wisconsin, and Missouri enforcing the common-law rule that there is no duty to prevent third-party crimes absent a special relationship (or "special circumstances" in Missouri). Those binding precedents control—and foreclose— Plaintiffs' claims that Defendants unreasonably failed to prevent the intentional

16

criminal acts that allegedly injured Plaintiffs. By instead recognizing a duty based only on the crimes' alleged foreseeability, the district court ignored the fundamental principle that a federal court sitting in diversity is "bound by the pronouncements of the state's highest court on applicable state law," and must "look to existing state law without predicting potential changes in that law." *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001).[5]

## A. New York, Ohio, And Wisconsin Law Reject Tort Duties To Prevent Third-Party Crimes Absent A Special Relationship

It is "black-letter law" in New York, Ohio, and Wisconsin that "a plaintiff cannot recover on a negligence claim absent some duty of care owed by defendant to the plaintiff." *Hamilton v. Beretta U.S.A. Corp.*, 264 F.3d 21, 30 (2d Cir. 2001) (*Hamilton II*) (applying New York law); *accord Wallace*, 773 N.E.2d at 1025–26; *Hocking v. City of Dodgeville*, 768 N.W.2d 552, 556 (Wis. 2009). Thus, for example, a driver who negligently hits a pedestrian with a vehicle is liable for the resulting injuries because the driver has a duty to others on the road, but the automaker who produced or distributed the vehicle is not liable for the driver's

---

[5] Some of the same reasons that support dismissal based on failure to satisfy the duty requirement also support dismissal for failure to satisfy the causation requirement. *See, e.g.*, Restatement (Second) Torts § 448 (third-party criminal acts break the chain of causation). Given that dismissal on duty grounds suffices to resolve this appeal, Defendants focus on the duty element here. They reserve their right to argue for dismissal based on lack of causation—as well as to raise additional grounds for rejecting Plaintiffs' claims, such as the economic-loss doctrine and the municipal cost-recovery rule—at an appropriate time.

negligence because it owes no duty to the pedestrian.  Without the duty element, defendants would be subject to "limitless liability to an indeterminate class of persons conceivably injured by any negligence in that act."  *Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1060 (N.Y. 2001) (*Hamilton I*).

In defining the duty element, it is a longstanding, bedrock principle that "in the absence of [a] requisite relationship, there generally is no duty to protect others against harm from third persons," including harm resulting from third-party criminal conduct.  W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 56, at 385 (5th ed. 1984); *see* Restatement (Second) of Torts § 315 ("There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another" absent a "special relation").  Thus, the hypothetical driver above is liable for negligently hitting a pedestrian, but not for failing to stop another driver from doing the same—absent a special relationship creating an exception to the general no-duty rule.

Importantly, the no-duty rule applies even when third-party criminal conduct is foreseeable.  *See Hamilton I*, 750 N.E.2d at 1060 ("Without a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm." (cleaned up)); *Lombardo v. Best W. Hotels & Resorts*, 220 N.E.3d 237, 242 (Ohio Ct. App. 2023) (similar).  Courts have identified a host of compelling "[p]olicy reasons" for the no-duty rule, including: "judicial

18

reluctance to tamper with a traditional, common law concept; the notion that the deliberate criminal act of a third person is the intervening cause of harm to another; the difficulty that often exists in determining the foreseeability of criminal acts; … the economic consequences of imposing such a duty; and conflict with the public policy that protecting citizens is the government's duty rather than a duty of the private sector." *Faheen, By & Through Hebron v. City Parking Corp.*, 734 S.W.2d 270, 272 (Mo. Ct. App. 1987). These concerns apply with particular force to the circumstances here: lawsuits seeking to impose a duty on product manufacturers or distributors to prevent the intentional, criminal misuse of their products, which "would expose manufacturers to endless liability." *Port Auth. of N.Y. & N.J. v. Arcadian Corp.*, 189 F.3d 305, 309, 315 (3d Cir. 1999) (applying the overlapping state laws of New York and New Jersey). That risk is only further heightened where, as here, the plaintiffs are governmental entities; under Plaintiffs' sweeping theory, any allegedly negligent act that ultimately results in some public cost (*e.g.*, police response or provision of healthcare) could create liability.

Consistent with those broadly recognized principles, binding precedent in New York, Ohio, and Wisconsin rejects a duty to prevent third-party crimes in the absence of a special relationship. That precedent answers the controlling question identified by the district court: under those States' laws, a "tort duty to protect against

19

third-party criminal conduct" **cannot** "be based solely on the foreseeability of the harm alone—even in the absence of a special relationship." 2-ER-116.

### 1. New York

New York law is clear that a "defendant generally has no duty to control the conduct of third persons so as to prevent them from harming others, even where as a practical matter defendant can exercise such control." *D'Amico v. Christie*, 518 N.E.2d 896, 901 (N.Y. 1987). This principle applies even where the alleged third-party harm is foreseeable. *See, e.g.*, *McCarthy v. Olin Corp.*, 119 F.3d 148, 157 (2d Cir. 1997) ("foreseeable … criminal misuse" cannot make manufacturer "liable for such misuse" absent special relationship); *Lauer v. City of N.Y.*, 733 N.E.2d 184, 187 (N.Y. 2000) ("Without a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm.").

New York's "judicial resistance" to duties to prevent third-party crimes "grows out of practical concerns both about potentially limitless liability and about the unfairness of imposing liability for the acts of another." *Hamilton I*, 750 N.E.2d at 1061. The special-relationship requirement thus functions to avoid "the specter of limitless liability," as "the class of potential plaintiffs to whom the duty is owed is circumscribed by the relationship." *Id*. Adhering to this requirement in case after case, New York courts consistently reject general tort duties to prevent third-party crimes in the absence of a special relationship. *See, e.g.*, *id*. at 1060–61; *McCarthy*,

119 F.3d at 157; *Jonathan A. v. Bd. of Educ.*, 779 N.Y.S.2d 3, 5–6 (App. Div. 2004); *Hanna v. St. Lawrence Cnty.*, 825 N.Y.S.2d 798, 801–02 (App. Div. 2006); *He v. Apple, Inc.*, 139 N.Y.S.3d 409, 413 (App. Div. 2020).

In *Hamilton I*, for instance, families of gun-crime victims sued various firearm manufacturers, alleging that the defendants negligently marketed and distributed guns so as to create a black market that fueled violence. 750 N.E.2d at 1058. The New York Court of Appeals reaffirmed that "[a] defendant generally has no duty to control the conduct of third persons so as to prevent them from harming others, even where as a practical matter defendant can exercise such control." *Id.* at 1061. In doing so, the court expressly rejected the notion that a duty could arise from "mere foreseeability of the harm." *Id.* at 1062.

Similarly, in *He v. Apple, Inc.*, a New York appellate court affirmed the dismissal of a consumer's negligence claim against Apple premised upon its failure to suspend the iTunes accounts of individuals who scammed the plaintiff by posing as federal tax officials and directing her to pay unpaid taxes via redemption codes from iTunes gift cards (totaling several thousand dollars). 139 N.Y.S.3d at 412–13. The court explained that it "is well established that before a defendant may be held liable for negligence it must be shown that the defendant owes a duty to the plaintiff and, even if Apple was in a position to protect plaintiff from the scammers, it would

ordinarily have no duty to control the conduct of third persons to prevent them from harming her." *Id.* at 413 (cleaned up).

2. Ohio

Under Ohio law, there is likewise "no duty so to control the conduct of a third person as to prevent him from causing physical harm to another" absent a "special relation." *Hill v. Sonitrol of Sw. Ohio, Inc*., 521 N.E.2d 780, 784 (Ohio 1988) (quoting Restatement (Second) of Torts § 315). This doctrine generally bars liability for failing to prevent crimes by third parties "even when harm is foreseeable." *Lombardo*, 220 N.E.3d at 242. As in New York, Ohio courts recognize that "[i]f foreseeability alone created a duty, then such liability could, potentially, arise without limit." *Estate of Ciotto v. Hinkle*, 145 N.E.3d 1013, 1019 (Ohio Ct. App. 2019). Ohio courts thus apply the no-duty rule to reject negligence claims premised on a purported duty to protect against third-party crimes. *See, e.g*., *id.* at 1019–20; *Lombardo*, 220 N.E.3d at 242; *Hill*, 521 N.E.2d at 781, 783–84; *Inskeep v. Columbus Zoological Park Ass'n*, 207 N.E.3d 876, 881 (Ohio Ct. App. 2023).

In *Estate of Ciotto*, the decedent's estate sued his murderer's mother, claiming she had negligently left a loaded handgun unsecured despite knowing of her son's mental instability and prior incidents with firearms. 145 N.E.3d at 1016–19. The trial court rejected the estate's claim, holding that the mother owed no duty to protect the decedent from her adult son's criminal wrongdoing. "To find such a

duty," the court concluded, "this court must also find, for the first time in Ohio jurisprudence, that a duty exists to control the actions of a third person without any special relationship, to prevent that person from harming others, contradicting existing, controlling precedent." *Id.* at 1026.

And in *Becker v. Cardinal Health, Inc.*, the Court of Appeals of Ohio affirmed the trial court's dismissal of health insurance policy owners' negligence claims against a prescription opioid distributor alleging it contributed to the opioid epidemic and in turn caused the policy owners' health insurance costs to increase. 179 N.E.3d 769, 772, 779 (Ohio Ct. App. 2021). Though the policy owners alleged the harm caused by the distributor's "fulfillment of their prescription opioid contracts was foreseeable, [they] fail[ed] to allege any relationship existed between [the parties]." *Id.* at 778. As there was "no relationship between the parties, [the policy owners could not] show the existence of a duty." *Id.*[6]

### 3. Wisconsin

The Wisconsin Supreme Court has similarly held that a "person owes no duty to aid or protect a third party unless the person stands in a special relationship to the

---

[6] The Ohio Supreme Court declined to apply the special relationship requirement where gun manufacturers were accused of affirmative *malfeasance*— "manufacturing, marketing, and distributing firearms in a way that creates an illegal firearms market that results in foreseeable injury." *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1144 (Ohio 2002). That "affirmative conduct" was not subject to the special-relationship requirement. *Id.* In cases involving *nonfeasance* such as Defendants' alleged failure to equip their vehicles with engine immobilizers,

foreseeable victim." *Jankee v. Clark Cnty.*, 612 N.W.2d 297, 322 (Wis. 2000). Wisconsin's special-relationship requirement flows from the general rule that "Wisconsin, like most jurisdictions, does not impose a duty on a person to stop a third person from committing harm to another or to himself or herself." *Id.* at 321. In support of that holding, the court cited the Restatement (Second) of Torts §§ 314A and 315, which cautions that "[t]here is no duty … to control the conduct of a third person [so] as to prevent him from causing physical harm to another unless … a special relation exists," and then identifies special relationships giving rise to such a duty (none of which are present here), *Jankee*, 612 N.W.2d at 321–22, n.30.

The Wisconsin Supreme Court reaffirmed that holding in *Hofflander v. St. Catherine's Hosp., Inc.*, 664 N.W.2d 545 (Wis. 2003), explicitly conditioning a duty "to prevent harm" on the existence of a "special relationship." *Id.* at 558. The Court explained that "[n]onfeasance torts, which entail a duty to do some act of commission to prevent harm, are not usually within the duty of ordinary care that people hold towards each other." *Id.* at 561. A duty based on a special relationship

---

Ohio courts continue to apply the special-relationship requirement. *See Inskeep*, 207 N.E.3d at 881.

thus "must be understood as a special exception to the norm and be treated accordingly." *Id.*

While Wisconsin precedents "have not always been precise in [their] descriptions of duty and the scope of duty," *Behrendt v. Gulf Underwriters Ins. Co.*, 768 N.W.2d 568, 594 (Wis. 2009) (Roggensack, J., concurring), they consistently reject liability for failure to prevent third parties' crimes or negligent acts in the absence of a special relationship, *see, e.g.*, *Hornback v. Archdiocese of Milwaukee*, 752 N.W.2d 862, 874, 876–77 (Wis. 2008) (explaining how presence or absence of special relationship determined outcomes of sex-abuse failure-to-warn cases and finding no duty to warn where plaintiffs "had virtually no relationship with [defendant]"); *Hoida, Inc. v. M & I Midstate Bank*, 717 N.W.2d 17, 29 (Wis. 2006) (defendants' "duty of ordinary care under the circumstances … did not require either of them" to prevent general contractor's fraudulent misappropriation of construction loan where there was "no special relationship," "[n]either defendant assum[ed] a special role with regard to [plaintiff]," and loan contract imposed no such duty).

Contrary to the district court's suggestion in its motion to dismiss decision, *Stephenson v. Universal Metrics, Inc.*, 641 N.W.2d 158 (Wis. 2002), did not "cast[] doubt" on *Jankee*. 2-ER-114–15. To be sure, *Stephenson* recited the general principle that people typically "owe[] a duty to the world at large to refrain from conduct that could cause foreseeable harm to others." 641 N.W.2d at 163 (quoted

25

at 2-ER-114). But as the Wisconsin Supreme Court explained just one year later, the general principle in the context of harm inflicted by third parties is that there is no duty to prevent such harm absent a special relationship (a "specific exception" to that general no-duty rule). *Hofflander*, 664 N.W.2d at 560–61. Indeed, the reasoning of *Stephenson* refutes any suggestion that Wisconsin recognizes a freestanding duty to prevent third-party crimes. In holding that the defendant owed a duty to drive a drunken partygoer home, *Stephenson* relied on the hornbook rule that one who *lacks* a duty to prevent third-party crimes may *assume* such a duty by "undertak[ing] … to render services to another which he should recognize as necessary for the protection of a third person or his things…." 641 N.W.2d at 163–64 (quoting Restatement (Second) of Torts § 324A). That holding would have been superfluous if, as Plaintiffs maintain and the district court found, Wisconsin law imposed a general duty to prevent foreseeable third-party crimes.

Plaintiffs have yet to identify a Wisconsin case imposing liability for failure to prevent third-party harms in the absence of a special relationship or affirmative acts assuming a duty. There is no sound basis to conclude that Wisconsin law would recognize such a duty here.

### B. The No-Duty Rule Forecloses Plaintiffs' New York, Ohio, And Wisconsin Negligence Claims

The bar on tort duties to prevent third-party crimes absent a special relationship forecloses Plaintiffs' negligence claims under New York, Ohio, and

Wisconsin law, because the sole basis for liability pleaded in the Complaint is Defendants' alleged failure to prevent criminal conduct by third parties, and Plaintiffs allege no cognizable special relationship between them and Defendants or between Defendants and the third-party criminals.

The Complaint makes clear that its sole theory of harm is third-party criminal conduct, which allegedly caused Plaintiffs to incur a variety of costs. The Complaint traces *all* of Plaintiffs' alleged injuries to third-party criminal conduct, describing the crimes at issue in detail, including dozens of paragraphs of statistical allegations about an alleged increase in Hyundai and Kia thefts, *see, e.g.*, 3-ER-324, 336–37, 355, 357, 384–85, 390–94; descriptions of car thieves' criminally reckless driving causing injury to persons or property, *see, e.g.*, 3-ER-328, 329–30, 339–40, 349–50, 365–66, 386, 388; allegations that car thieves have caused accidents while fleeing police, *see, e.g.*, 3-ER-351–52, 354, 367, 372–73, 389–90; allegations of property offenses, such as the use of cars as "battering rams to break into stores," *see, e.g.*, 3-ER-340–41, 352–53, 390–80, 387–88; and allegations of violent crimes, including robbery, assault, and drive-by shootings, *see, e.g.*, 3-ER-328–29, 340, 351–52, 360–61, 365, 390, 400.

The Complaint repeatedly and explicitly premises Defendants' negligence liability on failure to prevent those third-party crimes. It faults Defendants for allegedly "failing to equip their vehicles with immobilizer technology" to "deter and

prevent vehicle thefts and threats to public safety." 3-ER-430. It contends that the "omission of an engine immobilizer in the Susceptible Vehicles … cause[d] … Plaintiffs' injuries." 3-ER-406, 417–18, 436. And it theorizes that Defendants "could have avoided all this"—that is, prevented third-party criminal acts—"by installing engine immobilizers in the Susceptible Vehicles at the time of manufacture." 3-ER-405, 412, 415.

Plaintiffs thus transparently seek to impose a duty on Defendants to prevent third-party criminal acts where none exists. The attempt is squarely foreclosed by the rule that there is no duty "to stop a third person from committing harm to another" in the absence of a "special relationship." *Jankee*, 612 N.W.2d at 322.

That conclusion is confirmed by caselaw applying the no-duty rule specifically in the context of conduct that allegedly makes a car easier for a third-party thief to steal. The "great weight of authority" holds that, "as a matter of law," a vehicle owner or business that allegedly fails to prevent a car theft owes no duty to prevent the thief's reckless driving. *Dix v. Motor Mkt., Inc*., 540 S.W.2d 927, 932 (Mo. Ct. App. 1976). The California Supreme Court's seminal decision in *Richards v. Stanley*, 271 P.2d 23 (Cal. 1954), explains that this rule is a corollary of the general no-duty rule rejecting a "duty to control the conduct of a third person so as to prevent him from causing harm to another" in "the absence of a special relationship." *Id.* at 27. Similarly, in *Epstein v. Mediterranean Motors, Inc*., 491 N.Y.S.2d 391 (App.

28

Div. 1985), New York's Appellate Division held that a car dealership that allegedly failed to adequately guard against theft "owe[d] no duty to the plaintiffs" injured by a thief's reckless driving. *Id.* at 395. The court declined the plaintiffs' invitation to "announce a new common-law rule" that would require car dealerships "to take reasonable precautions to prevent the risk of [car] theft." *Id.* at 394–95. Such a duty, the court reasoned, would "victimize[]" vehicle owners by making them "the unwilling insurer[s] of, and joint tort-feasor[s] with, the thie[ves] who possessed the ingenuity and brazenness to steal [the] vehicle"—a result with "no sound basis." *Id.* at 395.[7]

Plaintiffs' novel lawsuit goes far beyond even the claims these decisions reject. Defendants did not leave cars unlocked with keys in the ignition in broad daylight—the vehicles fell victim to an unprecedented social-media trend that popularized a criminal practice in which thieves smash car windows, rip off the

---

[7] Ohio and Wisconsin courts have reached the same conclusion on grounds of proximate cause and public policy. *See, e.g.*, *Pendrey v. Barnes*, 479 N.E.2d 283–84 (Ohio 1985) (holding that operator who left keys in the ignition did not proximately cause post-theft accident "as a matter of law" and rejecting as "unacceptable" the "implications of, by judicial fiat, making every owner of an automobile an insurer for injuries to third parties which may be occasioned by the negligent or reckless acts of a car thief"); *Meihost v. Meihost*, 139 N.W.2d 116, 121 (Wis. 1966) (holding on public-policy grounds that in "most circumstances, allowance of recovery [for post-theft accidents] would place too unreasonable a burden upon the owners (or others having legal custody) of motor vehicles"). Defendants are aware of no case in either jurisdiction imposing a duty to prevent criminal acts by car thieves—which both states' general no-duty rules foreclose.

29

ignition casing, and hotwire the vehicle. *See supra* at Statement of the Case, I. And Plaintiffs seek to impose liability for far more than thefts and reckless driving. They would hold Defendants liable in tort for every *other* crime intentionally committed by participants in the Kia challenge, from drive-by shootings and violent assaults to burglaries and robberies to high-speed police pursuits. *Supra* at Argument, I.B.

Such "limitless liability" is exactly what the special-relationship requirement exists to prevent. *Hamilton I*, 750 N.E.2d at 1061. That is why courts in many States have declined to impose tort duties on manufacturers or distributors to prevent intentional criminal acts involving their products. Because there is virtually no end to the number of ways in which products could be used in crimes, courts recognize that "imposing a duty upon commercial enterprises to guard against the criminal misuse of their products by others" would mark an "unprecedented expansion" of state tort liability and inflict an immense burden on manufacturers. *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1126 (Ill. 2004) (declining to impose liability on firearm manufacturers based on use of their products in violent crimes); *see Hamilton I*, 750 N.E.2d at 1061–66 (similar). Courts instead consistently hold that "manufacturers have no duty to prevent a criminal misuse of their products which is entirely foreign to the purpose for which the product was intended." *Port Auth. of N.Y. & N.J.*, 189 F.3d at 313 (declining under state law to impose liability on fertilizer manufacturer based on use of its products in bomb-making). Under a

straightforward application of those principles to the allegations in the Complaint, Plaintiffs' negligence claims fail under New York, Ohio, and Wisconsin law.

### C. The District Court's Rationales For Declining To Dismiss The New York, Ohio, And Wisconsin Negligence Claims In The Absence Of A Special Relationship Lack Merit

The district court offered no defensible rationale for disregarding governing New York, Ohio, and Wisconsin law providing that Defendants owe no duty to the municipalities for harm caused by third-party crimes. In denying Defendants' motion to dismiss, the district court "rest[ed]" its duty finding on the supposed foreseeability of injury, while also commenting that limitless liabilities would not ensue because "[t]he facts alleged … concern a very particular set of circumstances." 1-ER-8–9. The court added in its order certifying its ruling for interlocutory appeal that it had also premised a duty on the "Good Samaritan doctrine" of Restatement (Second) of Torts § 324A. 2-ER-113. Under New York, Ohio, and Wisconsin law, none of those rationales supports a duty to prevent the crimes Plaintiffs allege.

Imposing a duty based "solely on the foreseeability of harms" (2-ER-116; 1-ER-8–9) erroneously reads the special-relationship requirement out of those States' tort law altogether. The rule that there is "no duty" to prevent third-party crimes "unless a special relationship exist[s]" necessarily means that "[f]oreseeability alone is insufficient to create liability." *Simpson v. Big Bear Stores Co.*, 652 N.E.2d at 702, 705 (Ohio 1995); *see Hamilton I*, 750 N.E.2d at 1060, 1062. If plaintiffs could

bypass the special-relationship requirement simply by alleging that their injuries were foreseeable, there would be no difference between the limited duty to prevent third-party crimes and the default negligence duty to prevent foreseeable harms arising from the defendant's own conduct. And under the district court's foreseeability analysis, many of the theories of liability that courts have consistently rejected—*e.g.*, liability for firearms manufacturers based on the use of their products in criminal violence or liability for cell-phone manufacturers based on the use of their products in crimes or negligent torts—would be permissible, because the misuse of the products is entirely foreseeable. Contrary to that reasoning, however, courts have consistently held that even where a defendant "realize[s] or should [realize] that action [is] necessary to protect" a plaintiff from third-party criminals, "it ha[s] no duty to do so" absent a special relationship. *Hill*, 521 N.E.2d at 784; *see McCarthy*, 119 F.3d at 157 ("New York courts do not impose a legal duty on manufacturers to control the distribution of potentially dangerous products"; "although it may have been foreseeable … that criminal misuse of the … bullets could occur," the ammunition manufacturer was not liable "for such misuse").

The district court discounted the policy concerns behind the no-duty rule because "the facts alleged … concern a very particular set of circumstances—vehicle manufacturers' decision not to install anti-theft technology and the harms to municipalities caused by the vehicles' vulnerability to theft." 1-ER-8, 10. But

devising a seemingly case-specific duty ignores the requirement that "in determining whether a duty exists, courts must be mindful of the precedential, and consequential, future effects of their rulings." *Hamilton I*, 750 N.E.2d at 1060. And it was particularly mistaken for the district court—as a federal court applying state law—to devise an exception that courts in Plaintiffs' respective States have declined to recognize. *See Ticknor*, 265 F.3d at 939.

The district court also identified no limiting principle to its ruling, which would extend liability to any manufacturer or distributor of a product, so long as a court, with the benefit of hindsight, deems crimes involving that product foreseeable. In this case alone, such a post-hoc duty would saddle Defendants with an enormous burden. Plaintiffs assert that Hyundai and Kia had a duty to equip ***nine million*** vehicles with immobilizers that Plaintiffs have alleged would cost $200 per vehicle—a $1.8 billion price tag that would fall not just on Defendants but consumers as well. 3-ER-333; Complaint ¶ 93, *City of Cleveland v. Hyundai Motor Am.*, No. 2:23-cv-01713 (C.D. Cal. Mar. 7, 2023).

Similar duties (and corresponding consumer costs) would presumably extend to other car companies, which have already begun to face lawsuits alleging that even vehicles ***with*** immobilizers are inadequately equipped to prevent rapidly proliferating "relay attacks" (*i.e.*, intercepting and relaying the signals between a car's key fob and the vehicle itself). *See Cho v. Gen. Motors Co.*, No. 8:24-cv-00819

33

(C.D. Cal. Apr. 12, 2024) (alleging a "1,185% increase" in stolen Chevrolet Camaros from 2022 to 2023). And so too for the manufacturers and distributors of countless other consumer products that might one day become the subject of criminal attention. The resulting liability would be "all but limitless and the outside boundaries of that liability … difficult of definition." *Pulka v. Edelman*, 358 N.E.2d 1019, 1023 (N.Y. 1976); *see also Simpson*, 652 N.E.2d at 705.

Finally, the district court's certification order suggested that the court's duty ruling may have rested on the Good Samaritan doctrine articulated in Restatement (Second) of Torts § 324A. 2-ER-113. That doctrine has no application here. As noted above, § 324A recognizes that parties may assume duties to prevent "physical harm" to another if they voluntarily undertake "to render services" that they "should recognize as necessary for the protection of a third person." *See* 1-ER-8. But Plaintiffs do not allege that Defendants "render[ed]" any "services," much less did so negligently. Rather, they allege Defendants engaged in nothing more than "designing, manufacturing, and distributing automobiles" for sale to consumers. 3-ER-403. Those automobiles are not "services … necessary for the protection" of Plaintiffs, 1-ER-8, and courts have routinely rejected similar attempts to impose duties on product manufacturers under § 324A. *See, e.g.*, *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 477 n.1 (4th Cir. 2014) (§ 324A "simply inapposite" to claim against prescription-drug manufacturer); *Solis v. Lincoln Elec. Co.*, 2006 WL

1305068, at *7 (N.D. Ohio May 10, 2006) (welding-rod manufacturers did not provide "service" under § 324A); *Wenrick v. Schloemann-Siemag Aktiengesellschaft*, 564 A.2d 1244, 1248 (Pa. 1989) (same against supplier of industrial machinery).

In short, none of the district court's rationales for recognizing a duty withstands scrutiny. For this reason, too, the Court should reverse the district court's denial of Defendants' motion to dismiss the New York, Ohio, and Wisconsin Plaintiffs' negligence claims.

### D. Plaintiffs' Missouri Negligence Claims Fail For Largely The Same Reasons

Like New York, Ohio, and Wisconsin, Missouri enforces the no-duty rule, holding that a party "is ordinarily under no duty to exercise any care against the criminal acts of third persons." *Faheen*, 734 S.W.2d at 273. In exceedingly narrow circumstances, Missouri courts have applied an exception—but only where the defendant knows of "special facts" (or "special circumstances") providing a concrete indication that third-party crime is likely in a particular place or circumstance. Plaintiffs fail to allege any special facts or circumstances that fit within Missouri's exception to the no-duty rule for largely the same reasons that they fail to allege any

special relationship that fits within the New York, Ohio, or Wisconsin exceptions to the no-duty rule.[8]

Contrary to the district court's suggestion in its certification order, Missouri is not an outlier. As in other States, the "traditional" Missouri rule holds that "absent a special relationship or special circumstances, a party has no duty to protect another person from the deliberate criminal attack of a third party." *Vittengl v. Fox*, 967 S.W.2d 269, 275 (Mo. Ct. App. 1998); *see also, e.g.*, *Lawton*, 2024 WL 2318623, at *6 (concluding Defendant Hyundai "did not have a duty to protect Plaintiff from getting shot by car thieves"). And like other States that have considered the question, Missouri courts apply the no-duty rule to cases involving allegations that a defendant failed to prevent car thefts. An unbroken line of Missouri caselaw holds that, absent an applicable exception, "one who leaves a vehicle unlocked with keys in the ignition does not owe a duty to [] third parties arising from accidents involving negligent thieves." *Dix*, 540 S.W.2d at 932; *accord, e.g.*, *Lavo v. Medlin*, 705

---

[8]  Although the district court did not identify a ground for reasonable difference of opinion on Missouri law in its certification order, its reason for doing so—that thefts were sufficiently foreseeable to meet the Missouri "special circumstances" exception—is mistaken for many of the same reasons as its misconstruction of the New York, Ohio, or Wisconsin law issues that it identified as appropriate for immediate appellate review. Given the considerable overlap between the arguments and the interest in judicial efficiency, this Court should exercise its discretion to review and order dismissal of Plaintiffs' negligence claims under Missouri law. *See Calhoun*, 516 U.S. at 204–05; *Roth*, 86 F.4th at 836; *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 673 (9th Cir. 2012).

S.W.2d 562, 564 (Mo. Ct. App. 1986); *Silva v. Constr. & Abatement Servs., Inc.*, 238 S.W.3d 679, 681 (Mo. Ct. App. 2007).

Where Missouri courts have recognized an exception, it is because the defendant "should [have] realize[d] through special facts within his knowledge … that an act or omission exposes someone to an unreasonable risk of harm through the conduct of another." *Irby v. St. Louis Cnty. Cab Co.*, 560 S.W.2d 392, 395 (Mo. Ct. App. 1977). As the phrase "*special* facts" suggests, the exception requires far more than *ordinary* foreseeability. The doctrine recognizes that "crime is foreseeable in our society, any place, anytime." *Faheen*, 734 S.W.2d at 273. Accordingly, generic allegations of foreseeability, such as a business being "located in a 'high crime' area," are "insufficient to invoke the duty." *Id.* Rather, "[u]nder all ordinary and normal circumstances, in the absence of any reason to expect the contrary, the actor may reasonably proceed upon the assumption that others will obey the criminal law." *Irby*, 560 S.W.2d at 395.

Consistent with those general principles, Missouri decisions finding a duty under the special circumstances exception typically "require[] some relationship between the plaintiff and the defendant," *Faheen*, 734 S.W.2d at 272 (landlord-tenant), or between the defendant and the criminal, *see, e.g.*, *Kuhn v. Budget Rent-A-Car of Mo., Inc.*, 876 S.W.2d 668, 673 (Mo. Ct. App. 1994) (employee-employer), as well as the defendant's knowledge of special facts likely to impose "a greater

potentiality of foreseeable risk or more serious injury, or require a lesser burden of preventative action," *Bradley ex. rel. Pope v. Ray*, 904 S.W.2d 302, 312 (Mo. Ct. App. 1995).

For example, in *Scheibel v. Hillis*, 531 S.W.2d 285 (Mo. 1976) (en banc), the defendant failed to warn a houseguest injured by another visitor that the visitor had committed "prior particular … wanton and willful acts of violence," and that the defendant had revealed to that violent third party that she kept a shotgun in her home—in a location "where defendant knew or should have known that [the third party] was likely to use it," *id.* at 287. The Missouri Supreme Court found an established relationship between the plaintiff, as a guest in defendant's home, and the defendant, as the owner of the home, and concluded that the defendant's "full knowledge … of prior particular acts of [the third party] likely to injure others" stated "facts from which it can be concluded [that] defendant should have anticipated the danger." *Id.* at 290.

Similarly, in *Kuhn*, a manager for a car-rental company "directed" an "obviously 'drunk'" employee to shuttle customers to the airport, leading one to complain that the employee was "too drunk to be driving." 876 S.W.2d at 670, 674. Despite this knowledge, the manager let the employee loiter with another "obviously" drunk employee in a lot full of "vehicles with the [] key in the ignition," including a shuttle "more difficult to operate than automobiles" and "potentially

capable of inflicting injury and damage [on] a large number of people." *Id.* at 670–71, 674. When the intoxicated employee then drove the shuttle off the lot, the manager declined to phone the authorities. *Id.* at 669–71. The Missouri Court of Appeals found "special circumstances" giving rise to a duty to prevent the deadly accident that the employee then caused. *Id.* at 674. It reasoned that in light of the facts known to the manager, "a reasonable, prudent person would have anticipated danger" and foreseen "that failure to act to secure the [] vehicles" or "cause [the employee's] removal from [the] premises was likely to result in serious injury or death to third parties." *Id.*

In contrast to decisions such as *Scheibel* and *Kuhn*, Missouri courts have rejected special-circumstances liability in cases featuring more generic allegations of foreseeability, unsupported by concrete indicia that third-party crime was likely in a particular place or circumstance. In *Dix*, for instance, a plaintiff injured in an auto accident caused by a car thief alleged that a parking garage knew that "other autos had recently and frequently been stolen from the parking garage and from the vicinity," but nevertheless left a car's "keys in the ignition, failed to lock the auto doors, and left the auto in an open … and readily accessible place." 540 S.W.2d at 929. Those general claims of foreseeability did not establish a duty for the defendant to prevent a car's theft—the same theory of negligence Plaintiffs assert against Defendants here. As the Missouri court explained, "[a]llegations that other autos

39

have been stolen in the immediate vicinity and that thieves are likely to drive negligently are not sufficient to state special circumstances." *Id.* at 932.

Similarly, in *Irby*, a taxi company dispatched a driver to a "high crime area" but allegedly "fail[ed] to provide means to protect him from intentional criminal acts of third persons," leading to his murder. 560 S.W.2d at 393. Explaining that there is "normally much less reason to anticipate acts on the part of others which are malicious and intentionally damaging than those which are merely negligent," the court held that the "allegation of a 'high crime area' does not ipso facto mandate" recognition of a duty to protect the driver from criminal acts. *Id.* at 395.

The district court did not identify—and the Complaint does not allege—facts remotely resembling any case in which Missouri courts have applied the special-circumstances exception. In its dismissal ruling, the court found that foreseeability supported a duty because "Defendants knew of and installed effective engine immobilizers in some of their vehicles, but decided to not use this technology in the Susceptible Vehicles." 1-ER-8. But that simply describes Plaintiffs' theory of negligence—not any special facts showing a "greater potentiality of foreseeable risk or … a lesser burden of preventative action" than one would otherwise expect. *Bradley*, 904 S.W.2d at 312. The plaintiff in *Dix* could not have skirted the court's no-duty ruling simply alleging that the defendant garage "knew of" the importance

of removing keys from the ignition and that its attendants had done so when parking "some of their vehicles." So too here.

The district court's certification order suggested that special facts existed because Plaintiffs allege "that there were, in fact, thefts of Kia vehicles before they were broadcast on social media." 2-ER-115. But *Dix* makes clear that such allegations are not enough, finding special facts lacking where the plaintiff alleged that "other autos had recently and frequently been stolen from the parking garage and its vicinity." 540 S.W.2d at 929, 932–33. That outcome is especially apt in this case, where the district court based its finding of prior thefts on graphs in the Complaint undermining the conclusion that Defendants had knowledge of frequently stolen cars. Plaintiffs' graphs show the opposite: infinitesimally *low* theft rates of Defendants' vehicles before the advent of the Kia challenge. *See* -ER-336–37, 344, 347, 348, 349, 357, 362–64, 381, 384, 392, 398. If theft rates near zero were sufficient to establish special circumstances, the exception would apply to every auto company—and countless other manufacturers and distributors of other products. That is not Missouri law. *See Dix*, 540 S.W.2d at 932–33.

Aside from the historically scant theft rates, the Complaint's sole allegation of pre-2020 thefts is that "the incidence of theft" for Defendants' vehicles "increased, relative to other models, from 2015 to 2020." 3-ER-325. That barebones allegation provides no meaningful information that would support a finding of

special circumstances—nothing about the extent or circumstances of the supposed increase.  Just as the vague allegation of a "high crime area" could not support a duty in *Irby*, Plaintiffs' vague allegation of an unquantified, unexplained "increase[]" in thefts cannot do so here.  Accordingly, the special facts exception to Missouri's no-duty rule is inapplicable, and the district court's finding of a Missouri-law duty to prevent third-party crimes should be reversed.

## II.  PLAINTIFFS' NEW YORK, OHIO, WISCONSIN, AND MISSOURI PUBLIC NUISANCE CLAIMS REST ON NEGLIGENCE ALLEGATIONS AND FAIL FOR LACK OF A TORT DUTY

Because the New York, Ohio, Wisconsin, and Missouri Plaintiffs' public nuisance claims rest on allegations of negligence—indeed, they turn on precisely the same allegations as the negligence claims—Plaintiffs' public nuisance claims likewise fail for lack of a tort duty and should be dismissed on the same grounds.[9]

### A.  Duty Is An Element Of Public Nuisance Claims Premised On Allegations Of Negligent Conduct

"A public nuisance is an unreasonable interference with a right common to the general public."  Restatement (Second) Torts § 821B(1).  Circumstances that

---

[9] Given that the public nuisance claims are part of the certified order denying the motion to dismiss and that resolving the negligence and public nuisance claims together would "materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), this Court should exercise its discretion to review and order the dismissal of Plaintiffs' public nuisance claims alongside their negligence claims.  In its certification order, the district court stated that Defendants offered only "conclusory statements" and "no authority" for their argument that duty is an element of Plaintiffs' public nuisance claims.  2-ER-113.  The suggestion is

may constitute a public nuisance include conduct: (1) involving "a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience"; (2) "proscribed by statute, ordinance or administrative regulation"; or (3) "of a continuing nature" or that "has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right." *Id.* § 821B(2).

Under the law of all four of Plaintiffs' home States, a plaintiff asserting a public nuisance claim resting on allegations of negligence must plead a valid tort duty. "[W]henever a nuisance has its origin in negligence," the elements of negligence "must be proven." *Copart Indus., Inc. v. Consol. Edison Co. of N.Y., Inc.*, 41 N.Y.2d 564, 569 (N.Y. 1977); *accord* Restatement (Second) of Torts § 822 cmts. a, h; Am. Jur. 2d, *Nuisances* § 9, at 676–77 (1989). This includes "a duty and breach of duty," which must be established to sustain a claim of "nuisance founded on negligence." *Baker v. Empire Dist. Elec. Co.*, 24 S.W.3d 255, 264 (Mo. Ct. App. 2000). The requirement guards against artful pleading and arbitrary liability, ensuring that the "form of the action will be determined from allegations of the

---

inexplicable: Defendants' dismissal papers asserted the no-duty argument and cited seven cases for the proposition that "[c]ourts in the … Plaintiffs' states [] consider whether or not there is a 'duty' in analyzing public nuisance claims," and their papers in support of interlocutory appeal cited ten more. 2-ER-128–29.

petition and from the real nature and substance of the facts alleged in said petition and not from what the pleader may have called it." *Id.*

### 1. New York

In New York a "nuisance based on negligence is but a single wrong, whether characterized as negligence or nuisance," so "[w]henever a nuisance has its origin in negligence, negligence must be proven." *Murphy v. Both*, 922 N.Y.S.2d 483, 486 (App. Div. 2011). Because "duty" is an "essential element of negligence," a public nuisance claim fails in the absence of a valid tort duty. *Sunlight Clinton Realty, LLC v. Gowanus Indus. Park, Inc.*, 86 N.Y.S.3d 617, 619–20 (App. Div. 2018); *Stevens & Thompson Paper Co. Inc. v. Middle Falls Fire Dep't*, 137 N.Y.S.3d 529, 534 (App. Div. 2020). Applying this principle, New York's Appellate Division dismissed public nuisance claims against gun companies because, under *Hamilton*'s no-duty rule, they owed no "duty of care" to prevent third parties' violent gun crimes. *People ex. rel. Spitzer v. Sturm, Ruger & Co.*, 761 N.Y.S.2d 192, 200–02 (App. Div. 2003).

### 2. Ohio

In Ohio, likewise, a claim for "qualified nuisance" by definition rests on allegations of negligent conduct. *Taylor v. Cincinnati*, 55 N.E.2d 724, 731 (Ohio 1944). "In such a case … negligence must be averred and proven to warrant a recovery," and the "allegations of nuisance and negligence [] merge." *Allen Freight*

*Lines v. Consol. Rail Corp.*, 595 N.E. 2d 855, 856 (Ohio 1992). Failure to allege a valid tort duty is thus fatal to a qualified nuisance claim. *See, e.g.*, *id.*; *Davis v. Widman*, 922 N.E.2d 272, 283 (Ohio Ct. App. 2009).[10]

### 3. Wisconsin

The Wisconsin Supreme Court has "reaffirm[ed] … that when a nuisance is predicated on negligence, all the usual rules and defenses applicable to negligence claims apply." *Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 691 N.W.2d 658, 688 (Wis. 2005). So when a "complaint does not allege intentional conduct and negligence is not properly proved, the plaintiff adds nothing to the sufficiency of the complaint by his allegations of nuisance." *Id.* at 674. Consistent with that rule, nuisance claims founded on negligent conduct fail in the absence of a duty. *See id.* at 679.

### 4. Missouri

Finally, in Missouri, "liability for nuisance depends upon the existence of negligence" if "the claim of nuisance is based upon negligence." *Jackson v. City of Blue Springs*, 904 S.W.2d 322, 328 (Mo. Ct. App. 1995). In such cases, "to establish [a] claim for public nuisance under Missouri law," a plaintiff must establish that the

---

[10] Because "absolute nuisance" in Ohio is a strict-liability theory, the absence of a negligence duty is fatal only to Ohio Plaintiffs' qualified nuisance claims. *See Taylor*, 555 N.E.2d at 725. Defendants intend to challenge the sufficiency of Ohio Plaintiffs' absolute nuisance claims, including their allegations of intentional conduct, in due course as the litigation progresses.

defendant "had a duty." *Id.* at 329; *see also Wilkins v. Hendel*, 654 S.W.3d 429, 433–34 (Mo. Ct. App. 2022). Missouri courts determine a duty's existence in nuisance cases by looking to ordinary negligence principles. *See Wilkins*, 654 S.W.3d at 433–34; *Jackson*, 904 S.W.2d at 329–33; *Baker*, 24 S.W.3d at 263–64.

Under these crystal-clear rules, if Plaintiffs' public nuisance claims turn on allegations of negligent conduct, Plaintiffs' failure to allege a valid tort duty precludes them—just as it does Plaintiffs' negligence claims. *See id.*; *Allen Freight Lines*, 595 N.E. at 856; *Sunlight Clinton Realty*, 86 N.Y.S.3d at 619–20; *Jackson*, 904 S.W.2d at 329–33.

## B. Plaintiffs' Public Nuisance Claims Sound In Negligence And So Fail For Lack Of A Duty To Prevent Third-Party Crimes

All four of Plaintiffs' home States recognize that nuisance claims sound in negligence—and fail in the absence of a duty—if they are premised, as here, on allegations of negligent conduct. In Ohio, a qualified-nuisance claim by definition must assert liability based "upon the failure to exercise due care," and so necessarily requires proof of negligence, including a duty. *Taylor*, 55 N.E.2d at 727, 731; *see Allen Freight Lines*, 595 N.E.2d at 856. New York asks whether a nuisance claim is "based on mere want of due care," *Delaney v. Philhern Realty Holding Corp.*, 21 N.E.2d 507, 509 (N.Y. 1939), while Missouri assesses whether the plaintiff alleges "an unreasonable risk of harm," *Jackson*, 904 S.W.2d at 328. And Wisconsin simply asks whether the plaintiff "allege[s] intentional conduct"—a duty is required unless

plaintiff alleges that the defendant "acts for the purpose of causing [a nuisance]" or "knows that [a nuisance] is resulting or is substantially certain to result from his conduct." *Milwaukee Metro.*, 691 N.W.2d at 672, 674.

Under these standards, a nuisance claim sounds in negligence where "the acts or omissions constituting negligence themselves are [] what also g[a]ve rise to the nuisance." *Jackson*, 904 S.W.2d at 328. Courts also consider whether the complaint is "replete with language attributable to claims of negligence," such that a foreseeable harm resulted from the defendant's failure to "exercise … the requisite degree of care." *Baker*, 24 S.W.3d at 263–64. Factual allegations typical of negligence cases—that a defendant, for example, deviated from "custom or usage in the … industry"—likewise establish that a "nuisance, either public or private," is "based on negligence." *Copart*, 41 N.Y.2d at 569.

Here, Plaintiffs allege that a nuisance arose from the same "acts or omissions" Plaintiffs maintain "constitut[ed] negligence"—the alleged conduct underlying their public nuisance claims is precisely the same conduct underlying their negligence claims. *Jackson*, 904 S.W.2d at 328. Consistent with those identical factual allegations, Plaintiffs frame their public nuisance claims in negligence terminology. Plaintiffs allege a nuisance consisting of "rampant thefts of Hyundai and Kia vehicles." 3-ER-331. They assert that Defendants "foreseeably" "created [that] public nuisance" by "deviating from the industry standard," and that "[e]ach

Defendant's conduct in causing the public nuisance … was unreasonable and the gravity of the harm caused far outweighs any utility of the Defendant's conduct." 3-ER-305, 324–25, 429; *see* 3-ER-319–20, 325, 336. Such allegations of "foreseeable" harm arising from failure to "exercise … the requisite degree of care," *Baker*, 24 S.W.3d at 263–64—including departure from the "general custom or usage in the … industry," *Copart*, 41 N.Y.2d at 570—sound in negligence.

Plaintiffs' passing assertion that Defendants acted with intent lacks supporting factual allegations and does not alter that conclusion. The Complaint repeatedly asserts that "Defendants knew or had reason to know that this interference with public safety was substantially certain to result from their conduct." *E.g.* 3-ER-404, 411, 427, 429. But Plaintiffs "fail[] to allege facts to make plausible [their] conclusory allegation." *Adomitis ex. rel. United States v. San Bernardino Mountains Comm. Hosp. Dist.*, 816 Fed. App'x 64, 66 (9th Cir. May 20, 2020). Plaintiffs appear to rest their claim on the allegation that "Defendants knew or had reason to know that the installation of engine immobilizers successfully decreased the rate of car theft by as much as 40%." *E.g.*, 3-ER-411. But intent to cause the nuisance requires far more than "reason to know" that immobilizers, in certain instances, can protect against vehicle theft—Plaintiffs must plausibly allege that Defendants "know[] that [the nuisance] is resulting or is substantially certain to result from [their] conduct." Restatement (Second) of Torts § 825; *see Milwaukee Metro.*, 691 N.W.2d at 672

(same); *Copart*, 41 N.Y.2d at 570–71 (same). Plaintiffs allege no facts plausibly supporting an inference that Defendants were "substantially certain" that selling cars without engine immobilizers would lead to the "rampant thefts" the Complaint characterizes as a public nuisance. 3-ER-331, 336. To the contrary, the Complaint makes clear that Defendants marketed such cars for years without issue, until an unprecedented social-media criminal spree caused theft rates to "skyrocket[]." *See supra* at Argument, I.D.

In sum, Plaintiffs' failure to allege a tort duty supports dismissal of their public nuisance claims alongside the negligence claims premised on the very same factual theory.[11]

## III.  FEDERAL LAW PREEMPTS ALL OF PLAINTIFFS' CLAIMS

Reversal is additionally warranted because Plaintiffs' claims are all preempted by federal law. The federal regulation that governs vehicle safety and anti-theft performance standards—Federal Motor Vehicle Safety Standard ("FMVSS") 114, 49 C.F.R. § 571.114—gives automakers flexibility to decide which technology to use in complying with its requirements. The Supreme Court has explained that a

---

[11]  Dismissal of the negligence and public nuisance claims by the 14 Plaintiffs from New York, Ohio, Wisconsin, and Missouri would leave claims by only three Plaintiffs from Indiana, Maryland, and Washington. Those claims warrant dismissal for many of the same reasons discussed in this brief, albeit with some distinctions based on state law. Defendants preserve their right to seek dismissal of those claims in the district court in an appropriate manner.

federal regulation with a "significant objective" to promote flexibility in compliance methods preempts state laws that compel compliance in a particular way. *Williamson v. Mazda Motor Am.*, 562 U.S. 323, 330 (2011); *see Geier*, 529 U.S. at 871. That is exactly what Plaintiffs aim to do here; they seek to impose state tort liability on Defendants based on their decision not to employ one particular technology: engine immobilizers. Indeed, Plaintiffs expressly define the vehicles that are the subject of their claims as Hyundai and Kia models "manufactured and sold *without immobilizers*." 3-ER-303 (emphasis added). Under a straightforward application of *Williamson* and *Geier*, Plaintiffs' claims stand "'as an obstacle to the accomplishment and execution of' the important … federal objective[]" of flexibility, and are accordingly preempted. *Geier*, 529 U.S. at 881.

The district court reached a contrary conclusion in denying Defendants' motion to dismiss the CGEC. 1-ER-7. But the court's analysis rested on a misreading of the Complaint: that it does not seek to impose liability based on a failure to install immobilizers. *Id.* That is wrong, as the face of the Complaint makes plain. And it is even more clearly mistaken in light of the district court's subsequent decision to dismiss as preempted virtually identical claims by the City of Chicago on the ground that its complaint impermissibly sought to require immobilizers, in conflict with the flexibility required by FMVSS 114. *In re: Kia Hyundai Vehicle Theft Litig.*, 22-03052 (C.D. Cal.), Dkt. 334 ("Chicago MTD Order") at 5–6.

50

Although the court attempted to distinguish Chicago's complaint from the CGEC, *see id.*, and eventually allowed Chicago to move forward with its amended claims, *see id.* Dkt. 547, the internal inconsistency in the court's decisions demonstrates the need for guidance from this Court. The Court can, and should, accordingly address the purely legal question of preemption and reverse on that ground.[12]

### A. Federal Law Promotes Flexibility In The Selection Of Antitheft Devices And Allows Distribution of Vehicles Without Immobilizers

Congress has long vested the National Highway Traffic Safety Administration ("NHTSA") with authority to regulate automobile safety, including by setting vehicle safety and anti-theft performance standards. *See* 49 U.S.C. §§ 105, 301. NHTSA acted under that authority in 1968 to promulgate FMVSS 114. *See* 49 C.F.R. § 571.114, S1, S2, & S5.1. FMVSS 114 imposes two anti-theft performance requirements mandating that a vehicle's starting system prevent (1) "normal activation of the vehicle's engine or motor" and (2) "steering, forward self-mobility, or both" when the key is removed. *Id*. § 571.114, S5.1.1. These requirements are

---

[12] Preemption was not one of the issues the district court identified in its certification order, but this Court has jurisdiction to resolve the issue in reviewing the district court's order denying Defendants' motion to dismiss. *Calhoun*, 516 U.S. at 205; *Roth*, 86 F.4th at 836. The district court's certification order, moreover, predated its decision to dismiss the virtually identical Chicago complaint as preempted, which underscores the need for immediate appellate review.

intended to "reduce the incidence of crashes resulting from theft" and "decrease the likelihood that a vehicle is stolen." *Id.* § 571.114, S1 & S2.

Neither FMVSS 114 nor any federal law or regulation has ever mandated installation of immobilizers. *See* 3-ER-318–19. Instead, NHTSA has consistently maintained that automobile manufacturers and distributors should have a choice in the antitheft technology they adopt. For example, when FMVSS 114 was enacted, NHTSA rejected requests to prescribe "specific theft protection devices," because "it would be unwise to establish a standard in terms so restrictive as to discourage technological innovation in the field of theft inhibition." 33 Fed. Reg. 6471, 6472 (Apr. 27, 1968). In the agency's own words, "the standard has been framed to permit as many specific devices as possible to meet its requirements." *Id.*; *see also* 71 Fed. Reg. 17752, 17753 (Apr. 7, 2006).

### B. Federal Law Preempts State Tort Claims That Aim To Deprive Automakers Of Mandated Flexibility, Including Imposing Liability For Not Installing Immobilizers

The doctrine of federal preemption prohibits the imposition of state tort liability where doing so "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Gade v. Nat. Solid Wastes Mgmt.*

*Assn.*, 505 U.S. 88, 98 (1992), including by undermining a "significant objective of [a] federal regulation," *Williamson*, 562 U.S. at 330.

Of particular relevance here, the Supreme Court has addressed the preemption of state tort law by federal regulations in the context of vehicle safety at least twice before. In *Geier*, the Court held that an FMVSS provision allowing manufacturers to select from a variety of passive restraints (*i.e.*, seat belts or air bags) preempted a state tort suit premised on a manufacturer's failure to install driver's-side airbags. 529 U.S. at 886. That federal standard imposed flexible performance requirements, rather than mandating any particular type of passive restraint, because NHTSA believed that "a mix of devices would help develop data on comparative effectiveness, [and] would … facilitate the development of alternative, cheaper, and safer passive restraint systems." *Id.* at 879. The state tort theory mandating specific restraints thus would stand "'as an obstacle to the accomplishment and execution of' the important … federal objectives" of the standard, and was preempted. *Id.* at 881.

In *Williamson*, the Court clarified that a federal regulation giving manufacturers options for compliance preempts state rules restricting those options when, as in *Geier*, flexibility is a "significant objective" of the regulation. 562 U.S. at 336; *see McDaniel v. Wells Fargo Invs., LLC*, 717 F.3d 668, 675 (9th Cir. 2013) ("Where, as here, federal law grants an actor 'a choice,' and state law 'would restrict that choice,' state law is preempted if preserving 'that choice was a significant

federal regulatory objective.'" (quoting *Williamson,* 562 U.S. at 332)). Courts have applied the *Geier-Williamson* principle to find, for example, that a state tort rule requiring auto manufacturers to use only laminated glass was preempted by FMVSS 205, which allowed for use of either laminated or tempered glass. *Priester v. Cromer*, 736 S.E.2d 249, 260 (S.C. 2012). Federal law likewise preempted a state-law tort duty to anchor seatbelts to automobile frames because federal regulations recognize that giving manufacturers options would "encourage the correct use of safety belts and … increase the overall safety belt usage rate." *Soliman v. Daimler AG*, 2011 WL 4594313, at *5 (E.D.N.Y. 2011).

Applying those principles here, state-law claims seeking to impose a duty on automakers to install immobilizers as anti-theft devices are preempted by the reasoning of *Geier* and *Williamson*. Flexibility is a significant, express objective of FMVSS 114, which does not prescribe a particular anti-theft technology, but instead mandates only that a vehicle's starting system prevent (1) "normal activation" of the engine and (2) "steering or forward self-mobility" when the key is removed. *See* 49 C.F.R. § 571.114 S5.1.1. Any technology meeting these performance requirements satisfies FMVSS 114.

NHTSA's decision to let manufacturers and distributors select among different theft-prevention technologies was not merely an afterthought, but embodied a significant regulatory objective. Prior to enacting FMVSS 114, NHTSA

received but rejected "many" requests to prescribe "specific theft protection devices," including brake locks and "so-called 'pop-out' keys which automatically eject from the locking system." 33 Fed. Reg. 6471, 6472. In 1990, NHTSA considered adding certain requirements to FMVSS 114, but when NHTSA asked automakers whether its proposed changes "would … improperly restrict design flexibility," some responded "the proposal established overly precise requirements, which would limit new designs and innovations." 55 Fed. Reg. 21869, 21871 (May 30, 1990). NHTSA therefore expanded its new rule to identify various alternative mechanisms of compliance. *Id.* at 21871–72. In another revision in 2006, NHTSA agreed with a manufacturer's petition that the existing rule used "terminology that was unnecessarily design-restrictive," and elected to broaden the standard. 71 Fed. Reg. 17752, 17753 (Apr. 7, 2006). Most recently, NHTSA in June 2023 rejected a petition by several state Attorneys General asking it to determine that the Hyundai and Kia vehicles at issue in this case violate FMVSS 114 because they do not employ immobilizer technology. The agency explicitly stated: "FMVSS No. 114 [] does not require an engine immobilizer." 2-ER-198.

### C. Plaintiffs' Claims Are Preempted Because They Seek Liability Based On Defendants' Decisions Not To Install Immobilizers

Plaintiffs accept that Defendants complied with FMVSS 114; they claim that Defendants violated state law by not installing immobilizers. Plaintiffs' claims thus seek to do precisely what the FMVSS 114 prohibits—deprive automakers of

compliance flexibility by imposing liability on them for not installing immobilizers. The CGEC could hardly be clearer on this point; by Defendants' count, the CGEC includes no fewer than 111 references to immobilizers, and it defines the "Susceptible Vehicles" that are the subject of the complaint as specific Hyundai- and Kia-branded models that were "manufactured and sold without immobilizers." 3-302–03. On the face of the complaint, which this Court can interpret as well as the district court, Plaintiffs' claims are therefore preempted under a straightforward reading of *Williamson*, *Geier*, and basic preemption principles.

The district court reached a contrary result only by misreading the plain language of the CGEC. The court identified purportedly "broad language" used by Plaintiffs "to describe what would have been permissible conduct by Defendants, such as 'standard anti-theft technology,' 'common anti-theft technology,' and 'industry-standard anti-theft measures.'" 1-ER-7. That reading, however, is contradicted by the allegations themselves, which expressly seek to hold Defendants liable for "forgoing installation of engine immobilizers." 3-ER-404. Indeed, according to Plaintiffs, "Defendants' failure to install an industry-standard *immobilization anti-theft device*" "has opened the floodgates to vehicle theft, crime sprees, reckless driving, and public harm." 3-ER-304 (emphasis added). And in Plaintiffs' own words, "[b]ut for Defendants' conduct in failing to follow industry standards by forgoing the installation of *vehicle immobilizers*," Plaintiffs would not

56

have sustained their purported harms. 3-ER-426 (emphasis added); *see also* 3-ER-325, 406, 411, 414, 417, 427, 434, 436, 440, 442.

In any event, the "broad" language the district court relied upon—"standard anti-theft technology," "common anti-theft technology," and "industry-standard anti-theft measures"—clearly refers to *one* specific device: an engine immobilizer. Plaintiffs allege that Defendants "manufactured and produced vehicles that fell below minimum, industry-standard security measures," *see, e.g.*, 3-ER-407, and then go on to explain that "nearly all cars sold in the United States by other manufacturers are equipped *with engine immobilizers*," 3-ER-406 (emphasis added), revealing that their claims, in fact, turn on the presence or absence of immobilizers.

The district court's contrary conclusion is all the more dubious when viewed alongside its subsequent decision to dismiss Chicago's first amended complaint ("FAC") on preemption grounds. The court rejected Chicago's argument that its "claims do not depend on the use of immobilizers," and are "analogous to the [CGEC]—which the Court ruled was not preempted—because it mentioned engine immobilizers just as the FAC does here." Chicago MTD Order at 5. According to the district court, while the CGEC included only "a handful of references to immobilizers"[13] and otherwise "discussed anti-theft technology overall in a broad

---

[13] The district court did not explain how the CGEC's roughly 111 references to immobilizers could be considered only a "handful."

sense that permitted solutions other than solely engine immobilizers," *id.* at 6, the Chicago FAC "definitively rests its claims [on] the allegation that Defendants failed to use engine immobilizers," and that "specific of a prescription runs afoul of federal government regulations that do not impose such a narrow requirement," *id.*

In dismissing the Chicago FAC the district court interpreted those allegations that did not specifically use the word "immobilizer(s)" as "still refer[ring] to engine immobilizers in context." *Id.* at 5. For example, the court pointed to paragraph 91 of the FAC as "[p]erhaps most conclusively sealing Chicago's claims as pertaining specifically to immobilizers": "The wave of thefts of Defective Vehicles in Chicago would have been prevented had Defendants included engine immobilizers." *Id.* The court did not explain why it did not apply the same interpretation to the virtually identical allegations of the CGEC, and it did not explain how or why it discounted the 100-plus explicit references to engine immobilizers in the CGEC. These inconsistent results highlight the need for clarity on the preemption issue. The court's first Chicago ruling was clearly correct: because Plaintiffs in substance seek to impose liability based on Defendants' failure to install immobilizers, their claims conflict with the flexibility mandated by federal law and are preempted.[14]

---

[14] The district court allowed Chicago to replead its allegations and denied a motion to dismiss, but the Second Amended Complaint in Chicago has the same defects as the first one and the CGEC: it ultimately turns on Defendants' decision not to install immobilizers. No amount of repleading can overcome that defect in Plaintiffs' core theory.

## **CONCLUSION**

For the reasons above, the Court should reverse the district court's denial of

Defendants' motion to dismiss Plaintiffs' negligence and public nuisance claims.


Dated: August 28, 2024                    Respectfully submitted,

                                          */s/ Christopher G. Michel*
                                          Christopher G. Michel
John B. Quinn                             QUINN EMANUEL URQUHART &
Kathleen M. Sullivan                      SULLIVAN LLP
Steven G. Madison                         1300 I Street NW, Suite 900
Justin C. Griffin                         Washington, D.C. 20005
QUINN EMANUEL URQUHART &                  (202) 538-8000
& SULLIVAN LLP
865 South Figueroa St., 10th Floor
Los Angeles, California 90071
(213) 443-3000

*Counsel for Defendants-Appellants*
*Hyundai Motor America*
*and Kia America, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 24-2350

I am the attorney or self-represented party.

**This brief contains** 13,926 **words,** including 85 words manually counted in any visual images, and xcluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6)

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** bri f and complies with th ord limit of Cir. R. 28.1-1

◯ is amicus brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with th ord limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) b cause *(select only one)*:

☐ it is a joint brief submitted by separately represented parti .

☐ a party or parties are filing a single brief in response to multiple briefs.

☐ a party or parties a filing a single brief in response to a longer joint brief.

◯ complies with the leng mit designated by court order dated

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Christopher G. Michel **Date** August 28, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/2*

# CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2024, I caused the foregoing Opening Brief of Defendants-Appellants Hyundai Motor America, Inc. and Kia America, Inc. to be electronically filed with the Clerk of the Court for the U.S. Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.  All participants in this case are registered CM/ECF users, and service will be accomplished through the appellate CM/ECF system.

Dated: August 28, 2024                         */s/ Christopher G. Michel*
                                               Christopher G. Michel