No. 24-2350

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CITY OF BUFFALO; CITY OF CINCINNATI; CITY OF CLEVELAND; CITY OF SEATTLE;
CITY OF ROCHESTER; CITY OF YONKERS; CITY OF GREEN BAY; TOWN OF
TONAWANDA; CITY OF COLUMBUS; CITY OF KANSAS CITY; CITY OF INDIANAPOLIS;
CITY OF MADISON; CITY OF MILWAUKEE; CITY OF NEW YORK; CITY OF PARMA;
CITY OF ST. LOUIS; CITY OF BALTIMORE,

*Plaintiffs-Appellees*,

v.

HYUNDAI MOTOR AMERICA, INC.; KIA MOTOR AMERICA, INC.,

*Defendants-Appellants*.

Appeal from the United States District Court for the Central District of California,
No. 8:22-ML-03052-JVS-KES, Hon. James V. Selna

**BRIEF OF *AMICI CURIAE* THE CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA AND WISCONSIN MANUFACTURERS
AND COMMERCE INC. IN SUPPORT OF APPELLANTS**

JONATHAN D. URICK
AUDREY BECK
U.S. CHAMBER LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062

*Counsel for the Chamber of Commerce
of the United States of America*

EVAN UMPIR
WISCONSIN MANUFACTURERS AND
COMMERCE INC.
501 E. Washington Ave.
Madison, WI 53703

*Counsel for Wisconsin Manufacturers
and Commerce Inc.*

SEPTEMBER 4, 2024

AILEEN M. MCGRATH
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Tel: (415) 268-6153
AMcGrath@mofo.com

DIANA L. KIM
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304

*Counsel for Amici*

## CORPORATE DISCLOSURE STATEMENT

Under Rule 26.1(a) of the Federal Rules of Appellate Procedure, the Chamber of Commerce of the United States of America ("the Chamber") states that it is a nonprofit, tax-exempt organization incorporated in the District of Columbia. The Chamber has no parent corporation, and no publicly held company has 10% or greater ownership in the Chamber.

The Wisconsin Manufacturers and Commerce Inc. ("WMC") states that it is a nonprofit, tax-exempt organization incorporated in Wisconsin. WMC has no parent corporation, and no publicly held company has a 10% or greater ownership interest in WMC.

Dated: September 4, 2024   /s/ Aileen M. McGrath
            Aileen M. McGrath

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ................................................................................ iii

INTEREST OF *AMICI CURIAE* ......................................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ....................................... 3

ARGUMENT ...................................................................................................... 6

I.      TORT LAW IMPOSES NO DUTY TO PROTECT AGAINST THIRD-PARTY CRIMINAL CONDUCT BASED SOLELY ON FORESEEABILITY ............................................................................. 6

      A.     There Is Traditionally No Duty To Protect Against Third-Party Criminal Conduct Absent A Special Relationship ............................. 6

      B.     Plaintiffs' Attempts To Establish Such A Duty Fail ........................... 10

II.     EXPANDING TORT LIABILITY BY RECOGNIZING A DUTY BASED SOLELY ON FORESEEABILITY WOULD HAVE VARIOUS DETRIMENTAL EFFECTS ....................................................... 14

      A.     Recognizing A Duty Based Solely On Foreseeability Would Contravene Fundamental Values Of Tort Law ................................... 15

            1.     Measuring duty by foreseeability alone would be limitless and unpredictable ....................................................................... 16

            2.     A foreseeability-based duty unfairly imposes liability on defendants with no control over third-party wrongdoers ......... 19

      B.     Recognizing Expansive New Tort Duties Would Invade The Province Of Legislatures And Regulatory Agencies .......................... 21

      C.     Plaintiffs' Limitless Duty Would Have Far-Reaching Harmful Consequences For Businesses And Consumers ................................... 24

CONCLUSION .................................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Geier v. Am. Honda Motor Co.*,
    529 U.S. 861 (2000)........................................................................23

*Ileto v. Glock Inc.*,
    370 F.3d 860 (9th Cir. 2004) ..............................................21, 22, 26

*McCarthy v. Olin Corp.*,
    119 F.3d 148 (2d Cir. 1997) ...........................................................26

**State Cases**

*A.E. Inv. Corp. v. Link Builders, Inc.*,
    62 Wis. 2d 479 (1974) ....................................................................11

*A.M. v. Miami Univ.*,
    88 N.E.3d 1013 (Ohio Ct. App. 2017)..............................................9

*Brashear v. Liebert Corp.*,
    No. 06AP-252, 2007 WL 184888 (Ohio Ct. App. Jan. 25, 2007)....................11

*Cincinnati v. Beretta USA Corp.*,
    95 Ohio St. 3d 416 (2002) .........................................................10, 11

*Estate of Ciotto v. Hinkle*,
    145 N.E.3d 1013 (Ohio Ct. App. 2019)...................... 6, 8, 10, 12, 13, 16, 23, 24

*Cromer v. Children's Hosp. Med. Ctr. of Akron*,
    142 Ohio St. 3d 257 (2015) ........................................................11, 12

*Eisenhuth v. Moneyhon*,
    161 Ohio St. 367 (1954) ............................................................11, 12

*Estates of Morgan v. Fairfield Fam. Counseling Ctr.*,
    77 Ohio St. 3d 284 (1997) .................................................6, 7, 10, 20

*Gedeon v. E. Ohio Gas Co.*,
    128 Ohio St. 335 (1934) .................................................................11

*Gritzner v. Michael R.*,
   235 Wis. 2d 781 (2000) ........................................................................12

*Hamilton v. Beretta USA Corp.*,
   96 N.Y.2d 222 (2001) ........................................ 6, 7, 8, 12, 13, 15, 16, 18, 19, 24

*He v. Apple, Inc.*,
   189 A.D.3d 1984 (N.Y. App. Div. 2020) ............................................9

*Jankee v. Clark Cnty.*,
   235 Wis. 2d 700 (2000) ..................................................................6, 7, 12

*Kamnikar v. Fiorita*,
   No. 16AP-736, 2017 WL 2817467 (Ohio Ct. App. June 29, 2017)...................14

*Landon v. Kroll Lab'y Specialists, Inc.*,
   22 N.Y.3d 1 (2013) ..........................................................................11

*Peralta v. Henriquez*,
   100 N.Y.2d 139 (2003) ....................................................................13

*Power v. Boles*,
   110 Ohio App. 3d 29 (1996) ............................................................14

*Pulka v. Edelman*,
   40 N.Y.2d 781 (1976) ........................................... 6, 7, 8, 12, 16, 18, 19, 20, 24

*Roe ex rel. Roe v. Heap*,
   No. 03AP-586, 2004 WL 1109849 (Ohio Ct. App. May 11, 2004)...................16

*Santoro v. Poughkeepsie Crossings, LLC*,
   115 N.Y.S.3d 368 (N.Y. App. Div. 2019) ...........................................13

*Simpson v. Big Bear Stores Co.*,
   73 Ohio St. 3d 130 (1995) ...........................................................6, 8, 9, 13

*Stephenson v. Universal Metrics, Inc.*,
   251 Wis. 2d 171 (2002) ...................................................................13

*Tesar v. Anderson*,
   329 Wis. 2d 240 (Wis. Ct. App. 2010) ..............................................11

*Winslow v. Brown*,
  125 Wis. 2d 327 (Wis. Ct. App. 1985) ..........................................................6, 7, 9

**Federal Statutes and Regulations**

Motor Vehicle Theft Law Enforcement Act,
  49 U.S.C. § 331 ...................................................................................................22

National Traffic and Motor Vehicle Safety Act,
  49 U.S.C. § 301 ...................................................................................................22

49 C.F.R. § 571.114 .................................................................................................22

33 Fed. Reg. 6471 (1968) ..............................................................................22, 23, 26

**Other Authorities**

Restatement (Second) of Torts § 324A (Am. L. Inst. 1965) ..........................13, 14

*In re: Kia Hyundai Vehicle Theft Mktg., Sales Pracs., & Prods. Liab.
  Litig.*, No. 8:22-ml-3052 (C.D. Cal. Oct. 3, 2023) ("Opp'n Mot.
  Dismiss"), ECF No. 241 .......................................................................17, 24, 26

"How Lawsuits Cost You $3,600 a Year," *The Wall Street Journal*
  (Dec. 11, 2022) ....................................................................................................26

David Williams, "The Economic Impact of Mass Tort Litigation,"
  *Real Clear Markets* (Oct. 9, 2023) ....................................................................27

"Tort Costs in America: An Empirical Analysis of Costs and
  Compensation of the U.S. Tort System," *U.S. Chamber of
  Commerce* (Nov. 2022)........................................................................................27

## INTEREST OF *AMICI CURIAE*[1]

The Chamber of Commerce of the United States of America ("the Chamber") is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the nation's business community. *E.g.*, *Pharmaceutical Rsch. & Mfrs. of Am. v. Landsberg*, No. 21-16312 (9th Cir. Nov. 23, 2021), ECF No. 12; *Pirani v. Slack Techs., Inc.*, No. 20-16419 (9th Cir. Nov. 2, 2020), ECF No. 20-2.

Wisconsin Manufacturers and Commerce Inc. ("WMC") is Wisconsin's chamber of commerce and manufacturers' association. With member businesses of all sizes and across all sectors of Wisconsin's economy, WMC is the largest business trade association in Wisconsin. Since its founding in 1911, WMC has been

---

[1] All parties consented to the filing of this brief under Federal Rule of Appellate Procedure 29(a)(2). Pursuant to Rule 29(a)(4)(E), *amici* affirm that (1) no party's counsel authored this brief in whole or in part; (2) no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and (3) no person or entity, other than *amici*, their members, or their counsel, contributed money that was intended to fund preparing or submitting the brief.

dedicated to making Wisconsin the most competitive state in the nation in which to conduct business.

Amici have a strong interest in this case. Plaintiffs contend that businesses like Hyundai Motor America, Inc. and Kia Motor America, Inc. (collectively, "defendants" or the "manufacturers") owe a duty under various states' tort laws to compensate local governments for fiscal expenditures caused by the criminal acts of third parties outside the businesses' control. Creating such a duty would impose significant burdens on amici's members with cascading negative effects for both industry and consumers. Many of amici's members provide products that could be stolen or misused by third parties. They depend on established limits to tort-law duties to prevent them from being held liable as quasi-insurers against third parties' wrongdoing. As leading business organizations, amici are uniquely positioned to explain the harmful consequences that would result from plaintiffs' unwarranted attempt to expand those duties.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The district court recognized that the plaintiffs in this case assert a "novel" type of negligence claim: plaintiff governmental entities seek to hold defendant car manufacturers and distributors liable for local law-enforcement expenditures incurred in response to thefts and other criminal misconduct involving cars manufactured and distributed by the defendants. 1-ER-10. It is undisputed that the defendants had no relationship with, or control over, the criminals who stole the cars. *Id.* at 8. It is also undisputed that the defendants have no relationship with the governmental-entity plaintiffs. *Id.* Nevertheless, plaintiffs contend that the manufacturers and distributors had a duty to protect against third-party criminal misconduct, and to pay the government entities for all costs caused by that misconduct, because those third-party crimes were allegedly foreseeable. Plaintiffs' purported definition of a tort-law duty based solely on foreseeability is contrary to fundamental tort principles and would dramatically expand tort liability beyond all recognition, with negative impacts on both businesses and consumers. The district court erred in embracing this untethered theory and allowing plaintiffs' negligence claims to proceed.

As the manufacturers have shown in their brief, longstanding and widely accepted tort principles reject imposing a duty to prevent third-party crime based solely on foreseeability. A central limitation on tort liability is the general rule that

3

there is no duty to control a third party's conduct or to protect others from harms caused by third parties. A narrow exception to that rule exists where the defendant has a special relationship with the wrongdoer or the plaintiff. But absent such a special relationship, the mere fact that harm may be foreseeable is insufficient to establish a duty of care.

Without any basis in existing tort law for their claims, plaintiffs ask this Court, sitting in diversity, to expand the tort law of various states by adopting foreseeability as a new basis for establishing a duty of care. That expansive definition would contravene the very purpose of the duty requirement, which is to reflect societal judgments about the unfairness of holding one person liable for the crimes of another and to protect defendants from limitless and unpredictable liability. Under plaintiffs' approach, businesses would become quasi-insurers against any third-party crimes related to their products or services, with no ability to control the criminals' conduct in the first place. Unmoored from any relationship requirement, businesses' exposure to liability would be limitless, as they could be accountable to an indeterminate class of plaintiffs for the conduct of an indeterminate class of third-party criminals.

Complying with that new sweeping duty would place unmanageable and unpredictable burdens on businesses. A foreseeability standard contains no clear ex ante limits and no logical stopping point because businesses cannot control who uses

their products after they are sold. A boundless duty standard would leave businesses unable to reliably predict their tort exposure and make reasoned business judgments about how to mitigate risks. Instead, businesses would be forced to implement overbroad and costly protective measures to address those ill-defined risks; divert resources to address the threat of constant litigation; and adhere rigidly to industry norms in the hope of reducing their exposure. The result will be that many businesses will have reduced ability and incentive to create innovative new products. Others may ultimately choose to restrict the products and services they offer altogether to reduce their risks. In all events, consumers will bear the ultimate price in the form of higher costs and less useful and diverse goods and services.

This Court should reject plaintiffs' attempt to erase the established limits on the duty to protect against third-party harm. That does not mean, of course, that plaintiffs who are harmed by crimes and the costs flowing from that misconduct will have no recourse; no one disputes that criminals can and should be held accountable for their crimes. But the question here is whether liability for those crimes should extend to a business with no connection to those criminals. It should not.

## ARGUMENT

I. **TORT LAW IMPOSES NO DUTY TO PROTECT AGAINST THIRD-PARTY CRIMINAL CONDUCT BASED SOLELY ON FORESEEABILITY**

   A. **There Is Traditionally No Duty To Protect Against Third-Party Criminal Conduct Absent A Special Relationship**

The existence of a duty is an "essential" requirement for any negligence claim. *Estates of Morgan v. Fairfield Fam. Counseling Ctr.*, 77 Ohio St. 3d 284, 293 (1997); *Hamilton v. Beretta USA Corp.*, 96 N.Y.2d 222, 232 (2001). It ensures that tort liability is fair, predictable, and beneficial to society by requiring plaintiffs to prove that their "interests 'are entitled to legal protection against the defendant's conduct.'" *Estate of Ciotto v. Hinkle*, 145 N.E.3d 1013, 1019 (Ohio Ct. App. 2019); *Pulka v. Edelman*, 40 N.Y.2d 781, 782 (1976). The duty element thus serves to protect defendants against "limitless liability to an indeterminate class of persons conceivably injured by any negligence." *Hamilton*, 96 N.Y.2d at 232 (citation omitted).

A critical component of that protection is the traditional rule that there is generally "no duty to control the conduct of third persons so as to prevent them from harming others." *Id.* at 233 (citation omitted); *Simpson v. Big Bear Stores Co.*, 73 Ohio St. 3d 130, 133 (1995); *Jankee v. Clark Cnty.*, 235 Wis. 2d 700, 755 (2000); *Winslow v. Brown*, 125 Wis. 2d 327, 331 (Ct. App. 1985). That is so "[r]egardless of the gravity of danger threatening the potential victim, or the relative ease with

which the danger can be averted." *Morgan*, 77 Ohio St. 3d at 293 n.2. This rule reflects the societal judgment that it would be "most unfair" to hold one person liable for the wrongdoing of another—especially another who is beyond the person's control. *Pulka*, 40 N.Y.2d at 784; *Hamilton*, 96 N.Y.2d at 233.

Consistent with that judgment, tort law recognizes a narrow exception to this rule if a defendant has a "special relationship" with the third-party wrongdoer or the plaintiff that would make it fair to require the defendant to control the wrongdoer or protect the plaintiff. *Hamilton*, 96 N.Y.2d at 233; *Morgan*, 77 Ohio St. 3d at 294; *Jankee*, 235 Wis. 2d at 755; *Winslow*, 125 Wis. 2d at 331. Courts recognize special relationships, for example, between master and servant, parent and child, common carrier and passenger, psychotherapist and patient, and institutional caregiver (*e.g.*, prison or hospital) and one committed to its custody. *Hamilton*, 96 N.Y.2d at 233; *Morgan*, 77 Ohio St. 3d at 294; *Jankee*, 235 Wis. 2d at 755.

Finding a duty in such narrow circumstances is fully consistent with the purpose of the duty requirement. It is fair to hold a defendant liable if, by virtue of the relationship, the defendant has assumed either the ability and authority to control the third-party wrongdoer or the responsibility to protect a dependent plaintiff. *Pulka*, 40 N.Y.2d at 783; *Morgan*, 77 Ohio St. 3d at 300 n.5 ("The ability to control is a necessary but not a sufficient basis for finding a special relation."); *Jankee*, 235 Wis. 2d at 755 ("[C]ertain caregivers, such as hospitals and prisons, assume

enhanced responsibilities in protective or custodial situations."). And "the specter of limitless liability is not present because the class of potential plaintiffs to whom the duty is owed is circumscribed by the relationship." *Hamilton*, 96 N.Y.2d at 233.

But absent a special relationship, there is traditionally no duty to prevent harms from third parties' wrongdoing. Courts have often held that the mere fact that such harm may be foreseeable cannot establish a duty of care. *Hamilton*, 96 N.Y.2d at 235 ("[A] duty and the corresponding liability it imposes do *not* rise from mere foreseeability of the harm.") (emphasis in original); *Pulka*, 40 N.Y.2d at 785 ("Foreseeability should not be confused with duty."); *Ciotto*, 145 N.E.3d at 1026-27 ("Even if 'the actor realizes or should realize that action on his part is necessary for another's aid or protection' that realization will not, standing alone, impose such a duty.") (citation omitted); *Simpson*, 73 Ohio St. 3d at 134 ("Foreseeability alone is insufficient to create liability.").

For example, courts have held that manufacturers have no duty to prevent their products from falling into the wrong hands, even though they know that "large numbers of their [products] enter the illegal market and are used in crime" (*Hamilton*, 96 N.Y.2d at 231); that a parking garage has no duty to protect off-premises pedestrians from injury, even though "there was evidence that patrons of the garage often drove their cars out of the garage and across the sidewalk without stopping" (*Pulka*, 40 N.Y.2d at 783); that a technology company has no duty to

8

protect customers from scammers by suspending scammers' accounts, even "after learning of their conduct" (*He v. Apple, Inc.*, 189 A.D.3d 1984, 1986 (N.Y. App. Div. 2020)); that a university has no duty to protect a student from an off-campus assault by another student, despite reports that the offender had committed prior misconduct against fellow students (*A.M. v. Miami Univ.*, 88 N.E.3d 1013, 1022-23 (Ohio Ct. App. 2017)); that a supermarket has no duty to warn its patrons of the risk of off-premises crimes occurring in adjacent areas, even though nine purse-snatchings had occurred in the preceding four years (*Simpson*, 73 Ohio St. 3d at 134-35; *see id.* at 136-37 (Resnick, J., dissenting)); and that passengers in an automobile have no duty to act as "lookout" for bicyclists, even though they were aware that the driver of the automobile was driving illegally on a bicycle-only trail (*Winslow*, 125 Wis. 2d at 337-38).

Contrary to this established precedent, the district court here concluded—based solely on foreseeability—that Hyundai and Kia had a duty to protect governmental entities from fiscal expenditures resulting from automobile thefts. 1-ER-8-10. That was wrong. The court below recognized, and the governmental-entity plaintiffs conceded, that the manufacturers had no special relationship with plaintiffs or the car thieves. *Id.* at 8. That should end the inquiry.

### B.     Plaintiffs' Attempts To Establish Such A Duty Fail

Plaintiffs have failed to establish that foreseeability alone gives rise to a duty to protect against crimes by third parties.  Many cases they cite are inapposite.

*First*, plaintiffs have pointed to cases addressing a defendant's duty to protect against a risk of harm created by its own affirmative misconduct.  *E.g.*, *Cincinnati v. Beretta USA Corp.*, 95 Ohio St. 3d 416 (2002).  Those cases have no bearing on whether a defendant has a duty to protect against a *third party*'s criminal conduct.  The Ohio Supreme Court explained the significance of this distinction:  "While there is a duty to refrain from active misconduct working positive injury on others, there is no duty to take affirmative action to aid or protect another from harm."  *Morgan*, 77 Ohio St. 3d at 293 n.2; *see Ciotto*, 145 N.E.3d at 1026.

For that reason, plaintiffs' reliance on cases like *Cincinnati* (2-ER-114) is misplaced.  There, the Ohio Supreme Court held that handgun manufacturers owed a duty to protect against criminal misuse of firearms because those manufacturers had "engaged in affirmative acts" that "create[d] an illegal, secondary firearms market."  *Cincinnati*, 95 Ohio St. 3d at 422; *compare* 1-ER-8-10 (no comparable finding here).  Indeed, the Ohio Supreme Court expressly disclaimed reaching the question presented in this case, explaining that the issue in *Cincinnati* was "not whether appellees owed appellant a duty to control the conduct of third parties."  *Cincinnati*, 95 Ohio St. 3d at 421-22.  By its plain terms, *Cincinnati* does not

establish a tort duty to protect against third-party harm based solely on foreseeability.

Likewise, many of plaintiffs' other cherrypicked cases do not involve third-party wrongdoing at all and thus also do not address the question presented here. *E.g.*, *Landon v. Kroll Lab'y Specialists, Inc.*, 22 N.Y.3d 1, 3-4 (2013) (defendant laboratory affirmatively "launche[d] a force or instrument of harm" by reporting false positive on plaintiff's drug test); *Gedeon v. E. Ohio Gas Co.*, 128 Ohio St. 335, 338-39 (1934) (defendant created danger by stepping into street without looking and causing oncoming car to swerve into another vehicle); *Brashear v. Liebert Corp.*, No. 06AP-252, 2007 WL 184888, at *1 (Ohio Ct. App. Jan. 25, 2007) (defendant created danger by loading cargo onto tractor-trailer without properly securing the load, which moved and caused the tractor to flip); *Tesar v. Anderson*, 329 Wis. 2d 240, 244-45 (Ct. App. 2010) (defendant pregnant mother drove negligently, resulting in car accident that killed her unborn baby); *A.E. Inv. Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 485-86 (1974) (defendant architect's allegedly poor design of supermarket building caused damage to walls and floor).

*Second*, plaintiffs also cite cases that discuss foreseeability in addressing the scope or standard of care of an existing duty. *See, e.g.*, *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St. 3d 257, 264 (2015) ("foreseeability of harm is relevant to a physician's standard of care"); *Eisenhuth v. Moneyhon*, 161 Ohio St.

11

367, 371-72 (1954) (addressing "standard of conduct"). That is a distinct question from whether a duty exists in the first place. In *Cromer*, for example, it was undisputed that a duty arose from the defendant's physician-patient relationship, and the only issue was whether he had "exercised reasonable care" in choosing a particular course of treatment. 142 Ohio St. 3d at 258, 263-64; *see Eisenhuth*, 161 Ohio St. at 371-72 (duty created by statute).

While foreseeability may limit "the scope and extent of the duty" if one exists, it cannot create such a duty. *Hamilton*, 96 N.Y.2d at 232 ("Foreseeability, alone, does not define duty—it merely determines the scope of the duty once it is determined to exist.") (citations omitted); *Pulka*, 40 N.Y.2d at 785; *Ciotto*, 145 N.E.3d at 1019-20 ("Duty and foreseeability, therefore, are separate things, with foreseeability defining 'the scope and extent of the duty.'") (citation omitted). Thus, any discussion of foreseeability in those cases is entirely unhelpful to the question this Court must answer here. [2]

*Third*, plaintiffs wrongly rely on cases creating specific and narrow duties that apply exclusively in unique and distinct contexts. For example, plaintiffs cite cases

---

[2] Some Wisconsin courts have ascribed different roles to foreseeability in the duty analysis. *Compare Jankee*, 235 Wis. 2d at 756, *with Gritzner v. Michael R.*, 235 Wis. 2d 781, 791-94 (2000). But that does not warrant this Court expanding duty further where, as discussed below (*infra* pp. 14-27), doing so would undermine traditional tort principles and trigger significant harmful consequences.

addressing premises-liability claims. *See, e.g.*, *Peralta v. Henriquez*, 100 N.Y.2d 139, 141 (2003) (duty of lot owner to illuminate lot). But premises-liability claims follow different rules that do not apply outside the landowner context, as courts have recognized time and again. *Hamilton*, 96 N.Y.2d at 233 (landowners' duty to protect tenants, patrons, or invitees "does not extend beyond that limited class of plaintiffs to members of the community at large"); *Ciotto*, 145 N.E.3d at 1020-33 (applying different rules for premises liability and duty to control others); *Simpson*, 73 Ohio St. 3d at 134 (treating relationship between business owner and invitee as a "special relationship").

Plaintiffs also cite cases relying on the Restatement (Second) of Torts § 324A (Am. L. Inst. 1965), which provides a narrow exception creating a duty to protect against third-party harm if the defendant voluntarily assumed that duty by "undertak[ing], gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things." *See, e.g.*, *Stephenson v. Universal Metrics, Inc.*, 251 Wis. 2d 171, 185 (2002) (defendant allegedly "voluntarily assumed a duty to drive [intoxicated coworker] home" by indicating to bartender that he would do so). But where the defendant did not voluntarily assume a duty to provide any such service, this exception is inapplicable. *See Santoro v. Poughkeepsie Crossings, LLC*, 115 N.Y.S.3d 368, 376 (N.Y. App. Div. 2019) ("The question is whether the defendant's conduct placed the

plaintiff in a more vulnerable position than the plaintiff would have been in had the defendant done nothing.") (alterations and citation omitted); *Power v. Boles*, 110 Ohio App. 3d 29, 35 (1996) (similar); *see also Kamnikar v. Fiorita*, No. 16AP-736, 2017 WL 2817467, at *6 (Ohio Ct. App. June 29, 2017) (Restatement § 324A applies "only where the tortfeasor's negligence results in physical harm").  Here, the manufacturers did not voluntarily assume a duty to provide any services for the plaintiff municipalities—making cases regarding voluntary assumption of a duty wholly beside the point.

Indeed, that tort law recognizes narrow and specific exceptions to the general rule that defendants owe no duty to protect against third-party misconduct only confirms that plaintiffs' argument is incorrect.  If tort law recognized a duty flowing entirely from foreseeability, that broad and amorphous duty would swallow up the narrow exceptions that courts have applied for generations.  A recognition of broad tort duties that would render various other tort-law doctrines superfluous cannot be, and is not, correct.

## II. EXPANDING TORT LIABILITY BY RECOGNIZING A DUTY BASED SOLELY ON FORESEEABILITY WOULD HAVE VARIOUS DETRIMENTAL EFFECTS

Plaintiffs' failure to show that existing law recognizes a tort duty based solely on foreseeability is reason enough for this Court to reject their argument.  But that is not the only reason:  accepting plaintiffs' invitation to expand tort-law duties

would undermine important values underlying the duty requirement, interfere with the judgments of legislatures and regulatory agencies in setting industry standards, and impose on businesses significant burdens that will ultimately be passed on to consumers. Those harmful consequences would extend far beyond the manufacturers and distributors in this case to myriad other businesses, as many commercially useful and socially beneficial products can be stolen or misused by criminals. That outcome underlines why this Court should decline plaintiffs' request to dramatically expand the traditional reach of the duty requirement.

### A. Recognizing A Duty Based Solely On Foreseeability Would Contravene Fundamental Values Of Tort Law

Enlarging duty as plaintiffs seek would contravene basic tort-law principles and undermine the very purpose of the duty requirement. As explained above, the duty element ensures that liability remains within reasonable limits and is fairly imposed only on those society has deemed culpable. Thus, "judicial resistance to the expansion of duty grows out of practical concerns both about potentially limitless liability and about the unfairness of imposing liability for the acts of another." *Hamilton*, 96 N.Y.2d at 233. Creating a duty based solely on foreseeability would upset both core principles.

### 1. Measuring duty by foreseeability alone would be limitless and unpredictable

Established common-law principles recognize that a key purpose of the duty requirement is "to avoid subjecting an actor 'to limitless liability to an indeterminate class of persons conceivably injured by any negligence in [the defendant's] act.'" *Hamilton*, 96 N.Y.2d at 232 (citation omitted). And "[o]wing to its deterrent purpose and effect, tort law must be as clear and certain as possible so that it may serve its function in regulating how persons deal with and treat one another." *Roe ex rel. Roe v. Heap*, No. 03AP-586, 2004 WL 1109849, at *25 (Ohio Ct. App. May 11, 2004). Any expansion of duty must therefore "limit the legal consequences of wrongs to a controllable degree." *Hamilton*, 96 N.Y.2d at 232. (citations omitted). Plaintiffs' novel duty erodes these important protections, as plaintiffs identify no clear test or limiting principle to enable defendants to discern the boundaries of their liability. That failure is unsurprising because a foreseeability-based duty is inherently "difficult of definition"—"both in respect to space and the extent of care to be exercised." *Pulka*, 40 N.Y.2d at 786.

*First*, in respect to the extent of care, a foreseeability standard—unlike the special relationship standard—is "unmoored from any clear focus" and "fails to clearly identify the specific circumstances such a new duty would address." *Ciotto*, 145 N.E.3d at 1031. Plaintiffs effectively admit as much, insofar as they offer an unmanageably broad definition of foreseeability that is "not affected by the

16

magnitude, severity, or exact probability of a specific harm," but instead asks only "whether *some* risk of harm would be foreseeable to the reasonably prudent person." Governmental Entities' Opp'n to Mot. To Dismiss at 39, *In re: Kia Hyundai Vehicle Theft Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 8:22-ml-3052 (C.D. Cal. Oct. 3, 2023) ("Opp'n Mot. Dismiss"), ECF No. 241 (emphasis in original). That standard would leave unanswered various critical questions about the level of risk necessary to trigger the duty. For example, how many past crimes must occur before a future crime is foreseeable? Over what period of time? How similar must the crimes be? Must prior crimes specifically target defendants' products, or will thefts of other vehicles render the harm foreseeable for all car manufacturers and distributors? Plaintiffs' amorphous foreseeability standard ignores such questions and would leave manufacturers, distributors, and other defendants guessing about their exposure to liability.

Moreover, plaintiffs do not (and cannot) delineate what kinds of third-party wrongs defendants would be liable for preventing. Nothing about their theory of duty is limited to car thefts. If this Court adopts plaintiffs' foreseeability-based definition of duty, future plaintiffs may argue that car manufacturers should foresee—and therefore protect against—not only criminals stealing cars, but also drivers speeding or driving while intoxicated, or criminals using their own cars to commit robberies or other crimes. And plaintiffs' new rule would affect a wide

variety of businesses beyond car manufacturers. Similar examples exist for virtually any product or service: manufacturers of cellphones, laptops, or nearly any valuable item may be required to prevent the theft of their products; service providers may be required to protect against scammers impersonating them; and more.

*Second*, the breadth of plaintiffs' proposed duty rule is compounded by a corresponding limitlessness "in respect to space." *Pulka*, 40 N.Y.2d at 786. A foreseeability-based duty opens the door for liability to an indeterminate class of plaintiffs based on conduct from an indeterminate class of third-party wrongdoers. *Hamilton*, 96 N.Y.2d at 236. Unlike a special relationship, which can exist only with clearly defined persons, there are no discernible limits on who can cause a foreseeable wrong or who can suffer a foreseeable harm from that wrong. For example, the manufacturers' cars are driven in cities all across the country, and it is difficult even for law enforcement to predict when and where crimes will occur. Plaintiffs' theory of duty would require manufacturers to protect a "very large" "pool of possible plaintiffs" from crimes only "remote[ly]" connected to manufacturers themselves. *Id.* at 233-34. The result is essentially "[n]egligence in the air, so to speak," which courts have reiterated "will not do." *Pulka*, 40 N.Y.2d at 782 (citation omitted).

The specter of limitless liability is even more expansive if, as plaintiffs seek here, defendants can be held liable to governmental entities, and similar plaintiffs,

for indirect consequences allegedly foreseeable from third-party crimes. Plaintiffs claim the manufacturers should have foreseen not only that their cars may be stolen but also that the thefts would burden municipalities when the victims sought law-enforcement assistance or the criminals committed other crimes with the stolen cars. 1-ER-9. But the foreseeable impacts on local governments might not end there: third-party misconduct could result in hospital visits, the use of social services or other safety-net resources, or damage to or increased use of public property. Governments could use a foreseeability-based standard to turn businesses into quasi-insurers for many of their expenditures.

If expanded in those ways, the duty element's function of ensuring predictability and reasonable limits on liability would evaporate. *See Hamilton*, 96 N.Y.2d at 232. The resulting unpredictability would undermine tort law's purpose of incentivizing rational actors to efficiently balance risks and benefits in a manner that is optimal for society.

### 2. *A foreseeability-based duty unfairly imposes liability on defendants with no control over third-party wrongdoers*

Plaintiffs' proposed duty would also undermine another important value protected by the duty requirement: fairness. As a plethora of cases demonstrate (*supra* pp. 6-9), tort law generally refuses to impose a duty to prevent harms caused by others because it would be unfair to hold one person liable for another's wrongdoing. *Hamilton*, 96 N.Y.2d at 233; *Pulka*, 40 N.Y.2d at 784. Special

relationships warrant a narrow exception to this rule because those relationships give defendants the ability and authority to control third-party wrongdoers. *Pulka*, 40 N.Y.2d at 783; *Morgan*, 77 Ohio St. 3d at 300 n.5. Mere foreseeability, in contrast, does no such thing.

Here, there is no doubt that car thefts are reprehensible crimes that place financial and social burdens on society. Both tort and criminal law recognize the seriousness of those offenses by holding accountable the party responsible—the criminals who stole the cars. But the same moral judgment does not extend to those who do not share in the criminals' culpability. The manufacturers did not steal the cars or in any way aid or abet others in stealing them. And they have no ability or authority to control the criminals' conduct. When manufacturers put products into the stream of commerce, they generally lose the ability to control, or even know, who uses the products and how because the products may be resold, shared, or—in this case—stolen. It would be "most unfair" to hold the manufacturers responsible for criminal actions that are beyond their control. *Pulka*, 40 N.Y.2d at 784.

Adopting a foreseeability-based definition of duty would eviscerate tort law's underlying fairness principle. Indeed, it would turn that principle entirely on its head by making liability for third-party conduct the norm rather than the exception. Many harms caused by others are foreseeable, especially when foreseeability is defined in the broad, highly general way plaintiffs propose. For example, stores located in

high-crime areas may expect that their patrons face some risk of robbery after they leave the premises; neighbors may suspect that others in their neighborhood are using their homes for unlawful activities; and bystanders may witness crimes as they occur. Society's moral judgments do not typically fault those stores, neighbors, or bystanders for the harm from those crimes. Yet plaintiffs would find those defendants liable for third-party crimes unless that misconduct was somehow unexpected. That is not how tort law does or should work.

## B. Recognizing Expansive New Tort Duties Would Invade The Province Of Legislatures And Regulatory Agencies

In addition to undermining foundational tort-law principles, plaintiffs' proposed expansion of duty would distort the relationship between courts and the other branches. Judges of this Court have recognized that tort law is effectively "a form of regulation administered through the courts rather than the state's regulatory agencies." *Ileto v. Glock Inc.*, 370 F.3d 860, 868 (9th Cir. 2004) (Kozinski, J., dissenting from denial of rehearing en banc, with whom O'Scannlain, Kleinfeld, Gould, Callahan, and Bea, JJs., join). Compared to legislation and regulations, however, tort law is a "peculiarly blunt and capricious method of regulation, depending as it does on the vicissitudes of the legal system, which make results highly unpredictable in probability and magnitude." *Id.* By "adopting broad new theories of [tort] liability," courts risk "undermin[ing] the democratic process

through which the people normally decide whether, and to what degree, activities should be fostered or discouraged within the state." *Id.*

As is equally true for many other industries, car manufacturing is already subject to a rigorous federal regulatory scheme setting many standards with which manufacturers must comply to sell their products—including standards relating to safety and anti-theft technology. *E.g.*, National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § 301; Motor Vehicle Theft Law Enforcement Act, 49 U.S.C. § 331. In fact, the U.S. Department of Transportation's National Highway Traffic Safety Administration ("NHTSA") specifically addressed the question at issue here—anti-theft protection requirements—by promulgating Federal Motor Vehicle Safety Standard ("FMVSS") 114. 49 C.F.R. § 571.114.

FMVSS 114 requires cars to have a starting system that prevents "(a) [t]he normal activation of the vehicle's engine or motor; and (b) [e]ither steering, or forward self-mobility, of the vehicle, or both," whenever the key is removed. *Id.*, S5.1.1. This flexible standard does not mandate the specific engine immobilizers plaintiffs seek to require (2-ER-198) and was instead "framed to permit as many specific devices as possible to meet its requirements." 33 Fed. Reg. 6471, 6472 (1968). That choice was deliberate: NHTSA declined to require any "specific theft protection devices" because the agency concluded "it would be unwise to establish

a standard in terms so restrictive as to discourage technological innovation in the field of theft inhibition." 33 Fed. Reg. at 6472.

Using tort law to impose additional requirements that the agency deliberately eschewed would undermine the federal regulatory scheme—particularly the flexibility and innovation it encourages. In effect, plaintiffs ask this Court to require a specific theft-protection device, despite NHTSA's assessment that doing so would be "unwise." *Id.* Permitting that end-run via a tort lawsuit would override NHTSA's expert judgment. *Cf. Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 886 (2000) (refusing to allow "rule of state tort law" that "would stand as an 'obstacle' to the accomplishment of [the agency's] objective"). And more generally, courts are ill-suited for making the complex policy and technical judgments needed to decide which technologies are most effective for deterring third-party crime and whether industry standards should be required of all vehicles or instead leave room for experimentation. That is "the province of the legislature," "where the forum encourages, and indeed requires, vigorous debate of the broad considerations, eliciting and weighing the societal factors, and only then creating new law that imposes new duties on the community at large." *Ciotto*, 145 N.E.3d at 1030, 1031-32 (citation omitted). If plaintiffs believe engine immobilizers should be required, they can present those arguments before NHTSA or the legislature. Tort-law

jurisprudence is an inappropriate replacement for the political process, and not just within this circuit, but in states across the country.

### C. Plaintiffs' Limitless Duty Would Have Far-Reaching Harmful Consequences For Businesses And Consumers

Finally, in deciding whether to create a novel duty, courts must consider whether "its social benefits outweigh its costs" to avoid "set[ting] a dangerous precedent with unintended consequences." *Hamilton*, 96 N.Y.2d at 232; *Ciotto*, 145 N.E.3d at 1031. The vast and unpredictable foreseeability-based duty plaintiffs propose will impose "impractical and unbearable" burdens on manufacturers, distributors, and similar businesses. *See Pulka*, 40 N.Y.2d at 786. And those burdens will ultimately fall on consumers, who will pay higher prices for less innovative products and other goods.

Whereas regulations like FMVSS 114 clearly and prescriptively define what is required of manufacturers (*supra* p. 22), businesses cannot easily anticipate what judges and juries will retroactively determine was needed to comply with a tort duty based solely on foreseeability. Plaintiffs' theory of liability here illustrates that difficulty. Plaintiffs fault the manufacturers for not including engine immobilizers in their vehicles because, plaintiffs claim, there were "multiple research studies showing the efficacy of energy immobilizers in reducing overall theft rates." Opp'n Mot. Dismiss at 39. But those "research studies" provide no direction to manufacturers about how to avoid liability for third-party crimes, where there are

likely numerous research studies about any number of different anti-theft technologies, as well as new research continuously being conducted.

And even if "research studies" could delimit manufacturers' liability, that standard would still impose unnecessary burdens and costs on manufacturers—especially those operating in industries where technology is rapidly developing. Businesses cannot realistically be expected to identify and implement every imaginable safety feature that some research study claims could potentially prevent third-party crime. The costs of monitoring new research developments and crime reports nationwide would be substantial, even putting aside the costs of implementing any new protective measures identified. And on top of that, businesses would face the additional challenge of, and related costs from, deciphering the recommendations of various studies and guessing about how many studies must be published to trigger a duty to implement a particular technology. Faced with this intractable uncertainty, businesses will be unable to assess their exposure and make appropriate business judgments, such as deciding how much liability insurance to purchase and how much cash to keep on hand to prepare for future settlements and litigation.

And the costs from using tort law to turn industry norms into legal requirements will not end there—innovation and consumer choice will also be compromised. For example, plaintiffs argue that the defendant-manufacturers here

should have used engine immobilizers because other manufacturers did so. Opp'n Mot. Dismiss at 39. But if businesses must rigidly adhere to industry norms to avoid liability, they will be disincentivized from innovating to create new and better solutions—precisely the disincentive NHTSA sought to avoid by providing a flexible standard instead of a rigid requirement. 33 Fed. Reg. at 6472. And as businesses eschew experimentation for conformity, consumers will have less diversity of products to choose from in the marketplace.

Ultimately, increasing the "risks of engaging in [an] activity" will "alter[] the cost and availability of the activity within the forum jurisdiction." *Ileto*, 370 F.3d at 868 (Kozinski, J.). Indeed, the duty to "protect against criminal misuse of its product" could force some businesses to take products with "socially valuable uses" entirely "off the market due to the threat of limitless liability." *McCarthy v. Olin Corp.*, 119 F.3d 148, 157 (2d Cir. 1997). Manufacturers will pass their increased burdens on to consumers in the form of higher costs, higher insurance premiums, and less access to useful goods and services. *See* "How Lawsuits Cost You $3,600 a Year," *The Wall Street Journal* (Dec. 11, 2022) (costs of tort litigation are "spread through the economy in the form of higher insurance premiums that fall on nearly every family, either directly (car insurance) or indirectly (medical malpractice or

26

product-liability insurance)")[3]; David Williams, "The Economic Impact of Mass Tort Litigation," *Real Clear Markets* (Oct. 9, 2023) (estimating that just under $500 billion in tort costs is passed on to consumers);[4] "Tort Costs in America: An Empirical Analysis of Costs and Compensation of the U.S. Tort System," *U.S. Chamber of Commerce* (Nov. 2022).[5] This Court should reject a rule with such sweeping negative consequences for businesses and the consumers they serve.

## CONCLUSION

The district court's denial of defendants' motion to dismiss plaintiffs' negligence claims should be reversed.

---

[3] *Available at* https://www.wsj.com/articles/how-lawsuits-cost-you-3-600-a-year-tort-system-chamber-of-commerce-institute-for-legal-reform-report-11670460820 (last accessed Aug. 28, 2024).

[4] *Available at* https://www.realclearmarkets.com/articles/2023/10/09/the_economic_impact_of_mass_tort_litigation_984499.html (last accessed Aug. 28, 2024).

[5] *Available at* https://instituteforlegalreform.com/wp-content/uploads/2022/11/Tort-Costs-in-America-An-Empirical-Assessment-of-Costs-and-Compensation-of-the-U.S.-Tort-System.pdf (last accessed Aug. 29, 2024).

Dated: September 4, 2024

JONATHAN D. URICK.
AUDREY BECK
U.S. CHAMBER LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062

*Counsel for the Chamber of Commerce*
*of the United States of America*

EVAN UMPIR
WISCONSIN MANUFACTURERS AND
COMMERCE INC.
501 E. Washington Ave.
Madison, WI 53703

*Counsel for Wisconsin Manufacturers*
*and Commerce Inc.*

Respectfully submitted,

/s/ Aileen M. McGrath

AILEEN M. MCGRATH
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Tel: (415) 268-6153
AMcGrath@mofo.com

DIANA L. KIM
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304

*Counsel for Amici*

28

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | No. 24-2350

I am the attorney or self-represented party.

**This brief contains** | 6,112 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◯ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [            ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Aileen M. McGrath | **Date** | Sept. 4, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**      *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system on September 4, 2024.

I certify that all participants in the case are registered ACMS users and that service will be accomplished by the ACMS system.


Dated:  September 4, 2024                         /s/ Aileen M. McGrath
                                                                    Aileen M. McGrath

s