No. 24–2350

IN THE

# United States Court of Appeals

FOR THE NINTH CIRCUIT

IN RE: KIA HYUNDAI VEHICLE

THEFT MARKETING, SALES

PRACTICES, AND PRODUCTS LIABILITY LITIGATION

*On Appeal from the United States District Court for the*
*Central District of California, Case No. 8:22–ml–03052–JVS*
*The Honorable James V. Selna, United States District Judge*

## *AMICUS CURIAE* BRIEF OF ALLIANCE FOR AUTOMOTIVE INNOVATION IN SUPPORT OF DEFENDANTS-APPELLANTS

Philip S. Goldberg
 (Counsel of Record)
SHOOK HARDY & BACON L.L.P.
1800 K Street, NW, Suite 1000
Washington, DC  20006
(202) 783-8400
pgoldberg@shb.com

*Attorney for Amicus Curiae*

## <u>DISCLOSURE STATEMENTS PURSUANT TO RULES 26.1 AND 29</u>

Pursuant to Rules 26.1 and 29(a)(4)(A) of the Federal Rules of Appellate Procedure, counsel for *amicus curiae* states that the Alliance for Automotive Innovation is a non-profit, tax-exempt organization incorporated in the District of Columbia. The Alliance for Automotive Innovation states that it has no parent corporation and that no publicly held company has 10% or greater ownership.

Pursuant to Rule 29(a)(4)(E), counsel for *amicus curiae* states that no counsel for any party authored this brief in whole or in part and no entity or person, aside from *amicus curiae*, its members, or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

Pursuant to Rule 29(a)(2), counsel for *amicus curiae* states that all parties consented to the filing of this brief.

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................. ii

IDENTITY AND INTEREST OF *AMICUS CURIAE* ......................................... 1

INTRODUCTION AND SUMMARY OF THE ARGUMENT ........................ 3

ARGUMENT .................................................................................... 4

I.    AUTO MANUFACTURERS AND DISTRIBUTORS DO
NOT HAVE A DUTY OF CARE TO GOVERNMENTS TO
STOP LOCAL CRIMINALS FROM STEALING
VEHICLES ............................................................................ 4

II.   AUTO MANUFACTURERS AND DISTRIBUTORS LACK
THE REQUISITE CONTROL OVER THE CONDUCT OF
CRIMINALS TO BE LIABLE FOR AUTO THEFTS IN
ANY COMMUNITY ................................................................ 11

III.  THE COURT SHOULD NOT CONDONE "DEEP
POCKET JURISPRUDENCE" BY IMPOSING LIABILITY
IN VIOLATION OF TRADITIONAL LAW ................................ 15

CONCLUSION .............................................................................. 20

# TABLE OF AUTHORITIES

## Cases

*Alston v. Advanced Brands & Importing Co.*,
    494 F.3d 562 (6th Cir. 2007)................................................................9

*Castrignano v. E.R. Squibb & Sons, Inc.*,
    546 A.2d 775 (R.I. 1988) ...............................................................16

*City of Bloomington, Ind. v. Westinghouse Elec. Corp.*,
    891 F.2d 611 (7th Cir. 1989).........................................................13

*City of Chicago v. Am. Cyanamid Co.*, No. 02 CH 16212,
    2003 WL 23315567 (Ill. Cir. Ct. Oct. 7, 2003) ...........................17

*City of Chicago v. Beretta U.S.A. Corp.*,
    821 N.E.2d 1099 (Ill. 2004)..........................................................17

*City of New Haven v. Purdue Pharma, L.P.*,
    2019 WL 423990 (Conn. Super. Ct., Jan. 8, 2019) ....................18

*De Angelis v. Lutheran Med. Center*,
    449 N.E.2d 406 (N.Y. 1983) ..........................................................5

*Dillon v. Legg*,
    441 P.2d 912 (Cal. 1968).................................................................8

*Eisman v. New York*,
    511 N.E.2d 1128 (N.Y. 1987) .........................................................7

*Erlich v. Menezes*,
    981 P.2d 978 (Cal. 1999).................................................................7

*Estate of Ciotto v. Hinkle*,
    145 N.E.3d 1013 (Ohio Ct. App. 2019) ....................................7, 11

*Estate of Desir v. Vertus*,
    69 A.3d 1247 (N.J. 2013) .............................................................6, 7

ii

*Hamilton v. Beretta U.S.A. Corp.*,
   750 N.E.2d 1055 (N.Y. 2001) ...................................................7, 12

*Hopkins v. Fox & Lazo Realtors*,
   625 A.2d 1110 (N.J. 1993) ............................................................5

*Huck v. Wyeth, Inc.*,
   850 N.W.2d 353 (Iowa 2014) ......................................................18

*In re Dynamic Random Access Memory (Dram) Antitrust Litig.*,
   2007 WL 2517851 (N.D. Cal. Aug. 31, 2007) ............................10

*In re Lead Paint Litig.*,
   924 A.2d 484 (2007) ...................................................................13

*In re Methyl Tertiary Ether Prods. Liab. Litig.*,
   725 F.3d 65 (2nd Cir. 2013) ........................................................12

*In re Neurontin Mktg. & Sales Practices Litig.*,
   677 F. Supp. 2d 479 (D. Mass. 2010) ............................................9

*In re Paraquat Prods. Liab. Litig.*, MDL No. 3004,
   2022 WL 451898 (S.D. Ill. Feb. 14, 2022) ..................................12

*Jankee v. Clark Cnty.*,
   612 N.W.2d 297 (Wis. 2000) .........................................................7

*Palka v. Servicemaster Mgmt. Servs. Corp.*,
   634 N.E.2d 189 (N.Y. 1994) ..........................................................6

*People ex rel. Spitzer v. Grasso*,
   836 N.Y.S.2d 40 (N.Y. App. Div. 2007) ....................................10

*Pulka v. Edelman*,
   358 N.E.2d 1019 (N.Y. 1976) .........................................................7

*Southland Corp. v. Griffith*,
   63 A.2d 84 (Md. 1993) ...................................................................6

*Stahlecker v. Ford Motor Co.*,
   667 N.W.2d 244 (Neb. 2003) .......................................................11

*State ex rel. Hunter v. Johnson & Johnson,*
    499 P.3d 719 (Okla. 2021) ...................................................14, 17

*State ex rel. Miller v. Philip Morris Inc.,*
    577 N.W.2d 401 (Iowa 1998) ..................................................10

*State v. Lead Indus. Ass'n,*
    951 A.2d 428 (R.I. 2008) ........................................................13

*St. Louis v. Benjamin Moore & Co.,*
    226 S.W.3d 110 (Mo. 2007) ....................................................17

*Suchomajcz v. Hummel Chem. Co.,*
    524 F.2d 19 (3rd Cir. 1975) ....................................................12

*SUEZ Water New York Inc. v. E.I. du Pont de Nemours & Co.,*
    578 F. Supp. 3d 511 (S.D.N.Y. 2022) ....................................14

*Terry v. Irish Fleet, Inc.,*
    818 S.E.2d 788 (Va. 2018)........................................................6

*Thing v. La Chusa,*
    771 P.2d 814 (Cal. 1989)..........................................................8

*Tioga Pub. Sch. Dist. v. U.S. Gypsum Co.,*
    984 F.2d 915 (8th Cir. 1993)..................................................18

*Waters v. New York City Housing Auth.,*
    505 N.E.2d 922 (N.Y. 1987) ....................................................4

## Statutes and Codes

49 C.F.R. § 571.114.................................................................18

## Other Authorities

John C.P. Goldberg & Benjamin C. Zipursky, *The Restatement
    (Third) and the Place of Duty in Negligence Law,*
    54 Vand. L. R. 657 (2001)..........................................................4

Philip S. Goldberg, *Is Today's Attempt at a Public Nuisance "Super Tort' The Emperor's New Clothes of Modern Litigation?*, 31 Mealey's Emerging Toxic Torts 15 (Nov. 1, 2022) .........................16

James A. Henderson, Jr. & Aaron D. Twerski, *Closing the American Products Liability Frontier: The Rejection of Liability Without Defect*, 66 N.Y.U. L. Rev. 1266 (1991) .........................................15

W. Page Keeton, *Prosser & Keeton on Torts* (5th ed. 1984)................................5

McLaughlin on Class Action § 10:1 (20th ed. 2023) ...........................................9

Frederick Pollock, *Law of Torts* (10th ed. 1916) ...................................................4

Restatement (Second), Torts § 315 (1965) ............................................................6

Restatement (Second), Torts 314A (1965) ............................................................6

Restatement (Third) of Torts: Liability for Economic Harm (2020) .............14

John W. Wade, *On the Nature of Strict Tort Liability for Products*, 44 Miss. L.J. 825 (1973) ...............................................................................16

## IDENTITY AND INTEREST OF *AMICUS CURIAE*[1]

*Amicus curiae* is the Alliance for Automotive Innovation ("Auto Innovators"). Auto Innovators' mission is to improve motor vehicle safety and the environment through developing global standards and market-based, cost-effective solutions to meet emerging challenges associated with manufacturing automobiles. Formed in 2020, Auto Innovators is comprised of the manufacturers and distributors of nearly 98% of new cars and light trucks sold in the United States, as well as original equipment suppliers, technology and other automotive-related companies, and trade associations. From the manufacturers producing most of the vehicles sold in the U.S. to autonomous vehicle innovators to equipment suppliers, battery producers and semiconductor makers—Auto Innovators represents the full auto industry, a sector supporting ten million American jobs and five percent of the economy. Auto Innovators has a strong interest in ensuring liability laws applying to the manufacture and sales of automobiles follow sound legal principles. Imposing liability on manufacturers and distributors for criminal acts of third parties departs from long-standing mainstream jurisprudence.

---

[1] *Amicus* files this brief in support of Defendants-Appellants pursuant to Rule 29(a)(2).

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

This case is emblematic of a concerning new trend in state and local government tort actions against automobile and other manufacturers: the governments sue companies to pay for local societal issues—here, criminal acts of third parties—even though the companies have no legal responsibility to prevent these conditions or crimes and did not cause the harms the governments allege. Courts are increasingly calling out these lawsuits as "deep pocket jurisprudence" because they are entirely unfounded. Here, it is unequivocal that the vehicle thefts at issue were caused by local criminals, not Defendants, and these local criminals were instructed how to steal the vehicles by a viral social media post in which individuals broadcasted a way to unlawfully hack vehicle anti-theft devices.

Auto manufacturers and distributors, as do other companies, unfortunately have to operate in a space where criminal activity is persistent. Anti-theft devices have been installed in automobiles to protect consumers from vehicle thefts for decades. They are governed by the Federal Motor Vehicle Safety Standards (FMVSS), which encourages flexibility and innovation in their design. Vehicles, though, are not alone. There are entire industries dedicated to products, from locks to anti-virus software, designed

to protect consumers from third-party crimes. But, no anti-theft device is hack-proof. Sometimes, the more secure an anti-theft device appears the more thieves focus on breaking into it. In other situations, criminals cause harm by using products, such as knives or baseball bats, which are lawful and beneficial when used for their intended purposes. In each of these circumstances, governments may spend resources to prevent and deal with effects of criminal activities. Under American tort law, manufacturers and distributors of products used in these crimes are not liable to governments for those costs. It is well established that companies are not insurers against third-party criminal or tortious acts involving products they sold.

The district court, in asserting the auto company Defendants here owed a duty of care to the local government Plaintiffs to stop or prevent these crimes, seemed to recognize that it was setting aside such established precedent. It acknowledged that in New York, Ohio, and Wisconsin, as well as other states, there must be a "special relationship" between the particular plaintiffs and defendants establishing such a duty of care—and Defendants "make a compelling argument" that there is no special relationship here. Op. at * 7. However, rather than dismiss the claims, the court changed the test for when a duty attaches, resting entirely on the concept of "foreseeability."

The court then pulled back the lens on foreseeability to a level of abstraction, asserting that as a general matter it is foreseeable some of Defendants' vehicles would be stolen and vehicle thefts burden local governments. This assertion effectively eliminates the duty requirement; anti-theft devices are used generally when there is a statistical likelihood some thefts will occur.

For these reasons, as detailed below, *amicus* respectfully requests that this Court overturn the district court's ruling and grant Defendants' motion to dismiss for lack of a duty. Local and state governments must not be allowed to misuse the judiciary to generate revenue from companies or other entities in ways divorced from fundamental tort law principles.

## **ARGUMENT**

## I.    **AUTO MANUFACTURERS AND DISTRIBUTORS DO NOT HAVE A DUTY OF CARE TO GOVERNMENTS TO STOP LOCAL CRIMINALS FROM STEALING VEHICLES**

It has long been a basic premise of American tort law that a person or entity does not have a duty to the world. *See generally* John C.P. Goldberg & Benjamin C. Zipursky, *The Restatement (Third) and the Place of Duty in Negligence Law*, 54 Vand. L. R. 657, 705 (2001); *see also, e.g.*, *Waters v. New York City Housing Auth.*, 505 N.E.2d 922, 923 (N.Y. 1987) (citing Frederick Pollock, *Law of Torts* (10th ed. 1916), at 472) ("negligence in the air . . . will not do")).

The establishment of a duty requires the court to determine that the specific plaintiff "is entitled to protection" from the specific defendant for the harms the plaintiff alleges. W. Page Keeton, *Prosser & Keeton on Torts* (5th ed. 1984), at 358. If there is no nexus between the defendant and the plaintiff creating such an obligation, the defendant is not liable to the plaintiff for those harms.

To establish such a duty, courts in most states—including those at issue in this appeal—assess multiple factors starting with the relationship of the parties and including the nature of the risk, ability to exercise the needed care, and public interest in the proposed solution. *See Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110, 1116 (N.J. 1993). Courts also consider public policy and basic fairness, because establishing a duty involves "policy-laden" judgments in which "[a] line must be drawn between the competing policy considerations of providing a remedy to everyone who is injured and of extending exposure to tort liability almost without limit." *De Angelis v. Lutheran Med. Center*, 449 N.E.2d 406, 407-08 (N.Y. 1983). These policy considerations include "the reasonable expectation of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public

policies affecting the expansion or limitation of new channels of liability." *Palka v. Servicemaster Mgmt. Servs. Corp.*, 634 N.E.2d 189, 193 (N.Y. 1994).

Under this long-standing jurisprudence, a person or company does not have a legal duty to protect individuals, governments, or the public from acts—particularly criminal acts—of third parties. *See* Restatement (Second), Torts § 315 (1965). As the Restatement explains, there is no duty "to control the conduct of a third person as to prevent him from causing" harm to another. *Id.* There are narrow exceptions to this rule, namely only where a "special relation" exists between the injured party and defendant that creates this special responsibility. *Id.*; *accord Estate of Desir v. Vertus*, 69 A.3d 1247, 1258 (N.J. 2013) (requiring a "clear or single relationship that we can identify to which the proposed duty would attach or in which it would be binding"); *Southland Corp. v. Griffith*, 63 A.2d 84, 90 (Md. 1993) (adopting Restatement (Second), Torts § 314A). Typically, this relationship is between a plaintiff and a common carrier, innkeeper, land possessor who opens its property to the public, or one who voluntarily takes custody of the plaintiff. *See Terry v. Irish Fleet, Inc.*, 818 S.E.2d 788, 792-93 (Va. 2018) (providing examples). Here, the lower court seemingly agreed that there is no such

special relationship between Defendants and Plaintiffs creating a duty. *See* Op. at *7 (calling the lack of special relationship a "compelling argument").

In an effort to bridge what should be an insurmountable duty gap between local governments and vehicle manufacturers over costs related to vehicle thefts, the district court hinged its ruling entirely on "foreseeability." *Id*. (stating the court's "analysis then rests on whether foreseeability supports the finding of duty"). Contrary to this ruling, though, foreseeability of harm alone "does not determine the existence of duty" in most states, including those at issue here. *Eisman v. New York*, 511 N.E.2d 1128, 1134 (N.Y. 1987); *see also Estate of Ciotto v. Hinkle*, 145 N.E.3d 1013, 1019 (Ohio Ct. App. 2019) (establishing a duty "requires more than just foreseeability"); *Jankee v. Clark Cnty.*, 612 N.W.2d 297, 322 (Wis. 2000) (same); *Erlich v. Menezes*, 981 P.2d 978, 983 (Cal. 1999) ("foreseeability alone is not sufficient to create an independent tort duty"); *Estate of Desir*, 69 A.3d at 1260 ("Fairness, not foreseeability alone, is the test."). Rather, foreseeability "merely determines the scope of the duty once it is determined to exist." *Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1060 (N.Y. 2001). Duty and foreseeability "are separate things, with foreseeability defining the scope and extent of the duty." *Pulka v. Edelman*, 358 N.E.2d 1019, 1019-20 (N.Y. 1976) (cleaned up).

Indeed, courts have been careful not to over-rely on foreseeability in determining whether a duty exists. California provides a cautionary tale. In the 1960s, the California Supreme Court initially expanded duty rules in a car accident case based on foreseeability. *See Dillon v. Legg*, 441 P.2d 912 (Cal. 1968). Twenty years later, the court retrenched this view, emphasizing "the importance of avoiding the limitless exposure of liability for negligence" that reliance on foreseeability alone creates. *Thing v. La Chusa*, 771 P.2d 814, 827 (Cal. 1989). "[F]oreseeability, like light, travels indefinitely in a vacuum," and "there are circumstances in which although a foreseeable risk exists, there is no duty to avoid creation of that risk." *Id*. at 818, 823 (cleaned up). The court then famously cautioned that "there are clear judicial days on which a court can foresee forever." *Id*. at 830. Thus, foresight alone does not provide "a socially and judicially acceptable limit" on liability. *Id.*

In the case at bar, the district court compounded this foreseeability error by aggregating the concept of foreseeability to the level of abstraction, observing that, as a general matter, it was statistically foreseeable that some vehicles Defendants sold would be stolen by local thieves and governments would bear costs responding to that illegal activity. This scenario could apply to an endless variety of products commonly used by criminals in the

commission of crimes. It may be foreseeable, for example, that a percentage of underage individuals will purchase alcoholic beverages, causing harm to themselves, their parents, or others, but manufacturers and sellers of wine, beer and spirts are not liable for these harms—let alone the government's costs in responding to underage drinking. *See, e.g., Alston v. Advanced Brands & Importing Co.*, 494 F.3d 562, 565 (6th Cir. 2007).

Indeed, courts have long discredited this technique of aggregating away the specific requirements of creating third-party duties—including with plaintiffs and defendants with a much greater nexus to the harm caused than those here. *See, e.g.*, 2 McLaughlin on Class Action § 10:1 (20th ed. 2023) (discussing third party payor litigation against alleged tortfeasors). A couple of decades ago, insurers began suing companies alleged to have harmed their insureds for the aggregate amount of money spent on care due to the defendant's alleged malfeasance. Courts rejected these claims because a plaintiff "cannot rely on aggregation or statistical proof" to overcome the lack of duty. *In re Neurontin Mktg. & Sales Practices Litig.*, 677 F. Supp. 2d 479, 494-95 (D. Mass. 2010). Here, Defendants and Plaintiffs are even more remote than the torfeasors and third-party payers—neither is in the position of the criminals or vehicle owners who were the parties to the criminal acts.

Finally, although this point was not raised, the *parens patriae* standing doctrine, which is often improperly invoked in government cases, does not solve any of the legal shortcomings here. This doctrine is strictly limited to injunctive relief for protecting a community from *future* harm that involves a quasi-sovereign interest, not monetary damages as sought here. *See In re Dynamic Random Access Memory (Dram) Antitrust Litig.*, 2007 WL 2517851 (N.D. Cal. Aug. 31, 2007) (applying New York law) ("[T]here is no broadly recognized common law *parens patriae* right to pursue monetary damages claims, and cases discussing the common law *parens patriae* right have generally been limited to cases seeking injunctive or other equitable relief."). Also, even if *parens patriae* standing could be granted, governments must satisfy the same elements of a tort as a private plaintiff. *See State ex rel. Miller v. Philip Morris Inc.*, 577 N.W.2d 401, 406–07 (Iowa 1998). They cannot alter the law by weakening standards for recovery or changing tort law elements. *See People ex rel. Spitzer v. Grasso*, 836 N.Y.S.2d 40, 52 (N.Y. App. Div. 2007).

Thus, if the Court applies the generally accepted principles of duty in the states at issue in this case, it should hold that the Defendant auto companies owed no duty of care to Plaintiff governments for money the governments spent related to local criminal activity, including involving

vehicles Defendants sold to people in Plaintiffs' communities. There is no special relationship or nexus creating any such duty for the harms alleged.

## II.    AUTO MANUFACTURERS AND DISTRIBUTORS LACK THE REQUISITE CONTROL OVER THE CONDUCT OF CRIMINALS TO BE LIABLE FOR AUTO THEFTS IN ANY COMMUNITY

The lower court also erred in suggesting that installing anti-theft devices in their vehicles somehow created an affirmative duty by Defendants to stop criminals from stealing those vehicles. *See* Op. at *7 (citing the Restatement (Second) of Torts § 324A on undertakings). Selling theft-prevention devices is not the type of undertaking that puts anyone in a worse position or makes Defendants complicit with the local thieves who stole Hyundai and Kia vehicles—or the teens who created the social media posts showing will-be criminals how to illegally hack the anti-theft devices. Auto companies, just like others, "may reasonably proceed upon the assumption that others will obey the criminal law," Keeton, *supra*, at 305, even though there is widespread acknowledgement that "there are bad people in society who do bad things." *Stahlecker v. Ford Motor Co.*, 667 N.W.2d 244, 251 (Neb. 2003); *Ciotto*, 145 N.E.3d at 1026 ("[T]here is no common-law duty to anticipate or foresee criminal activity.") (cleaned up).

In order for manufacturers to be liable for illegal acts of third parties, they must be *complicit* in the illegal activities themselves. *See Suchomajcz v. Hummel Chem. Co.*, 524 F.2d 19 (3rd Cir. 1975) (manufacturer sold chemicals to retailer with knowledge retailer was going to use them in selling illegal firecracker kits). This requirement applies equally in public nuisance cases, where complicity requires a manufacturer to have specific knowledge about or instruct the consumer to use, dispose of, or misuse the product to create the nuisance. *See, e.g.*, *In re Methyl Tertiary Ether Prods. Liab. Litig.*, 725 F.3d 65, 121, 123 (2nd Cir. 2013) (defendant "knew specifically that tanks in the new York City area leaked," "conducted 'operations near the relative geographic areas' of the wells at issue," and had "extensive involvement in the [local] gasoline market"). It is not sufficient to allege, as here, the manufacturer "knew of the dangers" and "failed to tackle the problem" sufficiently to avoid the illegal misconduct of others. *In re Paraquat Prods. Liab. Litig.*, MDL No. 3004, 2022 WL 451898, at *11 (S.D. Ill. Feb. 14, 2022).

Rather, the defendant must have had some level of *control* over the third party, the third party's criminal or tortious act, or the instrumentality when it was used in such an act. *See Hamilton*, 750 N.E.2d at 1061 ("We have been cautious . . . in extending liability to defendants for their failure to

control the conduct of others."). As the New York Court of Appeals explained, "even where as a practical matter defendant *can exercise such control*"—but does not have actual control over the third party—the defendant still "has no duty to control the conduct of third persons so as to prevent them from harming others." *Id.* (emphasis added) (citing cases from other states). Put simply, controlling the design of an anti-theft device is not controlling the criminal conduct itself—just like designing a burglar alarm or anti-fraud software is not an undertaking making one liable to governments for criminals who break into homes or computers. "This judicial resistance to the expansion of duty grows out of practical concerns . . . about the unfairness of imposing liability for the acts of another." *Id.*

Courts have broadly rejected liability where manufacturers furnished products others used in criminal or tortious acts if the manufacturers lacked the requisite control. *See In re Lead Paint Litig.*, 924 A.2d 484, 499 (2007) ("[A] public nuisance, by definition, is related to conduct, performed in a location within the actor's control."); *State v. Lead Indus. Ass'n*, 951 A.2d 428, 499 (R.I. 2008) ("Importantly, the defendant must have had control over the nuisance-causing instrumentality at the time that the damage occurred."); *City of Bloomington, Ind. v. Westinghouse Elec. Corp.*, 891 F.2d 611, 614 (7th Cir. 1989)

(rejecting nuisance claim against manufacturer because it had not "retained the right to control" its product "beyond the point of sale"); *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719 (Okla. 2021) (without post-sale control of its product, the manufacturer is not liable for the public nuisance).

Many states, including those at issue here, apply "what appears to be an absolute rule": if a product after being sold, creates or contributes to a harm, including a public nuisance, the manufacturer or seller is not liable unless it "controls or directs" the criminal or tortious activity causing that harm. *SUEZ Water New York Inc. v. E.I. du Pont de Nemours & Co.*, 578 F. Supp. 3d 511 (S.D.N.Y. 2022). The Third Restatement of Torts recently affirmed that public nuisance liability, in particular, has been rejected in such product cases "because the common law of public nuisance is an inapt vehicle for addressing the conduct at issue. Mass harms caused by dangerous products are better addressed through products liability, which has been developed and refined with sensitivity to the various policies at stake." Restatement (Third) of Torts: Liability for Economic Harm § 8 cmt. g (2020).

In overturning the ruling below, the Court should ensure that product liability remains the body of tort law governing risks associated with manufacturing and selling products. Product liability capably manages the

risks manufacturers and distributors can control and establishes to whom they owe duties of care. *See* James A. Henderson, Jr. & Aaron D. Twerski, *Closing the American Products Liability Frontier: The Rejection of Liability Without Defect*, 66 N.Y.U. L. Rev. 1266, 1267 (1991). Under these laws, auto companies are not liable to governments for criminal acts of thieves over whom they have no control because they sold the hacked anti-theft devices.

## III. THE COURT SHOULD NOT CONDONE "DEEP POCKET JURISPRUDENCE" BY IMPOSING LIABILITY IN VIOLATION OF TRADITIONAL LAW

The importance of enforcing traditional liability law in this case cannot be understated. If the lower court ruling stands, auto manufacturers and other companies could be subject to litigation by thousands of local governments for selling and marketing an array of products that are used by third parties in criminal or tortious activities merely because they did not prevent these unlawful acts. There would be few, if any, limitations on the ability of local governments to identify and leverage law enforcement, fire-fighting, medical services, or other government expenditures for this type of recoupment litigation. Governments, as here, would argue that something about how the product was designed, marketed or sold created the condition

for the third-party misconduct. Despite the lower court's attempt to cabin the reach of this ruling, there is nothing unique about the situation at bar.

Notwithstanding the recent proliferation of these types of lawsuit filings, most courts have recognized these cases are about generating revenue and second-guessing federal or state regulatory regimes, not applying traditional liability law. *See* Philip S. Goldberg, *Is Today's Attempt at a Public Nuisance "Super Tort' The Emperor's New Clothes of Modern Litigation?*, 31 Mealey's Emerging Toxic Torts 15 (Nov. 1, 2022) (discussing cases). It is well-settled law that auto manufacturers, just like other companies, are not insurers against abuse of their products. *See* John W. Wade, *On the Nature of Strict Tort Liability for Products*, 44 Miss. L.J. 825, 828 (1973) ("[L]iability for products is clearly not that of an insurer."); *Castrignano v. E.R. Squibb & Sons, Inc.*, 546 A.2d 775, 782 (R.I. 1988) (manufacturers cannot be "insurers of their products"). As Dean Wade has explained, manufacturers cannot police customers—let alone third party criminals—to ensure the products they sell are not used in ways that cause injury, to individuals or governments. *Id.* That is why someone stabbed with a knife by an intruder has no claim against the knife manufacturer. *See id.* Replacing the person stabbed with the government seeking costs associated

with knife accidents or stabbing crimes in general does not fix this equation—again, it presents more remote parties.

Courts have recognized that, in these cases, governments are asking for legal shortcuts because they have incurred costs from local criminal or other unlawful activity that will go uncompensated. But, as courts have held, the use of public funds to remediate an injury or other unlawful activity is not the same as injury itself, *see St. Louis v. Benjamin Moore & Co.*, 226 S.W.3d 110, 116 (Mo. 2007), and the decision to spend taxpayer funds on a local health or safety issue does not by some alchemy give birth to a lawsuit. *See State ex rel. Hunter*, 499 P.3d at 729 (the law has never allowed governments "to collect a cash payment from a defendant" for "social, health, and criminal issues arising from conduct alleged to be a nuisance"); *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1144-47 (Ill. 2004) (these costs are essentially taxes to be levied at the legislature's discretion). If allowed, product litigation would be framed as government actions "rather than a product liability suit" to lower the applicable tort law standards. *City of Chicago v. Am. Cyanamid Co.*, No. 02 CH 16212, 2003 WL 23315567, at *4 (Ill. Cir. Ct. Oct. 7, 2003). The result would be extensive liability "regardless of

the defendant's degree of culpability." *Tioga Pub. Sch. Dist. v. U.S. Gypsum Co.*, 984 F.2d 915, 921 (8th Cir. 1993).

These lawsuits would give the officials unbridled power to determine which alleged social ills the manufacturer or distributor of a product would be "taxed" through litigation to solve. As courts in other contexts have held, "it might be tempting to wink at this whole thing and add pressure on parties who are presumed to have lots of money. . . . But it's bad law." *City of New Haven v. Purdue Pharma, L.P.*, 2019 WL 423990, at *8 (Conn. Super. Ct., Jan. 8, 2019). The Supreme Court of Iowa explained that making a party who is not the at-fault entity pay for the alleged damages is "[d]eep pocket jurisprudence [which] is law without principle." *Huck v. Wyeth, Inc.*, 850 N.W.2d 353, 380 (Iowa 2014) (internal quotation omitted).

Allowing local governments to manage public risks associated with vehicle thefts through such unfounded liability law is particularly inappropriate here given that federal regulations govern vehicle safety and anti-theft standards. Under FMVSS 114, the National Highway Traffic Safety Administration (NHTSA) provides flexibility in how manufacturers prevent the "normal activation of the vehicle's engine or motor" and "steering forward mobility" when the key is not present. *See* 49 C.F.R. § 571.114, S5.1.1.

18

In addition to decreasing the likelihood that a vehicle is stolen, the requirements help reduce crashes should a vehicle be stolen. *See id.* § 571.114, S1 & S2. Like other FMVSS regulations, NHTSA encourages companies to use various innovations to facilitate improved outcomes. In fact, as Defendants state in their brief, NHTSA has affirmed that FMVSS 114 does not require engine immobilizers and the lack of one does not make a vehicle's anti-theft device defective. Manufacturers of automobiles, like other manufacturers, must be able to rely on government regulations seeking to balance these types of public risks.

Finally, *amicus* fully appreciates that the impact of auto thefts in local communities can present an important public safety issue, but Defendants are engaged in the commerce of beneficial, regulated products—not stealing vehicles. *Amicus* respectfully urges the Court to stay within mainstream jurisprudence and reject this broad expansion of duty law, reverse the ruling below, and ensure that local governments cannot engage in deep pocket jurisprudence through tort laws never intended for that purpose.

## **CONCLUSION**

For these reasons, *amicus* asks the Court to reverse the ruling below.

> Respectfully submitted,
>
> /s/ Philip S. Goldberg
> Philip S. Goldberg
>  (Counsel of Record)
> SHOOK HARDY & BACON L.L.P.
> 1800 K Street, NW, Suite 1000
> Washington, DC 20006
> (202) 783-8400
> pgoldberg@shb.com

Dated: September 4, 2024

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s) 24–2350**

1. I am the attorney or self-represented party.

2. **This brief contains 4104 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

3. I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ X ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    [ ] it is a joint brief submitted by separately represented parties;

    [ ] a party or parties are filing a single brief in response to multiple briefs; or

    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**____/s/Philip S. Goldberg_____      **Date** September 4, 2024____

**CERTIFICATE OF SERVICE**

I certify that on September 4, 2024, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Ninth Circuit via the Court's CM/ECF system, which will send notice of such filing to all counsel who are registered CM/ECF users.

/s/ Philip S. Goldberg