No. 24-2350

I**N THE**

# United States Court of Appeals

F**OR THE** N**INTH** C**IRCUIT**

_____

CITY OF CINCINNATI; CITY OF CLEVELAND; CITY OF SEATTLE; CITY OF ROCHESTER; CITY OF YONKERS; CITY OF GREEN BAY; TOWN OF TONAWANDA; CITY OF COLUMBUS; CITY OF KANSAS CITY; CITY OF INDIANAPOLIS; CITY OF BUFFALO; CITY OF MADISON; CITY OF MILWAUKEE; CITY OF NEW ORK; CITY OF PARMA; CITY OF ST. LOUIS; CITY OF BALTIMORE,

*Plaintiffs-Appellees,*

– *v.* –

HYUNDAI MOTOR AMERICA INC. AND KIA MOTOR AMERICA, INC.,

*Defendants-Appellants.*

_____

On Appeal from the United States District Court for the Central District of California
No. 8:22-ml-03052-JVS-KES
The Honorable James V. Selna, District Court Judge

**BRIEF OF *AMICUS CURIAE* OF THE NEW YORK STATE CONFERENCE OF MAYORS AND MUNICIPAL OFFICIALS
IN SUPPORT OF PLAINTIFFS-APPELLEES AFFIRMANCE**

Rebecca J. L. Ruscito
NEW YORK STATE CONFERENCE OF MAYORS AND MUNICIPAL OFFICIALS
119 Washington Avenue, 2nd Floor
Albany, New York 12210
518-463-1185
rebecca@nycom.org
Counsel for *Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel states that that the Amicus Curiae is a not-for-profit voluntary membership association and does not have a parent corporation or shares or securities that are publicly traded.

December 4, 2024

*/s/ Rebecca Ruscito*
Rebecca Ruscito
Counsel for *Amicus Curiae*

## **TABLE OF CONTENTS**

**TABLE OF CONTENTS** ........................................................................ ii

**TABLE OF AUTHORITIES** ................................................................ iii

**INTEREST OF AMICUS CURIAE** ....................................................1

**INTRODUCTION AND SUMMARY OF ARGUMENT** ....................................2

**ARGUMENT** ........................................................................................3

**I. New York's Public Nuisance Doctrine Encompasses Harms to Public Health and Safety and the Preservation of Public Resources, Contrary to Defendants' Narrow Interpretation** ................................................................3

**II. Limiting Municipal Recourse Under Public Nuisance Law Would Erode an Essential Tool for Addressing Public Harms, Undermine Public Safety, and Divert Public Funds from Critically Important Public Services** .............6

**III. Corporations Have a Duty to Mitigate Foreseeable Risks Created by Their Actions or Omissions When Those Risks Have Direct and Substantial Impacts on Public Safety and Municipal Resources** .......................................9

**CONCLUSION** ....................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*City of New York v. 330 Continental LLC*, 873 N.Y.S.2d 9 (2009) .........................7

*City of New York v. Lead Indus Assn.,* 597 N.Y.S.2d 698 (1993)............................8

*City of New York v. Smokes-Spirits.Com, Inc.,* 12 N.Y.3d 616 (2009) ....................8

*Copart Indus., Inc. v. Consol. Edison Co. of New York, Inc*., 41 N.Y.2d 564, (1977) ............................................................................................................ 4, 8, 12

*Greentree at Murray Hill Condominium v. Good Shepherd Episcopal Church*, 146 Misc.2d 500 (Sup. Ct. New York Co. 1989) ........................................................7

*Hamilton v Beretta U.S.A. Corp.*, 222 F.3d 36 (2d Cir 2000), certified question accepted, 95 N.Y.2d 878 (2000), and certified question answered, 96 N.Y.2d 222 (2001), op after certified question answered, 264 F.3d 21 (2d Cir 2001) ..........13

*In re Opioid Litig.*, No. 400000/2017, 2020 N.Y. Slip Op. 30937 (Sup. Ct. Suffolk Cnty. Apr. 9, 2020) ...............................................................................................9

*Landau v. City of New York*, 180 N.Y. 48 (1908) ...................................................5

*Melker v. City of New York,* 190 N.Y. 481 (1908) ...............................................3, 4

*New York Trap Rock Corp. v. Clarkstown*, 299 N.Y. 77 (1949)..............................8

*Palsgraf v. Long Island R. Co*., 248 N.Y. 339 (1928)............................................12

*People ex rel. Spitzer v. Sturm, Ruger & Co., Inc.*, 761 N.Y.S.2d 192, (2003) ........9

*People v. Rubenfeld*, 254 N.Y. 245, (1930)..............................................................3

*State of New York v. Schenectady Chems*. 479 N.Y.S.2d 1010 (1984) ....................5

**Statutes**

N.Y. Mun. Home Rule §§ 10(1)(ii)(a)(11) and (12)...............................................10

New York Vehicle and Traffic Law §§ 375 and 383 .............................................14

**Other Authorities**

Leslie Kendrick, *The Perils and Promise of Public Nuisance*, 132 Yale LJ 702 (2023) .................................................................................................................5

*McQuillin Mun. Corp.* § 24.78 (3d Ed) ...................................................................7

iv

## INTEREST OF AMICUS CURIAE[1]

The New York State Conference of Mayors and Municipal Officials (NYCOM) respectfully submits this brief *amicus curiae* in support of the Plaintiffs-Appellees' opposition to the Defendants-Appellants who seek appeal to the Ninth Circuit Court of Appeals, reversing the District Court's denial of Defendants' motion dismiss the negligence and public nuisances claims arising out of New York State law. The cities of Buffalo, New York, Rochester, Syracuse, and Yonkers are among the governmental entities named in the action and all are members of NYCOM.

NYCOM is a not-for-profit voluntary membership association whose members include all of New York State's 62 cities and 513 of the State's 532 villages, representing more than 12 million New Yorkers. Since its founding in 1910, NYCOM has served as an advocate, educator, and resource for local governments and their officials, promoting effective municipal governance and addressing issues of critical importance for communities across New York State.

NYCOM's extensive experience with municipal operations and New York law positions it to provide this Court with unique insights into the significant implications and far-reaching consequences of Kia and Hyundai's conduct on local

---

[1] Pursuant to FRAP 29, counsel states that all parties consented to the filing of this brief. No party's counsel authored any part of this brief, and no person other than the *amicus* funded its preparation or submission.

1

governments in New York State. The automakers' failure to equip certain models of vehicles with adequate anti-theft technology has resulted in a surge of vehicle thefts, creating significant threats to public safety and financial burdens on municipalities due to the diversion of their limited resources. These hardships extend beyond the plaintiffs in this case, impacting local governments throughout New York State and the country.

## INTRODUCTION AND SUMMARY OF ARGUMENT

As a statewide organization, NYCOM understands the critical role New York's public nuisance jurisprudence plays in empowering municipalities to address widespread harms that jeopardize the public's health, safety, and welfare. The defendants' narrow interpretation of public nuisance law, rooted in private nuisance principles, disregards how courts in New York have upheld a broader application of the principle as a mechanism to redress significant public harms. Moreover, public nuisance law is an indispensable tool for municipalities, enabling them to hold private entities accountable for actions that adversely affect communities.

Limiting municipalities' ability to bring public nuisance claims would set a potentially dangerous standard, severely undermining their capacity to address large-scale crises caused by private entities. This case parallels the opioid epidemic litigation, where public nuisance law enabled local governments to seek relief and

2

hold corporations accountable for widespread harm. This doctrine is equally applicable in addressing the impacts of Kia's and Hyundai's negligence.

The outcome of this litigation has the potential to establish an important precedent for municipal governance and corporate responsibility. NYCOM seeks to ensure that this Court considers the broad implications of its decision for local governments, public safety, and the equitable distribution of costs for preventable harms. NYCOM's perspective underscores the necessity of holding companies answerable when their actions or omissions unreasonably impose burdens on public resources and compromise community welfare.

## **ARGUMENT**

### I. **NEW YORK'S PUBLIC NUISANCE DOCTRINE ENCOMPASSES HARMS TO PUBLIC HEALTH AND SAFETY AND THE PRESERVATION OF PUBLIC RESOURCES, CONTRARY TO DEFENDANTS' NARROW INTERPRETATION**

Under New York law, public nuisance is not confined to specific types of conduct but instead focuses on the harm caused by that conduct. *See, Melker v. City of New York,* 190 N.Y. 481, 487-488 (1908); *People v. Rubenfeld*, 254 N.Y. 245, 247-248 (1930); *Copart Indus., Inc. v. Consol. Edison Co. of New York, Inc*., 41 N.Y.2d 564, 567-569 (1977). New York courts have consistently held that public or common nuisances consist of "conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all, in a manner such

3

as to offend public morals, interfere with use by the public of a public place or endanger or injure the property, health, safety or comfort of a considerable number of persons (internal citations omitted)." *Copart Indus., Inc., supra,* at 568. Accordingly, public nuisance law imposes a duty on those whose actions or omissions foreseeably interfere with public rights or welfare, holding them accountable for the resulting harm to health, safety, or community resources. This principle ensures that entities responsible for creating widespread harms bear the responsibility for mitigating or remedying their effects. This flexibility allows the doctrine to adapt to evolving societal needs and address modern challenges, including those posed by the defendants in this case.

Public nuisance law is distinct from private nuisance in that it safeguards collective rights and welfare, enabling governmental entities to respond to harms that affect the broader community rather than just individual property interests. *Melker, supra,* at 487. *See also, Landau v. City of New York*, 180 N.Y. 48, 54-55 (1908); and *State of New York v. Schenectady Chems*. 479 N.Y.S.2d 1010 (1984). To this end, NYCOM respectfully urges this Court to recognize how public nuisance claims in New York extend beyond traditional property disputes to encompass widespread harms that jeopardize public interests.

The defendants' proposed interpretation of public nuisance law threatens to weaken this critical doctrine by narrowing its applicability and undermining

4

municipalities' ability to respond to persistent crises. Accepting this interpretation would effectively insulate private entities from accountability for widespread public harms and shift the resulting financial and operational burdens onto municipalities and their taxpayers. This concern is not merely hypothetical as public nuisance arguments were used by states and local governments in response to the opioid crisis to hold corporations accountable for their role in a public health epidemic. *See generally,* Leslie Kendrick, *The Perils and Promise of Public Nuisance*, 132 Yale LJ 702 (2023);

Just as the public nuisance doctrine provided a framework for addressing the comprehensive harms caused by corporate misconduct in the context of the opioid epidemic, it is equally necessary here to address the community-wide harm resulting from the defendants' negligence. For example, Kia's and Hyundai's failures to install basic anti-theft technology in their vehicles, despite industry standards, has directly contributed to a surge in car thefts. This spike in crime has overwhelmed municipal law enforcement resources, increased public safety risks, and diverted local revenue and personnel from other critical local government functions. The harm imposed by the automakers is not limited to individual car owners but extends to entire communities, as stolen vehicles are frequently used in violent crimes, reckless driving incidents, and property damage, creating a ripple effect of public harm. Public nuisance law provides the legal framework for municipalities to

5

address this pervasive threat, hold the Defendants accountable, and ensure that the costs of mitigating these systemic harms do not fall solely on taxpayers.

## II. LIMITING MUNICIPAL RECOURSE UNDER PUBLIC NUISANCE LAW WOULD ERODE AN ESSENTIAL TOOL FOR ADDRESSING PUBLIC HARMS, UNDERMINE PUBLIC SAFETY, AND DIVERT PUBLIC FUNDS FROM CRITICALLY IMPORTANT PUBLIC SERVICES

Municipalities play a pivotal role in safeguarding public health, safety, and welfare. To fulfill this responsibility, they must have access to robust legal tools that address persistent harms impacting their communities. Public nuisance law is one such essential mechanism, empowering local governments to hold private actors accountable for conduct or conditions that threaten the collective wellbeing. *McQuillin Mun. Corp.* § 24.78 (3d Ed); *City of New York v. 330 Continental LLC*, 873 N.Y.S.2d 9 (2009); *Greentree at Murray Hill Condominium v. Good Shepherd Episcopal Church*, 146 Misc.2d 500 (Sup. Ct. New York Co. 1989); *see also, New York Trap Rock Corp. v. Clarkstown*, 299 N.Y. 77 (1949).

As stated above, public nuisance law serves as a cornerstone of municipal authority, empowering local governments to address widespread harms to public safety, health, and welfare caused by private actors. Curtailing access to this remedy would severely impair the ability of local governments to respond to community-wide crises effectively, undermining the foundational principles of governance and public trust. In New York, the courts have particularly recognized the critical role

6

of local governments in protecting the public from harm. *City of New York v. Lead Indus Assn.,* 597 N.Y.S.2d 698 (1993); *City of New York v. Smokes-Spirits.Com, Inc.,* 12 N.Y.3d 616, 626-627 (2009); *see also, Copart Indus., Inc., supra*; and *New York Trap Rock Corp., supra.*

In the context of the opioid epidemic, public nuisance law has provided municipalities with standing to hold private actors accountable for the devastating public health crisis their conduct helped create, affirming the vital role of public nuisance law in addressing widespread societal harms. *In re Opioid Litig.*, No. 400000/2017, 2020 N.Y. Slip Op. 30937 (Sup. Ct. Suffolk Cnty. Apr. 9, 2020). Similarly, New York has upheld the government's standing to bring a public nuisance claim against firearms manufacturers, upon the pleading of specific facts showing how a defendant created and maintained a public nuisance. *See generally, People ex rel. Spitzer v. Sturm, Ruger & Co., Inc.*, 761 N.Y.S.2d 192, 194, 201 (2003).

Restricting local governments from bringing public nuisance claims would also improperly shift the financial and operational burden of addressing preventable harms onto local taxpayers, compromising municipalities' ability to provide other vital public services. Cities and all local governments are exceedingly resourceful in maximizing their limited budgets in order to deliver a wide variety of essential services to their residents and visitors. But restraining municipalities from holding

7

corporations accountable for public harms and the social costs of the unreasonable activities exacerbates the already significant financial burdens faced by local governments.

The perception that local governments have unlimited budgets often exposes them to disproportionate legal and financial pressures, including meritless lawsuits. Consequently, preventing municipalities from seeking redress against the private entities that are actually responsible for widespread harms further diverts critical resources away from essential community services. These services include road maintenance, water and sewer service, trash collection, municipal gas and electric service, public transportation, and emergency response. Restricting municipalities' ability to hold corporations accountable not only compromises effective local governance and erodes public safety, but diminishes the quality of life and wellbeing of the residents who depend on these numerous and indispensable municipal amenities.

Local governments' authority to make public nuisance claims is further embedded in state statute. The New York Municipal Home Rule Law confers broad authority on municipalities to enact local laws and take action to protect the safety, health, and wellbeing of the persons and properties within their jurisdictions. N.Y. Mun. Home Rule §§ 10(1)(ii)(a)(11) and (12). The use of public nuisance law aligns with this legislative intent, providing municipalities with the legal mechanisms

necessary to fulfill their responsibilities in the face of large-scale threats to public welfare.  Limiting this doctrine would undermine municipalities' ability to act in the public interest and leave communities without adequate recourse to hold private actors accountable for conduct that jeopardizes public safety and resources.

NYCOM respectfully urges the Court to preserve the longstanding principles of public nuisance law that empower municipalities to protect their residents from widespread harms caused by private actors.  This doctrine is essential not only for addressing the specific harms at issue in this case but also for maintaining broader public trust in local governments' capacity to safeguard community welfare and financial resources in the face of crisis.  Restricting its application would set a dangerous precedent by shifting the burdens of private misconduct onto the public at large and weaken municipalities' ability to act on behalf of their constituents.

### III. CORPORATIONS HAVE A DUTY TO MITIGATE FORESEEABLE RISKS CREATED BY THEIR ACTIONS OR OMISSIONS WHEN THOSE RISKS HAVE DIRECT AND SUBSTANTIAL IMPACTS ON PUBLIC SAFETY AND MUNICIPAL RESOURCES

Corporations such as Kia and Hyundai have a well-established duty under negligence and public nuisance law to mitigate foreseeable risks that arise from their actions or omissions, particularly when those risks have direct and substantial impacts on public safety and municipal resources.  *Palsgraf v. Long Island R. Co*., 248 N.Y. 339 (1928); *Copart Indus., Inc., supra,* at 568.  This duty is grounded in

9

the fundamental principles of tort law, which recognizes that entities must take reasonable precautions to prevent harm to others when the risk of harm is foreseeable. The failure to take such protections not only constitutes a breach of this duty but also places an undue burden on local governments and taxpayers, who must bear the costs of mitigating and addressing the harms caused by corporate negligence.

As stated above, the principle that a duty arises when harm to others is foreseeable. *Palsgraf, supra,* at 344. In the context of the claims against the Defendants, the theft crisis resulting from the lack of basic anti-theft measures in their vehicles was a clearly foreseeable outcome. The failure to implement such measures contributed to an escalating wave of car thefts, which in turn imposed significant costs on municipalities. This foreseeability supports the argument that these corporations had a duty to act in ways that would prevent these harms.

Moreover, New York courts have held defendants liable for the injuries resulting from intervening acts of third parties. *Hamilton v Beretta U.S.A. Corp.*, 222 F.3d 36, 43 (2d Cir 2000), certified question accepted, 95 N.Y.2d 878 (2000), and certified question answered, 96 N.Y.2d 222 (2001), op after certified question answered, 264 F.3d 21 (2d Cir 2001), *citing Nallan v. Helmsley–Spear, Inc*., 50 N.Y.2d 507 (1980), *Stevens v. Kirby*, 450 N.Y.S.2d 607 (1982), and *Modave v. Long Island Jewish Med. Ctr.*, 501 F.2d 1065, 1072–73 (2d Cir.1974). This principle is

10

directly applicable to the claims against Kia and Hyundai, as their failure to implement anti-theft measures foreseeably resulted in significant harm to public safety and municipal resources. The corporations failed to prevent a known risk and, as a result, local governments have been left to bear the financial consequences.

New York Vehicle and Traffic Law §§ 375 and 383 impose general safety standards on vehicles and hold manufacturers accountable for meeting those standards. These statutes reflect the broader duty of manufacturers to ensure that their products do not pose unreasonable risks to consumers or the public. By failing to comply with basic industry safety standards and implement effective anti-theft measures, the Defendants contributed to a public harm that they could have and should have prevented.

The failure to implement anti-theft measures is not only a breach of negligence law but is also an affront to public welfare, leaving municipalities to bear the burden of addressing a crisis that should have been preventable. New York law supports holding corporations accountable for such failures to ensure that the financial and operational consequences of their negligence are not unfairly shifted to taxpayers and local governments.

## **CONCLUSION**

For all of the reasons outlined by Petitioners-Appellees and considering all the issues raised in this brief, the Conference of Mayors respectfully requests that this Court affirm the District Court's denial of the Defendants' motion to dismiss the New York public nuisance and negligent claims, preserve the authority of local governments to hold corporations accountable for the harms they inflict on the public, and safeguard vital municipal resources essential to public safety and the wellbeing of communities.

Dated:          December 4, 2024

                    Albany, New York

Respectfully Submitted,


*/s/ Rebecca Ruscito*
_____
Rebecca J. L. Ruscito, Esq.
Counsel to the New York State Conference
of Mayors and Municipal Officials
119 Washington Avenue, 2nd Floor
Albany, New York 12210
Telephone: (518) 463-1185
rebecca@nycom.org

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 29 and 32(a)(7)(B) because it contains 2500 words, excluding the parts of the brief exempted by Rule 32(f).  I relied on the word count of Microsoft Office 2016 in preparing this certificate.

2.      This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.


I declare under penalty of perjury that the foregoing is true and correct.


*/s/ Rebecca Ruscito*
Rebecca Ruscito
Counsel for *Amicus Curiae*

13

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of December, 2024, I electronically filed the foregoing brief with the Clerk of the Court of the United State Court of Appeals for the Ninth Circuit by using the appellate case management system (ACMS).

I certify that all participants in the case are registered ACMS users and that service will be accomplished by the ACMS system.

*/s/ Rebecca Ruscito*
Rebecca Ruscito
Counsel for *Amicus Curiae*