## Case No. 24-2350

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

CITY OF CINCINNATI; CITY OF CLEVELAND; CITY OF SEATTLE;
CITY OF ROCHESTER; CITY OF YONKERS; CITY OF GREEN BAY;
TOWN OF TONAWANDA; CITY OF COLUMBUS; CITY OF KANSAS CITY;
CITY OF INDIANAPOLIS; CITY OF BUFFALO; CITY OF MADISON;
CITY OF MILWAUKEE; CITY OF NEW YORK; CITY OF PARMA;
CITY OF ST. LOUIS; CITY OF BALTIMORE,
*Plaintiffs-Appellees,*

v.

HYUNDAI MOTOR AMERICA, INC.; KIA MOTOR AMERICA, INC.,
*Defendants-Appellants.*

_____

*Appeal from the United States District Court for the Central District of California,
Case No. 8:22-ml-03052-JVS-KES · Honorable James V. Selna, District Judge*

## APPELLANTS' REPLY BRIEF

JOHN B. QUINN
STEVEN G. MADISON
JUSTIN C. GRIFFIN
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
johnquinn@quinnemanuel.com
stevemadison@quinnemanuel.com
justingriffin@quinnemanuel.com

CHRISTOPHER G. MICHEL
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
1300 I Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 538-8308
christophermichel@quinnemanuel.com

*Attorneys for Defendants and Appellants,
Hyundai Motor America, Inc. and Kia Motor America, Inc.*

 COUNSEL PRESS INC. · (213) 680-2300

PRINTED ON RECYCLED PAPER 

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

ARGUMENT..........................................................................................3

I.    PLAINTIFFS' NEW YORK, OHIO, AND WISCONSIN
NEGLIGENCE CLAIMS FAIL FOR LACK OF DUTY ............................3

    A.    There Is No Exception To The No-Duty Rule For Anti-Crime
Products..........................................................................4

    B.    New York, Ohio, And Wisconsin Reject Duties To Protect
Against Third-Party Crimes Absent A Special Relationship ..............6

        1.    New York ....................................................................7

        2.    Ohio............................................................................9

        3.    Wisconsin ................................................................10

    C.    Plaintiffs Fail To Rehabilitate The District Court's Flawed
Rationales For Declining To Dismiss Plaintiffs' New York,
Ohio, And Wisconsin Negligence Claims .......................................12

II.    THIS COURT CAN REVIEW ANY OTHER ISSUE DECIDED IN
THE ORDER ON APPEAL....................................................................13

III.    PLAINTIFFS' MISSOURI NEGLIGENCE CLAIMS FAIL FOR
LACK OF DUTY ................................................................................17

IV.    PLAINTIFFS' PUBLIC-NUISANCE CLAIMS SOUND IN
NEGLIGENCE AND THUS FAIL FOR LACK OF DUTY ......................19

    A.    Duty Is An Element Of Nuisance Claims Premised On
Negligence..........................................................................20

        1.    New York ................................................................20

        2.    Wisconsin ................................................................21

        3.    Missouri ..................................................................22

    B.    Because Plaintiffs' Nuisance Claims Rest On Negligence, They
Fail For Want Of Duty .................................................................23

V.    PLAINTIFFS' CLAIMS ARE PREEMPTED BY FEDERAL LAW .........24

CONCLUSION .....................................................................................29

ii

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aliasgarian v. State*,
158 N.Y.S.3d 493 (App. Div. 2021)..................................................21

*Alvarado v. Sersch*,
662 N.W.2d 350 (Wis. 2003) ...................................................10, 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................27

*Baumann v. Chase Inv. Servs. Corp.*,
747 F.3d 1117 (9th Cir. 2014)......................................................16

*Beaver v. Tarsadia Hotels*,
816 F.3d 1170 (9th Cir. 2016)......................................................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................28

*BP P.L.C. v. Baltimore*,
593 U.S. 230 (2021)......................................................................14

*Canela v. Costco Wholesale Corp.*,
971 F.3d 845 (9th Cir. 2020)........................................................16

*Chen v. Allstate Ins. Co.*,
819 F.3d 1136 (9th Cir. 2016)......................................................16

*Cho v. Gen. Motors Co.*,
No. 8:24-cv-00819 (C.D. Cal. Apr. 12, 2024) ..............................13

*In re Cinematronics, Inc.*,
916 F.2d 1444 (9th Cir. 1990)......................................................16

*Estate of Ciotto v. Hinkle*,
145 N.E.3d 1013 (Ohio Ct. App. 2019).....................................9, 12

*Copart Indus., Inc. v. Consol. Edison Co.*,
41 N.Y.2d 564 (N.Y. 1977)...................................................20, 21, 24

# TABLE OF AUTHORITIES

**Page(s)**

*D'Amico v. Christie*,
  518 N.E.2d 896 (N.Y. 1987) ................................................................20

*Del Webb Cmtys., Inc. v. Partington*,
  652 F.3d 1145 (9th Cir. 2011) .............................................................6

*Dix v. Motor Mkt., Inc.*,
  540 S.W.2d 927 (Mo. Ct. App. 1976) ...............................................18

*Doninger v. Niehoff*,
  642 F.3d 334 (2d Cir. 2011) ...............................................................15

*Elsroth v. Johnson & Johnson*,
  700 F. Supp. 151 (S.D.N.Y. 1988) .....................................................6

*Epstein v. Mediterranean Motors, Inc*.,
  491 N.Y.S.2d 391 (App. Div. 1985)....................................................9

*Faheen, By & Through Hebron v. City Parking Corp.*,
  734 S.W.2d 270 (Mo. Ct. App. 1987) ...............................................18

*FDIC v. Dye*,
  642 F.2d 833 (5th Cir. 1981)...............................................................15

*Frank v. Env't Sanitation Mgmt., Inc.*,
  687 S.W.2d 876 (Mo. 1985)...............................................................22

*Freeman Invs., L.P. v. Pac. Life Ins. Co.*,
  704 F.3d 1110 (9th Cir. 2013)............................................................25

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
  505 U.S. 88 (1992)..............................................................................24

*Geier v. American Honda Motor Co.*,
  529 U.S. 861 (2000).............................................................................27

*Hamilton v. Beretta U.S.A. Corp.*,
  750 N.E.2d 1055 (N.Y. 2001) ........................................... 7, 8, 12, 21

# TABLE OF AUTHORITIES

**Page(s)**

*He v. Apple, Inc.*,
139 N.Y.S.3d 409 (App. Div. 2020)..................................................7

*Hill v. Sonitrol*,
521 N.E.2d 780 (Ohio 1988)............................................................5

*Hocking v. City of Dodgeville*,
768 N.W.2d 552 (Wis. 2009) ....................................................11, 22

*Hofflander v. St. Catherine's Hosp., Inc.*,
664 N.W.2d 545 (Wis. 2003) ...................................................10, 11

*Homeland Stores, Inc. v. Resol. Tr. Corp.*,
17 F.3d 1269 (10th Cir. 1994)........................................................15

*House v. Armour of Am., Inc.*,
929 P.2d 340 (Utah 1996) ................................................................4

*Ingram v. Wayne Cnty.*,
81 F.4th 603 (6th Cir. 2023)...........................................................15

*Jackson v. City of Blue Springs*,
904 S.W.2d 322 (Mo. Ct. App. 1995) ......................................22, 23

*Jankee v. Clark Cnty.*,
612 N.W.2d 297 (Wis. 2000) ....................................... 10, 11, 12, 22

*Joseph v. Bd. of Regents*,
121 F.4th 855 (11th Cir. 2024)........................................................15

*In re: Kia Hyundai Vehicle Theft Litig.*,
No. 22-03052 (C.D. Cal.), Dkt. 334 ...............................................26

*Kuhn v. Budget Rent-A-Car*,
876 S.W.2d 668 (Mo. Ct. App. 1994) ............................................18

*Lawton v. Hyundai Motor Am., Inc.*,
734 F. Supp. 3d 904 (W.D. Mo. 2024).....................................18, 19

# <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

*Linegar v. Armour of Am., Inc.*,
909 F.2d 1150 (8th Cir. 1990)........................................................4, 5

*In re Lion Air Flight JT 610 Crash*,
110 F.4th 1007 (7th Cir. 2024).........................................................15

*Little v. Louisville Gas & Elec. Co.*,
805 F.3d 695 (6th Cir. 2015).............................................................15

*Lombardo v. Best W. Hotels & Resorts*,
220 N.E.3d 237 (Ohio Ct. App. 2023).................................................9

*Lunney v. Prodigy Servs. Co.*,
723 N.E.2d 539 (N.Y. 1999) ...............................................................8

*McCarthy v. Olin Corp.*,
119 F.3d 148 (2d Cir. 1997) ............................................................7, 8

*McFarlane v. Niagara Falls*,
160 N.E. 391 (N.Y. 1928)..................................................................20

*Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*,
691 N.W.2d 658 (Wis. 2005).................................................21, 22, 24

*Moroney v. Gen. Motors Corp.*,
850 A.2d 629 (Pa. Super. Ct. 2004) ....................................................4

*In re Nat'l Prescription Opiate Litig.*,
___ N.E.3d ___, 2024 WL 5049302 (Ohio Dec. 10, 2024) .............19

*Palka v. Servicemaster Mgmt. Servs. Corp.*,
634 N.E.2d 189 (N.Y. 1994) ...............................................................7

*Pharm. Rsch. & Mfrs. v. Landsberg*,
2022 WL 2915588 (9th Cir. July 25, 2022)........................................14

*Bradley ex rel. Pope v. Ray*,
904 S.W.2d 302 (Mo. Ct. App. 1995) ................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Pulka v. Edelman*,
  358 N.E.2d 1019 (N.Y. 1976) ............................................................8

*Roth v. Foris Ventures, LLC*,
  86 F.4th 832 (9th Cir. 2023)...........................................................16

*People ex rel. Spitzer v. Sturm, Ruger & Co.*,
  761 N.Y.S.2d 192 (App. Div. 2003)................................................21

*Ticknor v. Choice Hotels Int'l, Inc.*,
  265 F.3d 931 (9th Cir. 2001)............................................................6

*Vittengl v. Fox*,
  967 S.W.2d 269 (Mo. Ct. App. 1998) .............................................17

*Wiater v. Stellantis, N.V.*,
  2024 WL 4339983 (E.D. Mich. Sept. 27, 2024)..............................13

*Wilkins v. Hendel*,
  654 S.W.3d 429 (Mo. Ct. App. 2022) .............................................23

*Williamson v. Mazda Motor of Am., Inc.*,
  562 U.S. 323 (2011)........................................................................25

*Yamaha Motor Corp. v. Calhoun*,
  516 U.S. 199 (1996)........................................................................14

**S**TATUTE

28 U.S.C. § 1292(b) .................................................... 2, 14, 15, 16, 17

**O**THER **A**UTHORITIES

4 Dan B. Dobbs et al., *Law of Torts* § 414 (2d ed. 2024)...................9, 10

Restatement (Second) of Torts § 8A (1965).......................................23

Restatement (Second) of Torts § 314A (1965) ...................................11

Restatement (Second) of Torts § 825 (1979).......................................24

**INTRODUCTION**

Plaintiffs' answering brief confirms the striking breadth of their claims—and the straightforward basis for dismissal. Plaintiffs are *government entities* asserting injuries resulting from *third-party criminal conduct*. Under the black-letter negligence law of the relevant states, Defendants owe no duty to protect Plaintiffs from such harm. And because duty is an essential element of negligence, Plaintiffs' negligence claims fail. Opening Br. ("OB") 16–31; *see, e.g.*, U.S. Chamber of Commerce & Wisconsin Manufacturers & Commerce Inc. ("Chamber") Amicus Br. 6–14.

Recognizing the obstacles created by the no-duty rule, Plaintiffs attempt to mint a new principle of negligence law requiring manufacturers of "anti-theft equipment" to assume broader duties. Answering Br. ("AB") 2, 21–23. But Plaintiffs do not cite a single negligence case applying that principle. At most, Plaintiffs' cases suggest that the *user* of a defective product might have a *product-liability* claim against the manufacturer. That prospect provides no support for Plaintiffs' claims, which sound in negligence rather than product liability and are asserted by downstream entities rather than product users or consumers. *See* Product Liability Advisory Council ("PLAC") Amicus Br. 7–13.

Ultimately, accepting Plaintiffs' claims would require erasing the duty element of negligence, recognizing a "duty to the world" of the kind that state

1

courts have consistently foreclosed. OB 25 (citation omitted). The implications of that step would be striking. If Defendants can be liable to Plaintiffs for failing to prevent third-party thefts of their vehicles and resulting crimes, providers of cell phones, credit cards, or other products could likewise be liable to municipalities for failing to prevent third parties' use of their products in crime. Endorsing that theory would result in sprawling, unpredictable, and unfair liability of a kind entirely foreign to American tort law. OB 19, 30–31. At the very least, such a drastic departure should not come from a federal court sitting in diversity.

Plaintiffs' other arguments fare no better. Plaintiffs dispute whether their Missouri negligence claims and their public nuisance claims are properly before the Court. AB 36–40. But the district court declined to dismiss those claims in the "order" here on appeal, and that decision is reviewable under the plain text of 28 U.S.C. § 1292(b). On the substance, Plaintiffs' Missouri negligence claims fail for the same reasons as their other negligence claims. And Plaintiffs' public nuisance claims fail because they must satisfy the elements of negligence—including duty, which Plaintiffs cannot show. OB 42–49.

In addition, Plaintiffs' claims are preempted. OB 49–58. Plaintiffs seek to disclaim their pervasive reliance on Defendants' decision not to use engine immobilizers in their vehicles, but the face of the complaint forecloses that revisionist account. OB 56–57. And Plaintiffs' reliance on the history of FMVSS

114 only confirms that the regulation is designed to provide flexibility—precisely what Plaintiffs' immobilizer-based claims would deny. *See, e.g.*, Alliance for Automotive Innovation ("Auto Innovators") Amicus Br. 18–19. In sum, Plaintiffs' claims fail under both state and federal law. This Court should reverse.

## ARGUMENT

### I. PLAINTIFFS' NEW YORK, OHIO, AND WISCONSIN NEGLIGENCE CLAIMS FAIL FOR LACK OF DUTY

Plaintiffs acknowledge the settled principle that tort law imposes no duty to protect others from third-party criminal conduct absent a special relationship, admitting that Defendants' view of the no-duty rule "may be correct." AB 20; *see* OB 18–19. Plaintiffs instead suggest—for the first time in this litigation—that the no-duty rule does not apply to products whose "purpose is to protect against third-party criminals." AB 14–15, 20–21. But Plaintiffs cite no case from any jurisdiction supporting that novel carveout, which would create precisely the sweeping and unpredictable liability that the no-duty rule exists to prevent. And when Plaintiffs turn to decisions applying New York, Ohio, and Wisconsin law, they largely ignore those states' on-point precedents applying the no-duty rule, instead invoking general negligence principles from cases *not* involving asserted harm from third-party crimes. The proper disposition under New York, Ohio, and Wisconsin law is accordingly straightforward: The no-duty rule governs—and forecloses—Plaintiffs' claims.

### A. There Is No Exception To The No-Duty Rule For Anti-Crime Products

Despite calling their proffered exception to the no-duty rule for anti-crime products "so fundamental … that it rarely needs to be stated explicitly," AB 20, Plaintiffs identify no case or other authority in Anglo-American law applying it. Plaintiffs instead cite three *product-liability* decisions, none of which analyzed negligence duties—let alone considered the no-duty rule. *See House v. Armour of Am., Inc.*, 929 P.2d 340, 343–46 (Utah 1996); *Linegar v. Armour of Am., Inc.*, 909 F.2d 1150, 1152 (8th Cir. 1990) (applying Missouri law); *Moroney v. Gen. Motors Corp.*, 850 A.2d 629, 631–32 (Pa. Super. Ct. 2004). Those decisions are further inapposite because product liability extends only to "the user or consumer," *Linegar*, 909 F.2d at 1152, of a defendant's product (and, in some states, to bystanders)—not to parties alleging downstream injuries like Plaintiffs'.[1]

Plaintiffs suggest that Defendants accepted a duty to them by engaging in the "affirmative activity" of "equipping cars with anti-theft technology." AB 20. That argument fails several times over. As an initial matter, Plaintiffs' complaint does not seek to hold Defendants liable for the "affirmative activity" of equipping their vehicles with door locks and alarm systems; Plaintiffs seek to hold Defendants liable for *omitting* an anti-theft technology—namely immobilizers—

---

[1] Plaintiffs try to minimize that distinction in a footnote, AB 21 n.4, but they do not deny that it applies to product-liability claims of the kind they cite.

that Plaintiffs allege would have stopped third-party criminals. *See, e.g.*, 3-ER-406, 417–18, 436. Plaintiffs' "affirmative activity" theory also proves too much. In every case involving the no-duty rule, a defendant engaged in some affirmative activity (*e.g.*, selling firearms or cell phones) and a plaintiff claimed the defendant should have taken greater measures to protect against third-party misconduct. *See, e.g.*, OB 21–22. If affirmative activity of that kind alone were enough to defeat the no-duty rule, the rule would cease to exist.

Contrary to Plaintiffs' suggestion, the fact that Defendants included some (rather than no) anti-theft features in their vehicles does not create a duty to prevent third-party crime. Many consumer goods have crime-prevention features: Computers have anti-hacking software, suitcases have locks, mobile devices have biometric security capabilities, and so on. *See* Chamber Amicus Br. 18. If Plaintiffs' theory were correct, makers or sellers of products including such features would tacitly accept an otherwise absent duty to protect any potential plaintiff harmed by third-party crime. That result would not only produce vast, insurer-like liability; it would also create an incentive not to include crime-prevention features at all, undermining "the law's purpose of promoting the development of safe and useful products." *Linegar*, 909 F.2d at 1155. Courts have thus uniformly rejected negligence claims relying on theories like Plaintiffs'. *See, e.g.*, *Hill v. Sonitrol*, 521 N.E.2d 780, 784 (Ohio 1988) (applying the no-duty rule

5

to bar negligence claims based on the asserted failure of an electronic security system to protect store employee); *Elsroth v. Johnson & Johnson*, 700 F. Supp. 151, 156, 164 (S.D.N.Y. 1988) (applying the no-duty rule to bar negligence and other New York common-law claims relying on the asserted failure of anti-tampering features of drug products).

Finally, even if Plaintiffs could establish the novel principle that the maker of an anti-crime product owes a negligence duty to protect users from third-party criminal conduct, that would not show that Defendants have a duty *to Plaintiffs*—government entities that never used Defendants' products. At bottom, Plaintiffs' assertion that Defendants owe a "fundamental duty of care," AB 20, assumes a generalized "duty to the world" of the kind that courts have long rejected, Auto Innovators Amicus Br. 4–5 (collecting citations). At a minimum, such a dramatic departure from settled precedent must come from a state court—not a federal court sitting in diversity, which is bound to apply "existing state law without predicting potential changes." *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001); *see, e.g.*, *Del Webb Cmtys., Inc. v. Partington*, 652 F.3d 1145, 1154 (9th Cir. 2011); PLAC Amicus Br. 3–5 (similar).

### B. New York, Ohio, And Wisconsin Reject Duties To Protect Against Third-Party Crimes Absent A Special Relationship

After failing to support their purported carveout from the no-duty rule for anti-crime products, Plaintiffs largely ignore the application of that rule by courts

6

in New York, Ohio, and Wisconsin. Instead, Plaintiffs invoke *general* negligence decisions from those states. But because Plaintiffs' claims turn on a failure to prevent third-party crimes, the cases applying the no-duty rule—not general negligence law—are binding and require dismissal.

### 1. New York

As Plaintiffs observe, New York courts addressing general negligence claims "traditionally" employ a multifactor balancing test to "fix the duty point" and avoid expanding tort duty "to an indefinite number of potential beneficiaries." *Palka v. Servicemaster Mgmt. Servs. Corp.*, 634 N.E.2d 189, 193 (N.Y. 1994); *see* AB 30. But in cases involving intervening third-party criminal conduct, the no-duty rule supplants that general balancing test: "A defendant generally has no duty to control the conduct of third persons so as to prevent them from harming others," unless "there is a relationship either between defendant and a third-person tortfeasor … or between defendant and plaintiff." *Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1061 (N.Y. 2001) (citations omitted). Courts applying New York law in such cases adhere to the no-duty rule without even mentioning *Palka*'s balancing test. *See, e.g.*, *He v. Apple, Inc.*, 139 N.Y.S.3d 409, 413 (App. Div. 2020); *McCarthy v. Olin Corp.*, 119 F.3d 148, 157 (2d Cir. 1997).

This is equally true in cases involving allegations that third parties criminally misused defendants' products. In *Hamilton*, for example, the plaintiffs

sought to impose on firearms manufacturers a duty "to protect [the public] from the criminal acquisition and misuse of their handguns." 750 N.E.2d at 1060. The court rejected that claim under the no-duty rule. *Id.* at 1061–62, 1066. Similarly, the plaintiffs in *McCarthy* sued an ammunition manufacturer for "negligent manufacturing" of bullets used in a criminal attack. 119 F.3d at 156. Again, the court applied the no-duty rule, foreclosing the plaintiffs' claims. *Id.* at 156–57.

Plaintiffs' only argument for a different outcome here is that the no-duty rule governs only duties "to actively control or intervene against third parties." AB 32. But New York courts have never limited the rule in that way. On the contrary, they apply the rule even where—as here—a plaintiff alleges that the defendant simply failed to take a precaution that might have prevented some later third-party act. *See, e.g.*, *Pulka v. Edelman*, 358 N.E.2d 1019, 1021–22 (N.Y. 1976) (garage owed no duty "to prevent or discourage" negligent driving by patrons leaving garage); *Lunney v. Prodigy Servs. Co.*, 723 N.E.2d 539, 543 (N.Y. 1999) (internet service provider owed no duty "to employ safeguards to prevent [an] imposter from opening [an] account[]").

In perhaps the most on-point line of decisions, New York courts have declined to find a duty where defendants' allegedly inadequate theft-prevention measures allowed thieves to steal cars, drive them recklessly, and injure others. OB 28–29. Plaintiffs' observation that these cases did not involve car

8

manufacturers that controlled the vehicles' design, AB 22–23, misses the mark. Given that New York law does not fault defendants who exercise immediate control over their vehicles for failure to take stronger "precautions to deter the criminal from carrying out his lawless designs," *Epstein v. Mediterranean Motors, Inc.*, 491 N.Y.S.2d 391, 396 (App. Div. 1985), there is no basis to conclude that New York courts would impose such a duty on Defendants, who are even further removed from the third-party criminal conduct.

### 2.   Ohio

Ohio courts similarly apply the no-duty rule and recognize that it controls "even when harm is foreseeable." *Lombardo v. Best W. Hotels & Resorts*, 220 N.E.3d 237, 242 (Ohio Ct. App. 2023); *see, e.g.*, *Estate of Ciotto v. Hinkle*, 145 N.E.3d 1013, 1026–27 (Ohio Ct. App. 2019); OB 22–23. Plaintiffs' alleged harms result from third-party criminal conduct, so this specific no-duty rule governs—not the general, foreseeability-based duty standard that Plaintiffs trumpet, *see* AB 33.

Plaintiffs rely heavily on *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136 (Ohio 2002), where gun manufacturers allegedly "create[d] an illegal firearms market" by "intentionally and recklessly market[ing], distribut[ing] and sell[ing] handguns" into criminals' hands. *Id.* at 1144. But Plaintiffs have not (and could not plausibly) allege that Defendants created an illegal market for their vehicles by intentionally selling them to criminals. *Cf.* 4 Dan B. Dobbs et al., *Law*

*of Torts* § 414 (2d ed. 2024) (explaining that *Beretta*'s holding rested on "the manufacturer's conduct in targeting criminal[s] … as purchasers of … guns"). Plaintiffs instead explicitly allege that Defendants' fault lies in "the omission of an engine immobilizer." 3-ER-406, 417–18, 436. Omissions are, by definition, not affirmative malfeasance of the kind at issue in *Beretta*. That decision accordingly "ha[s] no bearing on"—and "expressly disclaimed reaching"—the issue here: "whether a defendant has a duty to protect against a *third party*'s criminal conduct." Chamber Amicus Br. 10. Ohio law is clear that a defendant does not.

### 3.    Wisconsin

In Wisconsin, too, a "person owes no duty to ... protect a third party unless the person stands in a special relationship to the foreseeable victim." *Jankee v. Clark Cnty.*, 612 N.W.2d 297, 322 (Wis. 2000). Plaintiffs' reliance on Wisconsin's "general duty of care" standard, AB 23–24, is misplaced because the no-duty rule—a "special exception" to the "general standard of ordinary care," *Hofflander v. St. Catherine's Hosp., Inc.*, 664 N.W.2d 545, 560–61 (Wis. 2003)— governs Plaintiffs' allegations that Defendants did not "stop [] third person[s] from committing harm to" them, *Jankee*, 612 N.W.2d at 321.

Plaintiffs rely on *Alvarado v. Sersch*, 662 N.W.2d 350 (Wis. 2003), but that case involved first-party premises liability rather than third-party wrongdoing. *Id.* at 355. When Wisconsin courts have considered allegations of inadequate harm-

10

prevention measures akin to Plaintiffs' allegations, they have explicitly endorsed the no-duty rule's textbook formulation. *Jankee*, 612 N.W.2d at 322; *Hofflander*, 664 N.W.2d at 560–61; *see also* OB 23–26. Neither *Jankee* nor *Hofflander* limited the no-duty rule's application to claims involving "a duty to intervene *against the plaintiff's* behavior," as Plaintiffs suggest. AB 27 (emphasis added). Indeed, *Jankee* specifically adopted Restatement (Second) of Torts § 314A (1965), which enumerates special relationships excepted from the no-duty rule—none of which are present here. 612 N.W.2d at 321–22 & n.34.

Plaintiffs also insinuate that "Wisconsin's traditional public-policy considerations" have supplanted duty in determining liability. AB 23, 29. That is incorrect. "Duty has always been" and remains "a relevant element in Wisconsin's negligence analysis," and a lack of duty suffices to "preclude[] negligence actions." *Hocking v. City of Dodgeville*, 768 N.W.2d 552, 556 (Wis. 2009). When Wisconsin courts weigh "public policy reasons," they function as "limitations on liability" and are relevant only "[a]fter negligence has been found." *Alvarado*, 662 N.W.2d at 354. Because the no-duty rule precludes Plaintiffs' Wisconsin-law negligence claims, the public-policy factors have no role to play.

**C.**     **Plaintiffs Fail To Rehabilitate The District Court's Flawed Rationales For Declining To Dismiss Plaintiffs' New York, Ohio, And Wisconsin Negligence Claims**

The district court offered three rationales for declining to dismiss Plaintiffs' negligence claims:  (1) the purported foreseeability of harm supports a duty; (2) recognizing a duty would not unreasonably expand liability because this case "concern[s] a very particular set of circumstances"; and (3) the "Good Samaritan doctrine" supports a duty.  OB 31–35.  Plaintiffs fail to persuasively defend any of those rationales.

*First*, duty cannot rest on foreseeability alone when, as here, the plaintiff seeks to impose a duty to protect against an unrelated third party's criminal conduct.  *See Hamilton*, 750 N.E.2d at 1061–62 (under New York law, "a duty and the corresponding liability it imposes do *not* rise from mere foreseeability of the harm"); *Ciotto*, 145 N.E.3d at 1019 (under Ohio law, "[a] duty arises by law, and requires more than just foreseeability"); *Jankee*, 612 N.W.2d at 322 (under Wisconsin law, a "duty" to "protect" a "foreseeable victim" requires a "special relationship").  The district court disregarded those decisions and conducted a foreseeability analysis at such "a level of abstraction" that it "effectively eliminate[d] the duty requirement" enshrined in each of these states' laws.  Auto Innovators Amicus Br. 4, 7–9.  Plaintiffs have no compelling answer.

12

*Second*, while the district court stated that the duty it recognized would apply only in "a very particular set of circumstances," Plaintiffs do not identify any limiting principle that would preclude the district court's foreseeability analysis from ensnaring any other manufacturer or distributor of products. OB 32–34. Plaintiffs argue that lawsuits like theirs are "unlikely to proliferate" because most vehicles "contain industry-standard anti-theft technology." AB 30–31. But lawsuits like Plaintiffs' *have already started proliferating* against other auto manufacturers. *See Cho v. Gen. Motors Co.*, No. 8:24-cv-00819 (C.D. Cal. Apr. 12, 2024); *Wiater v. Stellantis, N.V.*, 2024 WL 4339983 (E.D. Mich. Sept. 27, 2024). And Plaintiffs do not explain how computer or smartphone manufacturers, for example, could avoid lawsuits for failing to protect the world against hacking or device theft. *Cf.* Chamber Amicus Br. 16–18, 24–27 (explaining that Plaintiffs' proposal would expose "a wide variety of businesses beyond car manufacturers" to unprecedented liability, with consumers ultimately bearing the burden).

*Finally*, Plaintiffs mount no defense of the district court's "Good Samaritan" rationale. Defendants articulated numerous reasons why the doctrine cannot apply, OB 34–35, but Plaintiffs' answering brief does not reference the doctrine once.

## II. THIS COURT CAN REVIEW ANY OTHER ISSUE DECIDED IN THE ORDER ON APPEAL

Plaintiffs suggest both that this Court lacks jurisdiction over any other issues other than the duty element of New York, Ohio, and Wisconsin negligence claims,

and that the Court should in any event decline to reach any other issues as an exercise of its discretion. AB 36–37. Plaintiffs are mistaken on both fronts.

As a threshold matter, the Supreme Court's decision in *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199 (1996), forecloses Plaintiffs' jurisdictional theory. As the Court observed in *Yamaha*, "the text of § 1292(b) indicates" that "appellate jurisdiction applies to the *order* certified to the court of appeals, and is not tied to the particular question formulated by the district court." *Id.* at 205; *see* 28 U.S.C. § 1292(b) (allowing appeal from "an *order* not otherwise appealable" meeting specified criteria) (emphasis added). "Because it is the *order* that is appealable," a federal court of appeals has jurisdiction to review "any issue fairly included" in the order before it, regardless of "the controlling question identified by the district court." *Yamaha*, 516 U.S. at 205 (cleaned up); *see also BP P.L.C. v. Baltimore*, 593 U.S. 230, 241–42 (2021) ("By allowing appellate courts to review a district court's 'order,' the [*Yamaha*] Court explained, Congress had allowed review of any issue fairly encompassed within it.").

In keeping with *Yamaha*'s holding, this Court has recognized that it "retain[s] jurisdiction to review claims not certified by the district court" in a Section 1292(b) appeal. *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1175 n.2 (9th Cir. 2016); *see Pharm. Rsch. & Mfrs. v. Landsberg*, 2022 WL 2915588, at *1 n.1 (9th Cir. July 25, 2022) (recognizing "discretion to review the district court's First

14

Amendment holding" even though the "district court's certification order d[id] not mention [that] claim"). Other circuits have reached the same conclusion. *See Doninger v. Niehoff*, 642 F.3d 334, 338 & nn.1–2 (2d Cir. 2011); *In re Lion Air Flight JT 610 Crash*, 110 F.4th 1007, 1010–11 (7th Cir. 2024); *Joseph v. Bd. of Regents*, 121 F.4th 855, 869 (11th Cir. 2024).

Plaintiffs do not mention *Yamaha*, much less distinguish it. They instead cite a Sixth Circuit opinion suggesting—but not deciding—that Section 1292(b) jurisdiction might exclude uncertified claims. AB 38 (citing *Ingram v. Wayne Cnty.*, 81 F.4th 603, 612–13 (6th Cir. 2023), *abrogated on other grounds by Culley v. Marshall*, 601 U.S. 377 (2024)). Yet the Sixth Circuit observed, consistent with *Yamaha*, that "legal questions implicated by a district court's order" are "permitted for appellate consideration" along with the certified "controlling legal issue" itself. *Ingram*, 81 F.4th at 612. Plaintiffs' other cited cases are similarly unavailing; in none did a court of appeals limit its jurisdiction to review uncertified claims.[2]

---

[2] *Homeland Stores, Inc. v. Resol. Tr. Corp*., 17 F.3d 1269 (10th Cir. 1994), held that the court "may, and indeed should" address uncertified issues if they "control[] the disposition of the certified order"; the plaintiff's injunction demand simply did not. *Id.* at 1272. *FDIC v. Dye*, 642 F.2d 833 (5th Cir. 1981), held that the court lacked jurisdiction "to review unrelated [] orders"—not unrelated claims within an order. *Id.* at 837. And *Little v. Louisville Gas & Elec. Co*., 805 F.3d 695 (6th Cir. 2015), held that the court lacked jurisdiction to consider the *plaintiffs'* challenge to a dismissal order because it had only agreed to review the *defendants'* preemption argument, and the plaintiffs failed to cross-petition for appeal. *Id.* at 698–700.

Plaintiffs are similarly mistaken that this Court's "usual practice" is to decline review over uncertified issues. AB 3. Although this Court sometimes declines to exercise such discretion, the Court also routinely reaches uncertified questions. For example, in *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117 (9th Cir. 2014), the district court "certified its order" finding diversity jurisdiction and denying the plaintiff's motion to remand. *Id.* at 1120. This Court, noting that Section 1292(b) review "is not automatically limited solely to the question deemed controlling by the district court," chose "as a matter of judicial economy to address [] in the first instance" whether the suit could qualify as a class action. *Id.* (quoting *In re Cinematronics, Inc.*, 916 F.2d 1444, 1449 (9th Cir. 1990)); *see also, e.g.*, *Roth v. Foris Ventures, LLC*, 86 F.4th 832, 836–37 (9th Cir. 2023); *Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 848–49 (9th Cir. 2020); *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1140–41 (9th Cir. 2016).

Considerations of judicial economy strongly support this Court's exercise of discretion to review the additional issues identified by Defendants in the certified order. As explained in the opening brief and elaborated below, Plaintiffs' Missouri negligence claims fail for largely the same reasons as their New York, Ohio, and Wisconsin negligence claims—and Plaintiffs' public nuisance claims, grounded in the accompanying assertions of negligence, do too. OB 36 n.8, 42 n.9, 51 n.12. Addressing those state-law claims together would thus "advance the ultimate

termination of the litigation"—the explicit purpose of 28 U.S.C. § 1292(b). Resolving the preemption issue, which cuts across all the state-law claims, would also promote that purpose. Plaintiffs dispute neither the overlap between their claims nor the efficiencies that this Court's resolution of the additional issues would deliver in this complex multidistrict litigation. It is accordingly open to this Court to resolve all the issues Defendants identify, and the Court should do so.

## III. PLAINTIFFS' MISSOURI NEGLIGENCE CLAIMS FAIL FOR LACK OF DUTY

Missouri courts—like those of New York, Ohio, and Wisconsin—enforce the no-duty rule, consistently refusing to impose on defendants an obligation to guard against third-party crimes. OB 35–37. As with the other jurisdictions, Plaintiffs attempt to bypass this rule by invoking Missouri's general duty standard. AB 48. But that standard does not control. Where "the deliberate criminal act of a third person is the intervening cause of harm to another," the "traditional" no-duty rule applies "absent a special relationship or special circumstances." *Vittengl v. Fox*, 967 S.W.2d 269, 275 (Mo. Ct. App. 1998).

Plaintiffs invoke Missouri's "special facts and circumstances" exception, which they say applies when the allegations reflect "an especially high degree of foreseeability" of harm. AB 49–50. Plaintiffs suggest this Court should weigh the "totality of the circumstances or public policy concerns," AB 50, but they primarily rely on cases about business invitees and ignore that the "special facts

17

exception requires some relationship between the plaintiff and the defendant which encourages the plaintiff to come upon the defendant's premises." *Faheen, By & Through Hebron v. City Parking Corp.*, 734 S.W.2d 270, 272 (Mo. Ct. App. 1987). Here, Plaintiffs have not pleaded "some relationship" between the parties, *id.*; OB 37, and certainly no encouragement to enter Defendants' premises. Plaintiffs otherwise rely on cases that involved special relationships that sharply distinguish them from the instant case. *See Kuhn v. Budget Rent-A-Car*, 876 S.W.2d 668, 674 (Mo. Ct. App. 1994) (employer failed to prevent "obviously 'drunk'" employee's intoxicated driving, which killed another motorist); *Bradley ex rel. Pope v. Ray*, 904 S.W.2d 302, 312 (Mo. Ct. App. 1995) (psychologists failed to prevent prolonged sexual abuse of child patient, despite being aware of it); *see also* OB 37–40. Generic allegations of foreseeability, based on circumstances such as prior criminal activity, simply do not suffice. *See Dix v. Motor Mkt., Inc.*, 540 S.W.2d 927, 929, 932 (Mo. Ct. App. 1976).

Ultimately, the proper disposition under Missouri law is clear from *Lawton v. Hyundai Motor America, Inc.*, 734 F. Supp. 3d 904 (W.D. Mo. 2024), which addressed materially identical allegations. The plaintiff in *Lawton* claimed that the defendant "designed [the plaintiff's] car in a manner that made it easy to be stolen" by not equipping it with "an ignition immobilizer." *Id.* at 906. Applying Missouri law, the district court rejected that theory, holding that the defendant "did not have

a duty to protect [p]laintiff from [being injured] by car thieves," and dismissed the negligence claim. *Id.* at 911. This Court should do the same.

## IV. PLAINTIFFS' PUBLIC-NUISANCE CLAIMS SOUND IN NEGLIGENCE AND THUS FAIL FOR LACK OF DUTY

The Court should direct the dismissal of Plaintiffs' public-nuisance claims as well. As a threshold matter, Plaintiffs' Ohio public-nuisance claims are foreclosed by the Ohio Supreme Court's recent decision holding that the Ohio Product Liability Act abrogates all common-law public-nuisance claims arising from the sale of products. *In re Nat'l Prescription Opiate Litig.*, ___ N.E.3d ___, 2024 WL 5049302, at *6–7 (Ohio Dec. 10, 2024). As for the remaining jurisdictions, Plaintiffs' public-nuisance claims fail because they rely on negligence but do not contain valid allegations of the elements of negligence, including duty. OB 42–49. Plaintiffs note that public-nuisance claims as a general matter do not always require alleging the elements of negligence. That is true but irrelevant, because public-nuisance law in the relevant states requires alleging the elements of negligence where (as here) negligence allegations form the basis of the public-nuisance claim. To the extent Plaintiffs suggest that they avoid that requirement by alleging "intentional conduct," AB 55, 60, they are mistaken.

## A. Duty Is An Element Of Nuisance Claims Premised On Negligence

In New York, Wisconsin, and Missouri, public-nuisance claims resting on allegations of negligence require a valid tort duty. OB 42–46. Plaintiffs attempt to distract from that established legal principle but fail to refute it.

### 1. New York

In New York, "[w]henever a nuisance has its origin in negligence," the elements of negligence "must be proven." *Copart Indus., Inc. v. Consol. Edison Co.*, 41 N.Y.2d 564, 569 (N.Y. 1977) (citations omitted). That necessarily includes the element of duty. *D'Amico v. Christie*, 518 N.E.2d 896, 901 (N.Y. 1987). Plaintiffs attack a straw man when they insist that public nuisance does not *always* "require[] proof of fault." AB 56. The relevant question is whether a public-nuisance claim *that rests on allegations of negligence* must allege the elements of negligence. OB 42–44. In New York, then-Chief Judge Cardozo answered nearly a century ago by explaining "that whenever a nuisance has its origin in negligence, one may not avert … his own contributory negligence by affixing to the negligence of the wrongdoer the label of a nuisance." *McFarlane v. Niagara Falls*, 160 N.E. 391, 392 (N.Y. 1928).

Plaintiffs suggest that the requirement to prove the elements of negligence applies only to claims of "private nuisance, not public nuisance." AB 59. But in *Copart*, New York's highest court carefully articulated its ruling to apply to *all*

nuisances, "either public or private, based on negligence." 41 N.Y.2d at 569; *see also Aliasgarian v. State*, 158 N.Y.S.3d 493, 495 (App. Div. 2021) (affirming directed verdict for defendant on "public nuisance" claim "premised upon … alleged negligence, which claimant failed to establish").

Plaintiffs observe that *People ex rel. Spitzer v. Sturm, Ruger & Co.*, 761 N.Y.S.2d 192 (App. Div. 2003), dismissed a public nuisance claim for lack of proximate cause rather than absence of duty. AB 59. But the *Sturm* court's dismissal for lack of causation did not suggest that the claim would otherwise have been allowed to proceed; to the contrary, the court expressly noted New York law's long-running resistance to "the expansion of duty" and "practical concerns both about potentially limitless liability and [] the unfairness of imposing liability for the acts of another." 761 N.Y.S.2d at 196–201 (quoting *Hamilton*, 750 N.E.2d at 1061). *Sturm* thus did nothing to unsettle the duty requirement that New York consistently applies to negligence-based public nuisance claims. *See id.* at 201.

### 2. Wisconsin

In Wisconsin, too, "when a nuisance is predicated on negligence, all the usual rules and defenses applicable to negligence claims apply." *Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 691 N.W.2d 658, 688 (Wis. 2005). That necessarily includes the "rule" that plaintiffs must establish a legal duty and the "defense" that defendants owe no duty to protect from third-party criminal acts.

*Hocking*, 768 N.W.2d at 556; *see Jankee*, 612 N.W.2d at 321. Otherwise, a plaintiff could circumvent these requirements by styling a garden-variety negligence claim as nuisance. Plaintiffs again question whether this rule applies to *public* (as opposed to private) nuisance claims, AB 54, but the Wisconsin Supreme Court rejected such a limitation in *Milwaukee Metropolitan*, explaining that "all the underlying rules of negligence are applicable to a claim of nuisance based on negligence" and "should not vary depending upon whether the interest invaded by the defendant's negligent conduct is public or private." 691 N.W.2d at 675. Because Plaintiffs' Wisconsin nuisance claims sound in negligence, OB 46–49, they must establish that Defendants owe them a duty.

### 3. Missouri

Finally, when a "claim of nuisance is based upon negligence" in Missouri, "liability … depends upon the existence of negligence," including the duty element. OB 45–46 (citations omitted). Plaintiffs cite cases purportedly demonstrating that negligence is "immaterial" to nuisance liability. AB 60 (quoting *Frank v. Env't Sanitation Mgmt., Inc.*, 687 S.W.2d 876, 880 n.3 (Mo. 1985)). But even if liability for nuisance *generally* "does not depend on the degree of care used," AB 60 (citation omitted), Missouri case law confirms that nuisance claims that *do* sound in negligence must entail a showing (and breach) of duty, *see Jackson v. City of Blue Springs*, 904 S.W.2d 322, 328 (Mo. Ct. App. 1995).

22

Plaintiffs strain to read *Jackson* to "confirm[]" their view "that a nuisance duty is *analytically separate* from a negligence duty." AB 62. But Missouri law views "negligence and nuisance claims" as "typically … *inseparable*." *Wilkins v. Hendel*, 654 S.W.3d 429, 433 (Mo. Ct. App. 2022) (emphasis added) (citing *Jackson*, 904 S.W.2d at 328). And when negligence is alleged to have "give[n] rise to" nuisance, as is the case here, "to prove the nuisance claim, Plaintiff[s] must prove Defendants … owed [them] a duty." *Id.* at 433–34 (citations omitted).

## B. Because Plaintiffs' Nuisance Claims Rest On Negligence, They Fail For Want Of Duty

As Defendants explained in their opening brief, Plaintiffs' public-nuisance claims sound in negligence. OB 46–49. The complaint asserts, for instance, that "the conduct underlying the public nuisance alleged herein was negligent." 3-ER-405. Plaintiffs' sole response is that their New York and Wisconsin (but not Missouri) nuisance claims also rely on "intentional conduct," which they contend is sufficient to state "valid public nuisance claims." AB 55, 60. The complaint, however, pleads no cognizable intentional wrongdoing.

In tort law, a showing of "intent" requires establishing that "the actor desires to cause [the] consequences of his act," or "believes that the consequences are substantially certain to result from it." Restatement (Second) of Torts § 8A (1965). A nuisance is "intentional" if a defendant "acts for the purpose of causing" the nuisance or with knowledge, or a substantial certainty, that the nuisance would

23

result. Restatement (Second) of Torts § 825 (1979). Intentionally engaging in the challenged conduct—without intent to bring about the prohibited results—is inadequate. *See id.*; *Copart*, 362 N.E.2d at 972–73; *Milwaukee Metro.*, 691 N.W.2d at 672.

But that is all Plaintiffs offer: They claim that Defendants "intentionally" forwent "the installation of engine immobilizers." 3-ER-404. The complaint is devoid of facts supporting a plausible inference that Defendants did so intending for vehicle thefts to "skyrocket" or that Defendants were substantially certain that such an outcome would result. To the contrary, Plaintiffs allege that the purported "nuisance" followed an unprecedented online "challenge" that did not surface until many years after Defendants started marketing their vehicles. 3-ER-324–26.

Plaintiffs make no other effort to contest that their public-nuisance claims sound in negligence. Plaintiffs therefore bear the burden of establishing a legal duty to support those claims. Because they cannot do so, *supra* Parts I & III, those claims fail as a matter of law.

## V. PLAINTIFFS' CLAIMS ARE PREEMPTED BY FEDERAL LAW

Plaintiffs do not dispute that federal preemption prohibits the imposition of state tort liability where doing so "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992), including by undermining a

"significant objective of [a] federal regulation," *Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 326 (2011) (citation omitted).  Nor do Plaintiffs suggest that either FMVSS 114 or any federal law or regulation has ever mandated installation of immobilizers.  To the contrary, Plaintiffs concede that NHTSA has consistently maintained that automobile manufacturers should have a choice in the antitheft technology they adopt.  AB 43–46; *see* Chamber Amicus Br. 22–26; Auto Innovators Amicus Br. 18–19.  Plaintiffs instead contest preemption solely on the ground that they do not seek to impose an engine-immobilizer requirement.  But the complaint by its own terms belies this argument, seeking to hold Defendants liable for failing to include a single specific anti-theft technology:  an engine immobilizer.  *See* OB 55–58.  Plaintiffs attempt to obscure this fact with multiple sleights of hand, but each fails.

*First*, Plaintiffs point to a handful of vague allegations that Defendants failed to install an engine immobilizer "*or an equivalent anti-theft device*," which they suggest means that their claims would only require "a general *level* of anti-theft protection."  AB 42 (quoting 3-ER-305); *see* AB 46–47 (citing 3-ER-305, 410, 413, 416).  But when analyzing a complaint to assess preemption, courts "look to the substance of the allegations" and refuse to allow plaintiffs to avoid preemption "through artful pleading."  *Freeman Invs., L.P. v. Pac. Life Ins. Co.*, 704 F.3d 1110, 1115 (9th Cir. 2013) (citation omitted).  Here, the substance of Plaintiffs'

25

allegations is readily apparent beginning on the first page of the complaint, where they allege that "long after other carmakers adopted immobilizer technology … Defendants designed, manufactured, and distributed [vehicles] without engine immobilizers." 3-ER-302. Plaintiffs refer to immobilizers 111 times in the complaint, OB 56, emphasizing that "Defendants' failure to install an industry-standard *immobilization* anti-theft device"—not some other unspecified anti-theft device—"opened the floodgates to vehicle theft, crime sprees, reckless driving, and public harm," 3-ER-304 (emphasis added). Plaintiffs even define the key term "Susceptible Vehicles" as models "manufactured and sold *without engine immobilizers*." 3-ER-302–03 (emphasis added). By now claiming that the complaint's handful of vague references to "equivalent technology" allow them to escape preemption, Plaintiffs attempt the kind of artful pleading that courts have repeatedly rejected. The district court properly recognized as much when dismissing as preempted virtually identical claims by the City of Chicago, explaining that Plaintiffs' vague references to equivalent anti-theft devices "still refer to engine immobilizers in context." *In re: Kia Hyundai Vehicle Theft Litig.*, 22-03052 (C.D. Cal.), Dkt. 334, at 5–6.

*Second*, Plaintiffs suggest that Defendants have somehow failed to support their "factual assumption" that Plaintiffs seek an engine-immobilizer requirement. AB 42–43. But at the pleading stage, courts examine *plaintiffs'* allegations, not the

defense's. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And Plaintiffs' allegations make clear—more than 100 times over—that their claims turn on the absence of engine immobilizers.

*Third*, Plaintiffs argue that their attempt to require engine immobilizers is consistent with federal regulators' aim to "ensure that anti-theft technology could *get better at preventing theft*" over time. AB 43, 46. Yet Plaintiffs do not explain how mandating a *single* device would enable manufacturers to develop *new* kinds of anti-theft technologies. Ultimately, Plaintiffs attempt an "end-run via a tort lawsuit [that] would override NHTSA's expert judgment" prioritizing flexibility over a specific theft-protection device. Chamber Amicus Br. 23; *see* Auto Innovators Amicus Br. 19. The Supreme Court rejected a similar attempt with regard to airbags in *Geier v. American Honda Motor Co.*, 529 U.S. 861 (2000), explaining that "a rule of state tort law … [that] would have required manufacturers of all similar cars to install airbags rather than other passive restraint systems … would have presented an obstacle to the variety and mix of devices that the federal regulation sought." *Id.* at 881.

*Fourth*, Plaintiffs suggest that their engine-immobilizer-only theory is compatible with a back-up theory permitting "equivalent" technology. AB 47–48. But Plaintiffs have never identified an equivalent technology or explained what technology might qualify as "equivalent" to an immobilizer that is not actually an

immobilizer itself. Nor do Plaintiffs explain how requiring an "equivalent technology"—should one exist—would serve the purposes of promoting flexibility and innovation. As amici explain, requiring businesses to "rigidly adhere to industry norms to avoid liability … will [] disincentivize[] [them] from innovating to create new and better solutions—precisely the disincentive NHTSA sought to avoid." Chamber Amicus Br. 26; *see* Auto Innovators Amicus Br. 19. "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up), which are all Plaintiffs have offered here.

In sum, Plaintiffs' claims seek to restrict Defendants to a singular device, which would frustrate the significant regulatory objectives of design flexibility and promoting innovation. Accordingly, as in *Geier* and *Williamson*, their claims are preempted by federal law.

## **CONCLUSION**

The district court's denial of Defendants' motion to dismiss should be reversed.


Dated: February 7, 2025                Respectfully submitted,

                                          */s/ Christopher G. Michel*

John B. Quinn                             Christopher G. Michel
Steven G. Madison                   QUINN EMANUEL URQUHART &
Justin C. Griffin                        SULLIVAN, LLP
QUINN EMANUEL URQUHART &       1300 I Street NW, Suite 900
SULLIVAN, LLP                        Washington, D.C. 20005
865 South Figueroa St, 10th Floor     (202) 538-8000
Los Angeles, CA 90017
(213) 443-3000

*Counsel for Defendants-Appellants*
*Hyundai Motor America and Kia America, Inc.*

29

## CERTIFICATE OF SERVICE

I hereby certify that February 7, 2025, I caused the foregoing Reply Brief of Defendants-Appellants Hyundai Motor America, Inc. and Kia America, Inc. to be electronically filed with the Clerk of the Court for the U.S. Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.  All participants in this case are registered CM/ECF users, and service will be accomplished through the appellate CM/ECF system.

Dated: February 7, 2025

*/s/ Christopher G. Michel*
Christopher G. Michel