**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CITY OF BUFFALO; CITY OF CINCINNATI; CITY OF CLEVELAND; CITY OF SEATTLE; CITY OF ROCHESTER; CITY OF YONKERS; CITY OF GREEN BAY; TOWN OF TONAWANDA; CITY OF COLUMBUS; CITY OF KANSAS CITY; CITY OF INDIANAPOLIS; CITY OF MADISON; CITY OF MILWAUKEE; CITY OF NEW YORK; CITY OF PARMA; CITY OF ST. LOUIS; CITY OF BALTIMORE,<br><br>   *Plaintiffs - Appellees*,<br><br> v.<br><br>HYUNDAI MOTOR AMERICA, INC.; KIA AMERICA, INC,<br><br>   *Defendants - Appellants*. | No. 24-2350<br><br>D.C. No. 8:22-ml-03052-JVS-KES<br><br><br>ORDER CERTIFYING QUESTION TO THE NEW YORK COURT OF APPEALS |

Filed June 20, 2025

Before: Mary H. Murguia, Chief Judge, and Bridget S. Bade and Jennifer Sung, Circuit Judges.

Order;
Dissent by Judge Bade

# SUMMARY[*]

**Certification Order / New York Law**

In multidistrict litigation between municipal entities located in seven states (the Municipalities) against Hyundai Motors America, Inc., and Kia America, Inc. (the Manufacturers), for alleged injuries arising out of the thefts of certain vehicles manufactured and distributed between 2011 and 2022, the panel certified the following question to the New York Court of Appeals:

Did the Manufacturers owe the New York Municipalities a duty to exercise reasonable care in the design, manufacture, and distribution of their vehicles?

In a separately filed memorandum disposition, the panel affirmed in part the district court's decision regarding the Municipalities' negligence claims under Ohio and Wisconsin law.

Dissenting from the certification order, Judge Bade would conclude that the negligence claims raised on appeal are preempted by federal motor vehicle safety standard 114 and would therefore not reach the state law issues. If those claims were not preempted, she would join the majority in

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

certifying the proposed question for the reasons stated in the order.

## ORDER

Between 2011 and 2022, Defendants-Appellants Hyundai Motor America, Inc. and Kia America, Inc. (the Manufacturers) designed, manufactured, and distributed 25 car models that did not include engine immobilizers or equivalent anti-theft technology (the Relevant Vehicles). In 2020, teenagers published videos online demonstrating how to easily steal the Relevant Vehicles with simple tools. The videos started a nationwide social media trend of stealing the Relevant Vehicles, which caused municipal entities around the country to expend significant resources responding to vehicle theft, related crimes, and accidents.

Plaintiffs-Appellees are seventeen municipal entities located in seven states (the Municipalities) who sued the Manufacturers under various state-law causes of action for damages and other relief for their alleged injuries arising out of thefts of the Relevant Vehicles. Relevant here, five of the Municipalities are located in New York (the New York Municipalities) and assert negligence claims under New York law against the Manufacturers.[1]

This interlocutory appeal turns on the duty element of the Municipalities' negligence claims. The New York Municipalities assert that the Manufacturers owed a duty to "not . . . expose the New York [Municipalities] to an

---

[1] The New York Municipalities are the City of Buffalo, the City of Rochester, the City of New York, the City of Yonkers, and the Town of Tonawanda.

unreasonable risk of harm" and to "act as a reasonably careful person would act under the circumstances" in the design, research, manufacture, and distribution of their vehicles. The viability of the New York Municipalities' negligence claims depends on whether a duty exists, *see Moore Charitable Found. v. PJT Partners, Inc.*, 217 N.E.3d 8, 14 (N.Y. 2023) ("It is well-settled that to establish a claim of negligence, a plaintiff must prove . . . a duty owed to the plaintiff by the defendant . . . ."), and there is no controlling New York precedent recognizing or rejecting the duty that the New York Municipalities assert here. Accordingly, we respectfully certify the following question to the New York Court of Appeals:

> Did the Manufacturers owe the New York Municipalities a duty to exercise reasonable care in the design, manufacture, and distribution of their vehicles?

Our framing of the question above is not intended to restrict the Court of Appeals from considering any state law issues it might wish to resolve in connection with this appeal. We recognize that the Court of Appeals may modify or expand upon this question as it sees fit.

I

The relevant facts and procedural history are summarized below. We take the facts alleged in the Consolidated Governmental Entities Complaint (Complaint) as true and construe them in the light most favorable to the Municipalities. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

A

In the 1960s, Congress passed the National Traffic and Motor Vehicle Safety Act and authorized what is now the National Highway Traffic Safety Administration (NHTSA) to promulgate federal motor vehicle safety standards (FMVSS). *See* 49 U.S.C. § 30101 *et seq.* Among these standards, FMVSS 114 requires "minimum theft-protection standards for nearly all passenger vehicles in the United States." *See* 49 C.F.R. § 571.114. The Municipalities allege that equipping a car with an "engine immobilizer" is the "most effective way to satisfy" FMVSS 114. An immobilizer is a type of vehicle anti-theft technology that "locks out the engine control module if an attempt is made to start the vehicle without the correct key or to bypass the electronic ignition system." Immobilizer technology has improved throughout the 20th century and is especially useful in preventing "hotwiring," a method of car theft common in the 1980s and 90s that involves bypassing the ignition switch.

By the 1990s, immobilizers had become an "industry standard" feature among global car manufacturers because of their effectiveness at preventing car theft. According to various studies, immobilizers contributed to a significant decrease in car theft between the 1990s and 2010s. Other countries have mandated their use.

The Manufacturers designed, manufactured, and distributed the Relevant Vehicles without equipping them with engine immobilizers or equivalent anti-theft technology, despite understanding the benefits of immobilizer technology and installing immobilizers in some of their other, higher-end vehicles.

In late 2020, a group of teenagers known as the "Kia Boyz" began posting instructional videos online "detailing how simple it was to steal [the Relevant] Vehicles." They demonstrated how thieves could steal the Relevant Vehicles by breaking a window, removing the "plastic cowl under the steering column," and using "a USB connector . . . to turn the ignition switch" to start the car, which could often be accomplished in under one minute. The Kia Boyz's videos caused a nationwide trend of Kia and Hyundai car theft, with the number of thefts of the Relevant Vehicles "skyrocket[ing]" in the first half of 2021. This trend also coincided with an overall increase in car theft between 2019 and 2023, but the Relevant Vehicles constituted a disproportionately large percentage of all stolen vehicles as compared to other models.

Along with this trend came a rise in threats to public safety. Young thieves posted videos of themselves speeding through school zones, crowds, and other public areas in stolen vehicles. Police officers responding to Relevant Vehicle theft and related crimes have been shot, stabbed, hit, and injured in other ways. Pedestrian bystanders were harmed by dangerous and reckless driving, and thieves in stolen vehicles went on to commit other crimes, such as drive-by shootings. Relevant Vehicle thieves often caused accidents and damage to private and public property. The Municipalities, including the New York Municipalities, each allege specific crimes and accidents involving stolen Relevant Vehicles that required them to expend resources and funds in response and remediation. Theft of the Manufacturers' vehicles still impacts the Municipalities.

The Manufacturers have not implemented a recall to install immobilizers in the Relevant Vehicles. Instead, they have suggested that Relevant Vehicle owners use wheel

locks and have provided wheel locks to some municipalities for distribution, even though "wheel locks are not entirely effective." The Manufacturers also issued a software update to respond to the issue, but they later acknowledged that some of the Relevant Vehicles cannot be updated. The software update has not stopped thefts of Relevant Vehicles, and the update poses inconveniences to drivers. The Municipalities allege that the Manufacturers have profited from their decision not to install immobilizers or recall the Relevant Vehicles.

B

In December 2022, the United States Judicial Panel on Multidistrict Litigation transferred sixteen actions to the United States District Court for the Central District of California under 28 U.S.C. § 1407 and assigned Judge James V. Selna to preside over this multidistrict litigation (the MDL). In July 2023, the Municipalities filed their consolidated Complaint, stating seventeen causes of action under the laws of Wisconsin, Ohio, Maryland, Washington, Missouri, New York, and Indiana. The New York Municipalities assert negligence and public nuisance claims against the Manufacturers under New York law.

In September 2023, the Manufacturers moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). In November 2023, the district court granted the motion with respect to one claim not relevant to this appeal and denied the motion with respect to all other claims, including the New York claims. In relevant part, the court held that the Municipalities adequately pleaded negligence claims because it is "foreseeable . . . that the lengths a manufacturer will go—or not go—to design their cars with protections against theft will determine the burden others

will bear to respond to such theft."**2**  The district court also deemed the Manufacturers' arguments that this theory would expose them to unlimited liability "misplaced" because the Complaint "concern[ed] a very particular set of circumstances—vehicle manufacturers' decision not to install anti-theft technology and the harms to municipalities caused by the vehicles' vulnerability to theft."  The district court found the Municipalities' public policy arguments "more availing," reasoning that the alleged harms of "rampant vehicle thefts" and the Municipalities' need to "pay 'the ultimate price' of 'countless hours' responding to thefts and distributing wheel locks" outweighed the "'relatively slight' burden on [the Manufacturers] to install reasonable anti-theft measures."

In December 2023, the Manufacturers filed a motion to certify an interlocutory appeal of the district court's order under 28 U.S.C. § 1292(b) and to stay the litigation.  In January 2024, the district court granted the motion to certify but denied the motion to stay.  The district court defined the certified question as "whether a tort duty to protect against third-party criminal conduct can be based solely on the foreseeability of harms—even in the absence of a special relationship."  In relevant part, the district court found "substantial ground for difference of opinion" on that question under New York law, *see* 28 U.S.C. § 1292(b), and it "deem[ed] it prudent to certify interlocutory

---

[2] The district court also resolved a threshold issue of federal preemption in the Municipalities' favor, and it held that all the Municipalities' negligence and public nuisance claims survived the motion to dismiss.

appeal . . . with respect to the negligence claims under New York . . . law."**3**

The Manufacturers timely filed a petition for permission to appeal to our court, which we granted in April 2024. Fed. R. App. P. 4(a)(1)(A), 5(a)(2). We heard oral argument on April 8, 2025.**4**

II

When faced with a "determinative question[] of New York law . . . for which no controlling precedent of the [New York] Court of Appeals exists," we may certify that question to the Court of Appeals. 22 N.Y.C.R.R. § 500.27(a). We certify a question to a state's highest court "only after careful consideration and do not do so lightly." *High Country Paving, Inc. v. United Fire & Cas. Co.*, 14 F.4th 976, 978 (9th Cir. 2021) (quoting *Kremen v. Cohen*, 325 F.3d 1035, 1037 (9th Cir. 2003)). "In deciding whether to exercise our discretion" to certify a question, "we consider: (1) whether the question presents 'important public policy ramifications' yet unresolved by the state court; (2) whether the issue is new, substantial, and of broad application; (3) the state court's caseload; and (4) 'the spirit of comity and federalism.'" *Id.* (quoting *Kremen*, 325 F.3d at 1037–38).

Based on these factors, we conclude that certification is appropriate. The New York Court of Appeals has explained

---

**3** The district court determined that the Manufacturers did not "carr[y] their burden of showing that [their proposed] question has a bearing on the public nuisance claims" under any state's law, and therefore did not include public nuisance within the scope of the certified question.

**4** In a separately filed memorandum disposition, we affirm in part the district court's decision regarding the Municipalities' negligence claims under Ohio and Wisconsin law.

that the "existence and scope of an alleged tortfeasor's duty is usually a legal, policy-laden declaration reserved for Judges." *Palka v. Servicemaster Mgmt. Servs. Corp.*, 634 N.E.2d 189, 192 (N.Y. 1994). The New York Municipalities' negligence claims implicate significant policy considerations, including the "reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability." *Id.* at 193. We do not believe that the New York Court of Appeals, or any New York court, has resolved these issues as they relate to the determinative question of whether the Manufacturers owe the New York Municipalities a duty to reasonably design, manufacture, and distribute their vehicles.

The parties dispute the significance of *Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055 (N.Y. 2001), and whether it governs this case. In *Hamilton*, the New York Court of Appeals considered a certified question asking whether the defendant gun manufacturers owed the plaintiffs—"relatives of people killed by handguns"—a duty to "exercise reasonable care in the marketing and distribution of the handguns they manufacture." *Id.* at 1058–59. The plaintiffs asserted that the gun manufacturers failed to "implement safe marketing and distribution procedures," and the federal district court imposed a duty on the manufacturers to "take reasonable steps available at the point of . . . sale to primary distributors to reduce the possibility that [the guns produced by the manufacturers] will fall into the hands of those likely to misuse them." *Id.* at 1059 (citation omitted).

Although *Hamilton* is superficially comparable to this case in that it involved manufacturers and plaintiffs who were not the end users of the manufacturers' products, this case presents substantially different facts and claims. While *Hamilton* focused on the gun manufacturers' negligent marketing and distribution practices, the core of the New York Municipalities' claims focuses on the allegedly negligent design and manufacture of the Relevant Vehicles. Additionally, the *Hamilton* plaintiffs did not allege any defect in the gun manufacturers' products, *see id.* at 1063 (noting the gun manufacturers' "products are concededly not defective—if anything, the problem is that they work too well"), whereas the Municipalities allege that the Relevant Vehicles are flawed because they do not contain adequate anti-theft features. [5]　Finally, the Court of Appeals in *Hamilton* had the benefit of facts developed at trial, and it held that the plaintiffs failed to demonstrate how their injuries were connected to negligently marketed or distributed guns or how different marketing techniques could have prevented injury. *Id.* In contrast, the procedural posture of this case requires us to accept the Municipalities' allegations that car thieves easily stole the Relevant Vehicles and caused significant personal injuries and property damage that cost the Municipalities significant resources, and that installing an engine immobilizer or equivalent technology would have prevented or mitigated these harms. *See Sprewell*, 266 F.3d at 988.

---

[5] As they acknowledged at oral argument, however, the Municipalities do not assert products liability claims because they are not the "end user or consumer" of the Relevant Vehicles. It is thus ambiguous whether New York's products liability cases are persuasive or even informative here, and neither party discusses New York products liability cases that address the duty element of negligence.

*Hamilton* also illustrates the weighty policy considerations that determine whether a duty exists. The Court of Appeals held that the gun manufacturers did not owe a duty to the plaintiffs for two primary reasons. First, "the pool of possible plaintiffs [was] very large" as it included potentially "thousands of victims of gun violence." *Id.* at 1061. Second, the "connection between defendants, the criminal wrongdoers and plaintiffs [was] remote, running through several links in a chain consisting of . . . the manufacturer, the . . . distributor or wholesaler, and the first retailer," and often "legal purchasers or even a thief." *Id.* at 1062. The Court of Appeals stated that the "broad liability" sought by the plaintiffs "should not be imposed without a more tangible showing that [the gun manufacturers] were a direct link in the causal chain that resulted in [the] plaintiffs' injuries, and that [the manufacturers] were realistically in a position to prevent the wrongs." *Id.* This case presents similar policy questions that only the New York Court of Appeals can definitively answer.

We also conclude that this case is not clearly resolved by the rule that a "defendant generally has no duty to control the conduct of third persons so as to prevent them from harming others." *Id.* at 1061 (citation omitted). The Manufacturers argue that this general rule absolves them of liability here because, as the parties agree, no "special relationship" exists that would trigger the limited exceptions to that rule. *Purdy v. Pub. Adm'r of Cnty. of Westchester*, 526 N.E.2d 4, 7 (N.Y. 1988) (explaining that an exception to the rule of non-liability exists when the defendant has a "special relationship" with a third person whose actions expose the plaintiff to harm, creating a duty to control the third person's conduct, or with the plaintiff, creating a duty to protect the plaintiff from third persons). In response, the Municipalities

insist that they do not seek to impose a duty to control third parties, but rather a duty to reasonably design, manufacture, and distribute vehicles while they are "still under [the Manufacturers'] control and before car thieves ever come into the picture."

While we express neither agreement nor disagreement with these arguments, we think the New York Court of Appeals could conclude that the duty asserted by the New York Municipalities differs from the duty to control or prevent harm by third-party criminals. Moreover, the special relationship rule is based on the same policy factors that determine whether a duty of care exists at all, including the balance between preventing "limitless liability" and allocating liability to the actor "in the best position to protect against the risk of harm." *See Hamilton*, 750 N.E.2d at 1061; *see also Hamilton v. Beretta U.S.A. Corp.*, 222 F.3d 36, 44 (2d Cir. 2000) (noting that traditionally recognized special relationships are not "*a fortiori* 'special'" and instead "reflect the complex balancing tests that courts perform in assigning duties of care"). The New York Court of Appeals may well determine that public policy demands a solution to the novel issues in this case that would exceed the limitations of the special relationship rule. *See MacPherson v. Buick Motor Co.*, 111 N.E. 1050, 1053 (N.Y. 1916) (Cardozo, J.) (explaining that a manufacturer's duty must fit "the needs of life in a developing civilization"); *see also Hamilton*, 222 F.3d at 44 (expressing the same concern). Additionally, there are no New York cases holding that the absence of a special relationship precludes the existence of a duty to reasonably design, manufacture, and distribute products. Thus, we cannot predict whether the special relationship rule bars the New York Municipalities from enforcing a duty of

care related to the Manufacturers' design, manufacture, and distribution of the Relevant Vehicles.

In sum, the New York Municipalities' novel negligence claims implicate substantial and potentially broad-reaching policy considerations. *See High Country Paving*, 14 F.4th at 978. The New York Court of Appeals instructs courts, like ours, to be "mindful of the precedential, and consequential, future effects of their rulings, and 'limit the legal consequences of wrongs to a controllable degree.'" *Hamilton*, 750 N.E.2d at 1060 (quoting *Lauer v. City of New York*, 733 N.E.2d 184, 187 (N.Y. 2000)). With that in mind, principles of comity and federalism guide us to ask the Court of Appeals to definitively answer the determinative question in this case before we venture to predict the answer for ourselves. *See High Country Paving*, 14 F.4th at 978.

## III

For the foregoing reasons, we respectfully certify the following question to the New York Court of Appeals pursuant to 22 N.Y.C.R.R. § 500.27(a):

> Did the Manufacturers owe the New York Municipalities a duty to exercise reasonable care in the design, manufacture, and distribution of their vehicles?

The Court of Appeals is not limited to the particular question stated, and it may modify or expand upon this question as it deems appropriate. We retain jurisdiction for the purpose of resolving this appeal once the New York Court of Appeals has responded to our certification.

The clerk of this court shall transmit to the Clerk of the New York Court of Appeals, under official seal, a copy of

this order and all relevant briefs and excerpts of record filed in this court. The record contains all matters in the pending case deemed material for consideration of the certified question. The clerk is directed to administratively close the docket, pending further order.

The parties shall notify the clerk of this court within 14 days of any decision by the New York Court of Appeals to accept or decline certification. If the New York Court of Appeals accepts certification, the parties shall then notify the clerk of this court within 14 days of the issuance of that court's opinion.

### CERTIFICATE

The foregoing question is hereby certified to the New York Court of Appeals pursuant to New York Codes, Rules, and Regulations Title 22, § 500.27(a), as ordered by the United States Court of Appeals for the Ninth Circuit.

**IT IS SO ORDERED.**

---

BADE, Circuit Judge, dissenting:

I respectfully dissent from the certification order. As explained more fully in my dissent from the concurrently filed memorandum disposition, I would conclude that the negligence claims raised on appeal are preempted by federal motor vehicle safety standard 114 and would therefore not reach the state law issues. *See* 49 C.F.R. § 571.114. If those claims were not preempted, I would join the majority in certifying the proposed question to the New York Court of Appeals for the reasons stated in the order.